**MCMANUS, SCHOR, ASMAR & DARDEN, L.L.P.**

ATTORNEYS AT LAW
1155 FIFTEENTH STREET, N.W.
SUITE 900
WASHINGTON, D.C. 20005

TELEPHONE (202) 296-9260
FACSIMILE (202) 659-3732
WWW.MSADLAW.COM

JOSEPH A. MCMANUS, JR. (DC, GA, NC, NY)
LAURENCE SCHOR (DC, MD)
...RLES M. ASMAR (DC, MD)
... J. DARDEN (DC, MD)
SUSAN L. SCHOR (DC, MD, VA)
DANIEL K. FELSEN (DC, MD, VA)
JOHN J. MCKENNA, JR. (DC, MD)
JORDAN M. SAMUEL (DC, MD, VA)
CHRISTOPHER A. TAGGI (DC, MD, VA)
DENNIS C. EHLERS (DC, GA, TN)
DAVID J. BUTZER (DC, MD, VA)
SHONA M. GARBER (VA)
CHERYL E. CARROLL (DC, MD, VA)
AMANDA K. MORKEN (DC, MN)

OF COUNSEL:
BRETT L. ANTONIDES (DC, VA)
GEOFFREY T. KEATING (DC, MD)
THOMAS B. CARR (DC, VA)
RANDAL W. WAX (DC, MD, VA)
MARK D. CRAWFORD (DC, VA)

February 29, 2008

<u>VIA FACSIMILE</u>
Wanda A. Peffer
Contracting Officer
U.S. Department of Transportation
Federal Highway Administration
Eastern Federal Lands
Highway Division
21400 Ridgetop Circle
Sterling, VA 20166-6511

Re: FHWA, EFLHD IFB No. DTFH71-08-B-00002
**Response to Your Letter of 2/26/08 re: Bonds Submitted by Tip Top Construction Corp.**

Dear Ms. Peffer:

We acknowledge receipt of your letter of February 26, 2008, received on February 27, 2008. Although the Federal Highway Administration ("FHWA") disagrees with our interpretation of the Federal Acquisition Regulation ("FAR"), that is not sufficient to base a rejection of an individual surety bond. The FHWA position must be reasonable and well grounded in law and regulation; otherwise, it is *per se* "arbitrary and capricious" and any resulting decision is subject to being overturned. A contracting officer's discretion is not sufficiently broad to include a misreading – or selective reading – of the FAR.

Your first argument – that the Bid Bond was not complete as submitted – is a new argument not raised in your original letter and easily rebutted. You cite FAR 28.203-1 in support of your position, which section does indeed state that "[t]he security **interest** shall be furnished with the bond." (Emphasis added.) The first sentence of para. (a), which you did not quote, lays down the general rule that an individual surety may be accepted if "a **security interest** in assets acceptable under 28.203-2 **is provided** to the Government . . . ." (Emphasis added.) The FAR does not require that the asset itself be provided to the Government – only a valid security interest in that asset. The individual surety, Edmund C. Scarborough, did just that in providing the Bid Bond, Affidavit of Individual Surety (SF-28), Power of Attorney and Certificate of

Pledged Assets which Tip Top submitted to FHWA. As your counsel can verify for you, a security interest is a legal term defined by Black's Law Dictionary, Sixth Edition, p. 1357, as an

> [interest] in property obtained pursuant to security agreement. . . . A form of interest in property which provides that the property may be sold on default in order to satisfy the obligation for which the security interest is given. . . . An interest in personal property [*i.e.*, mined coal] or fixtures which secures payment or performance of an obligation, U.C.C. § 1-201(37), 9-102, . . .

Your counsel can also verify that a pledge of assets such as the one provided is covered by Article 9 of the Uniform Commercial Code ("U.C.C.") and could be recorded by FHWA via a UCC-1, UCC Financing Statement although this is not required for the FHWA to have that interest. Therefore, in providing the Government with the above-described package, Scarborough gave FHWA a valid security interest and met the requirements of FAR 28.203-1.

Scarborough's offer (in our letter of February 21) was to provide documentation further supporting the quality and value of the underlying **asset**, which is different from a **security interest** in the asset. Thus, the first paragraph of your letter mixes two separate issues. The latter (*i.e.*, security interest) he provided with the Bid Bond, as stated above. The former (*i.e.*, the asset) need not be physically provided to the Contracting Officer if a valid security interest is provided, which it was. There is also no requirement in the FAR that Scarborough have provided the offered additional information in advance of your request for the same. The Bid Bond was complete on its face; it identified the exact asset, its value and location, and gave the FHWA a valid and recordable security interest in the asset. Therefore, his offer of **additional** supporting documentation in response to your position that mined, extracted, stockpiled and marketable coal is a "speculative asset" cannot be "untimely" and your consideration of the same is not a violation of the FAR.

As to your second point, you misunderstand Scarborough's position – as well as the regulatory structure and language of FAR 28.203-2. FHWA's position appears to be that there are two lists – one of acceptable assets in 28.203-2(b) and one of unacceptable assets in 28.203-2(c) – which is true, but you go on to argue that the Contracting Officer's role is to compare the proffered asset to the examples of assets in both lists to find the one "closer in similarity"[1] and, if the "most similar" asset is determined to be in the list of unacceptable assets then the proffered asset is unacceptable. The FAR neither requires nor allows such a comparison. If it did, it would have stated "the contracting officer shall compare the proffered asset to the lists at 28.203-2(b) and (c) and select the one that is most similar." It would also have provided considerations

---

1 We note that "closer in similarity" is an undefined and completely unworkable standard. Most similar in what way? Value? Marketability? Convertibility? Liquidity? Safety/risk? Size? Shape?

and/or the standard of comparison to be applied (see footnote 1). There is no comprehensive list of acceptable assets, and the procedure you created is not finds no support in the FAR.

Additionally, your determination that the asset pledged by Scarborough is "closer in similarity" to corporate assets, speculative assets, or accounts receivable is completely unsupported. While a corporation certainly could own and pledge coal, you conveniently leave out the fact that the FAR's examples of unacceptable corporate assets are "plant and equipment." *See* FAR 28.203-2(c)(6). Minerals are not similar to buildings, fixtures and equipment. As to speculative assets, there is no logical or legal basis for your position that mined, extracted, stockpiled and marketable coal – a commodity that one can physically load onto a railroad car and send to market – is the same as an amorphous legal right to mine a plot of land and extract whatever minerals there might be on or under the ground. The third asset which you state is very similar to
Scarborough's coal is an intangible account receivable, which is so obviously different from a tangible mountain of coal as to merit no further discussion.

Again, the FAR's lists of "acceptable" and "unacceptable" assets are not all-inclusive. The drafters of the FAR clearly knew that they could not list every acceptable asset that might be offered. Moreover, it is a bedrock principle of law that that which is not specifically prohibited is allowed. If the FAR drafters had wanted to prohibit valuable minerals already extracted and ready for sale, which existed long before the legal **right** to mine land for a mineral (*i.e.*, mineral rights" at 28.203-2(c)(7)), they could and would have said so. For instance, the drafters easily could have listed "mined minerals and mineral rights." They did not.

As a result of the above, your statement that "[i]n any case, the determination of which category the proposed asset falls into belongs to the Contracting Officer" is wrong, as we have shown that the contracting officer is not tasked with the simplistic comparison you espouse. Even FAR 28.203(a), which you cite in support of this conclusion, does not say what you assert it does. The language of that paragraph says that the Contracting Officer must determine the **individual surety's** acceptability (which is different than comparing the proffered asset to those on the list and deciding that it is "more similar" to one or the other, as you suggest) and also must ensure that the pledged asset is sufficient to cover the bond obligation – *i.e.*, the pledge covers the required percentage of the value of the bid. Moreover, although the Contracting Officer has significant authority to determine that an asset is acceptable, such discretion is not unfettered and cannot be applied arbitrarily and capriciously. We submit that your new and unsupported interpretation of the FAR is just that – arbitrary and capricious. To take FHWA's argument to the extreme, every agency that has accepted a Scarborough bond (and there are many, including the Department of Justice) has violated the FAR. That clearly is not the case.

Finally, in response to your argument that 28.203(c) **requires** FHWA to reject the contractor utilizing the individual surety found unacceptable is also misplaced. First, as shown above, you have no reasonable basis for finding Scarborough (or his assets) unacceptable. FHWA cannot rely on this FAR provision if its underlying acceptability determination is wrong as a matter of fact and law. Second, we do not accept that FHWA "has no option but to reject Tip Top's bid as nonresponsible." As the very next paragraph (c) provides, even if Scarborough's Bid Bond had any flaws rising to the level of noncompliance with a solicitation requirement, the FAR allows waiver – even for "late" bid guarantees – and, indeed, the Contracting Officer must waive informalities unless s/he makes a written determination that acceptance of the bid would be detrimental to the Government's interest.

We note that, in accepting Tip Top's Bid Bond, you would not be the first FHWA contracting officer to do so, as **at least two (2) other FHWA contracting officers have accepted Scarborough bonds** since October of 2005. Additionally, the attached spreadsheet shows that no less than seven (7) agencies have accepted eight (8) Scarborough bonds pledging coal as the asset.

For all the above reasons, as well as those included in our letter of February 21, 2008, we submit that FHWA is incorrect in its interpretation and application of the FAR. We urge you to reconsider your decision and accept TipTop's Bid Bond or, at least, seek legal counsel in this very complicated area of the law. We would be happy to discuss these issues with your counsel. However, rest assured that Scarborough and Tip Top will litigate FHWA's rejection of this Bid Bond.

Sincerely yours,

Dennis C. Ehlers

cc: Edmund C. Scarborough
Tip Top Construction Corp.