ELECTRONIC FILING

Kenneth Kilgour, Senior Attorney
General Accountability Office
441 G Street, N.W.
Washington, D.C. 20548

Attn: Procurement Law Control Group
Protests@GAO.gov

Michael A. Gordon
Representative of Protester Tip Top Construction Corporation
Michael A. Gordon, PLLC
1629 K Street N.W., Suite 300
Washington, D.C. 20006
Telephone No.: (202)508-1464
Email: mgordon202@aol.com

Re: Protest of Tip Top Construction Corporation, B-311305

Dear Mr. Kilgour:

Enclosed is the Federal Highway Administration's (FHWA) response to the Bid Protest filed by Tip Top Construction Corporation ("Tip Top") with the General Accounting Office, Number B-311305, regarding the procurement of the Virgin Islands Project No. VI 9999(117), Invitation for Bids No. DTFH71-08-B-00002, issued by the United States Department of Transportation, Federal Highway Administration, the Eastern Federal Lands Highway Division.

Included in the Response are the Agency Report and Contracting Officer's Determination, Legal Memorandum, and supporting documentation, as required by Title 4, Code of Federal Regulations, Part 21. The Agency Designation of Representative was previously emailed to GAO and to Mr. Gordon as representative of the Protester.

Sincerely yours,

Julia L. Perry
Agency Representative

Enclosures

Bid Protest of Tip Top Construction Corporation, B-311305

TABLE OF CONTENTS

I. Agency Report

a. Statement of Facts - Chronology

b. Contracting Officer's Statement

II. Legal Memorandum

III. Supporting Documentation (attached files)

Solicitation DTFH71-07-B-00001

Conformed copy of the Contract (including Bid of Awardee)

Correspondence

I. AGENCY REPORT
a. Statement of Facts - Chronology
b. Contracting Officer's Statement

a. STATEMENT OF FACTS - CHRONOLOGY

1. On November 1, 2007, the Eastern Federal Lands Highway Division of the Federal Highway Administration, United States Department of Transportation, ("the FHWA") issued an Invitation for Bids Solicitation No. DTFH71-08-B-00002 ("the Solicitation"), Project No. VI 9999(117), for construction of a five-leg roundabout, and miscellaneous related work, on the island of St. John.

2. The Solicitation required submission of a Bid Bond in Block 13 on page A-1. The requirement was emphasized in the Notice to Bidders on page 1 of 3. The Bid Bond forms appeared in the C pages.

3. Bids were opened on January 10, 2008. At the time the bids were opened, the Protester, Tip Top Construction Company (Tip Top or the Protester) was the apparent low bidder.

4. Bidders were required to submit a bid for cost as well as a bid for time. At the time Protester's Bid was opened, it was obvious that Protester's Bid for time (300 days) was significantly less than that of the Government estimate (675 days - as shown in the note to Block 11 on page A-3 of the Solicitation) and of the other bidders. Because this could indicate a mistake in bid, the Contracting Officer sent an email dated January 28, 2008, directing Protester to submit a construction schedule showing how it would perform within the days bid. No other review of the bid was done at that time due to other responsibilities in the Acquisition Section.

5. At about the same time that the Protester's response to this email was received, a Contract Specialist was directed to complete review of the remainder of the bid package. She raised a question about the feasibility of the Bid Bond. This was the first time that the Contracting Officer became aware of the fact that the Bid was secured by an Individual Surety Bid Bond.

6. The Individual Surety Bid Bond identified E.C. Scarborough as the Individual Surety and listed as its security assets the following:

> "Description of Assets Pledged
>
> An allocated portion of $191,350,000.00 of previously mined, extracted, stockpiled and marketable coal, located on the property of E.C. Scarborough ... [followed by a description of the location of the property of E.C. Scarborough]."

7. After review of the Bid Bond and the applicable provisions in the Federal Acquisition Regulations (FAR), the Contracting Officer determined that the Bid Bond was not sufficient. Specifically, the Contracting Officer determined that the security assets listed did not meet the requirements of the FAR.

8. By letter dated February 19, 2008, the Contracting Officer notified the Protester that its Bid was rejected for failure to furnish a bid guarantee in accordance with the requirements of the invitation for bid.

9. By facsimile dated February 29, 2008, the Protester filed its Bid Protest.

10. The GAO notified the Agency of the Protest by facsimile transmission on March 4, 2008.

b. CONTRACTING OFFICER'S STATEMENT

Tip Top Construction Company (Tip Top) protests the proposed award of Solicitation number DTFH71-08-B-0002 to the second low bidder. I notified Tip Top that its bid was rejected because of the inadequacy of its Individual Surety Bid Bond based on unacceptable assets by letter dated February 19, 2008. On February 29, 2008, Tip Top filed a bid protest with GAO.

After reviewing Tip Top's Bid Bond, it was clear to me that the assets offered as security for the Individual Surety Bid Bond were unacceptable. Individual Surety Bonds are addressed in the FAR at Subpart 28.203, and the acceptability of the assets identified are discussed in FAR 28.203-1 and 28.203-2. FAR 28.203-2(a) states that, "The Government will accept only cash, readily marketable assets, or irrevocable letters of credit from a federally insured financial institution from individual sureties to satisfy the underlying bond obligations." The FAR then goes on to list acceptable and unacceptable assets in 28.203(b) and (c). Both listings are inclusive, not exclusive, so it becomes the responsibility of the Contracting Officer to determine which grouping a particular asset falls under.

The examples listed in the grouping of acceptable assets are cash, certificates of deposit, United States Government securities, stocks and bonds actively traded, and real property owned in fee simple. The examples listed in the grouping of unacceptable assets are notes, accounts receivable, foreign securities, certain examples of real property, life estates, personal property, stocks and bonds of the individual surety, corporate assets (e.g., plant and equipment), speculative assets (e.g., mineral rights), and letters of credit in certain situations. In my analysis, the asset listed in this instance - mined but not marketed coal - is closer in similarity to a corporate asset, speculative asset, or accounts receivable, than it is to cash, certificates of deposit, or U.S. Government securities; because the actual value of the named asset is not known, and can only be conjectured until an actual sale takes place. The price of coal will vary with the quality of the coal mined and the fluctuations of the market. In addition, I found the asset to be speculative because it is would present more of a burden on the Government to secure or liquidate the asset, since liquidation depends upon identifying a willing and responsible buyer. The Protester argues that mined but not marketed coal does not fall into the category of "speculative assets (e.g., mineral rights)" because the coal is out of the ground. But my analysis is that "mineral rights" includes the right to sell the coal after it is mined, and that the asset is still speculative as to liquidity and value.

Acceptance of a speculative asset is not in the best interest of the United States, which is why the FAR lists it as unacceptable. FAR 1.602-2 states that it is my responsibility to safeguard the interests of the United States. This includes the responsibility to determine the acceptability of assets securing an individual surety bond. The determination of which category the proposed asset falls into by necessity belongs to the Contracting Officer - as stated at FAR Section 28.203(a), "The contracting officer shall determine the acceptability of individuals proposed as sureties, and shall ensure that the surety's pledged assets are sufficient to cover the bond obligation." In reaching this conclusion, I consulted with legal counsel, as required by FAR 28.203(f).

FAR 28.203-1 requires that, "An individual surety may be accepted only if a security interest in assets acceptable under 28.203-2 is provided to the Government by the individual surety. The security interest shall be provided with the bond." In addition, FAR 28.203(f) states that, "Contracting Officers shall obtain the opinion of legal counsel as to the adequacy of the documents pledging the assets prior to accepting the bid guarantee." In this instance, the only documentation provided by the Individual Surety with the Bond was a "Certificate of Pledged Assets". Nothing bound the assets to the Bond except the word of the Individual Surety. There was no independent basis offered for the valuation suggested by the Individual Surety. Nor was there any independent confirmation that the assets validly belonged to the named Individual Surety. No documentation was provided to independently confirm that there was clear title, that there were no other liens or other legal rights attached to the assets. The assets were not even being held by a third party, but sat on Mr. Scarborough's land. Therefore, not only the nature of the asset, but the absence of a valid security interest caused me to reject it as speculative and therefore unacceptable.

By letter dated February 21, 2008, the attorney for the Individual Surety, Mr. E.C. Scarborough, indicated that his client offered to provide documentation supporting the quality and market price of the pledged asset. However, even if an independent proof of value and ownership had been provided, the asset would still be so speculative as to be unacceptable because of the liquidity issue stated previously.

The FAR also states, at Section 28.203(c), "If the contracting officer determines that no individual surety in support of a bid guarantee is acceptable, the offeror utilizing the individual surety shall be rejected as nonresponsible, except as provided in 28.101-4. Since the circumstances in this instance do not meet any of the exceptions set forth under 28.101-4 - there was more than one bid, etc. - the Government has no option but to reject Tip Top's bid as nonresponsible. The FAR goes on to state that, "A finding of nonresponsibility based on unacceptability of an individual surety, need not be referred to the Small Business Administration for a competency review."

The Protester indicates in his Protest that this Agency has previously accepted this asset. After review, we disagree with this contention. There is no evidence that this Agency has previously accepted unmarketed coal as a valid Individual Surety asset. In fact, no Individual Surety Bid Bonds have been approved by this Agency since I became the lead Contracting Officer for EFLHD in 2003. We have also checked with the other Divisions of this Program, and they also confirm that no Individual Surety has been accepted within their memory. In either case, it is still my responsibility as the Contracting Officer to determine whether this asset is acceptable.

Based on the foregoing, it is my determination that the decision to reject Tip Top's bid in accordance with FAR Section 14.404-2(j) is consistent with required contracting procedures as stated in the FAR.

Wanda A. Peffer
Contracting Officer

## II. LEGAL MEMORANDUM -- In response to the Bid Protest of Tip Top Construction Company – B-311305

1. Status of the Protest

The Agency received notification by facsimile transmission dated March 4, 2008, that the Comptroller General's Office of the General Accounting Office had accepted the Protest of Tip Top Construction Company (hereinafter Tip Top or the Protester).

2. Timeliness of the Protest

The Protester acknowledges that it received on February 20, 2008, a letter dated February 19, 2008, notifying it that its bid was rejected. It filed its Protest on February 29, 2008. The filing appears to be timely.

3. Legal Issue Presented by the Protest

The legal issue raised by the Protester is whether or not the Agency violated FAR provisions when it rejected the Protester's Bid for failure to furnish a bid guarantee in accordance with the requirements of the invitation for bids.

4. Basis for the Rejection of the Bid

The Protest was filed in response to the rejection of Tip Top's Bid by the Contracting Officer. The Contracting Officer determined Protester to be non-responsible based on the failure of the Protester to submit a valid Individual Surety Bid Bond, in accordance with FAR 28.203(c).

5. Waiver Can Only be Allowed under Specific Circumstances not Applicable Here

Waiver of the requirement for a bid guarantee is not applicable under the circumstances in this case. The exceptions to FAR 14.404-2(j) listed in 28.101-4 do not apply here. The exceptions listed in 28.101-4(c) are:

" (1) Only one offer is received. In this case, the contracting officer may require the furnishing of the bid guarantee before award;
(2) The amount of the bid guarantee submitted is less than required, but is equal to or greater than the difference between the offer price and the next higher acceptable offer;
(3) The amount of the bid guarantee submitted, although less than that required by the solicitation for the maximum quantity offered, is sufficient for a quantity for which the offeror is otherwise eligible for award. Any award to the offeror shall not exceed the quantity covered by the bid guarantee;
(4) The bid guarantee is received late, and late receipt is waived under 14.304;
(5) A bid guarantee becomes inadequate as a result of the correction of a mistake under 14.407 (but only if the bidder will increase the bid guarantee to the level required for the corrected bid);

(6) A telegraphic offer modification is received without corresponding modification of the bid guarantee, if the modification expressly refers to the previous offer and the offeror corrects any deficiency in bid guarantee;

(7) An otherwise acceptable bid bond was submitted with a signed offer, but the bid bond was not signed by the offeror;

(8) An otherwise acceptable bid bond is erroneously dated or bears no date at all; or

(9) A bid bond does not list the United States as obligee, but correctly identifies the offeror, the solicitation number, and the name and location of the project involved, so long as it is acceptable in all other respects."

None of these situations are present in this case. Therefore there is no basis for a waiver of the requirement to submit a valid Bid Bond.

6. Authority of the Contracting Officer

Bid bonds are a form of contract guarantee designed to protect the government's interest in the event of a bidder's default; that is, if a contractor fails to honor its contract in any respect, the bid bond secures a surety's liability for all reprocurement costs. See Matter of N.G. Simonowich, 70 Comp. Gen. 28 (1990), 90-2 CPD ¶ 298. A bid guarantee ensures that a bidder will, if required, execute a written contract and furnish payment and performance bonds. See FAR §28.001; Matter of American Artisan Products, Inc., B-292380, 2003 CPD ¶132 at 4. The guarantee is also available to offset the cost of reprocurement of the goods or services. See Matter of Paradise Construction Co., B-289144, 2001 CPD ¶192 at 2. The surety for a bid bond can be either an individual surety or a corporate surety, although there are different requirements for each. See generally FAR Part 28, Bonds and Insurance. Ultimately, the determinative question as to the acceptability of a bid bond is whether the bid documents establish that the bond is enforceable against the surety should the contractor fail to meet its obligations. See Matter of Communications by Johnson, Inc., B-255478, 94-1 CPD ¶163 at 5, as cited in Matter of Horizon Shipbuilding, Inc., B- 292992 (2003).

A required bid bond is a material condition of a solicitation. As such, in the case of sealed bid procurements, when a bidder submits a defective bid bond, the bid itself is rendered defective and must be rejected. See FAR § 28.1014(a); See Matter of Vista Contracting, Inc., B-255267, 94-1 CPD ¶ ---.

The Comptroller General has held that the contracting officer is vested with a wide degree of discretion and business judgment in determining the acceptability of an individual surety, and that they will not question such a determination so long as it is reasonable. See Matter of Gulf & Texas Trading Co., B-253991.2, 94-1 CPD ¶ ---; Matter of Eastern Maintenance Servs., Inc., B-220395, 86-1 CPD ¶ 117, Matter of: Communications by Johnson, Inc., B- 255478 (1994), Matter of Santurce Construction Corp., 70 Comp. Gen. 133 (1990), 90-2 CPD ¶ 469. It is the surety's obligation to provide the contracting officer with sufficient information to clearly establish the surety's acceptability. See Matter of Southern California Engineering Co., Inc., 69 Comp. Gen. 387 (1990), 90-1 CPD ¶ 365.

Assets of an Individual Surety Bond must be pledged to the Bond. FAR 28.203(f) states that, "Contracting Officers shall obtain the opinion of legal counsel as to the adequacy of the documents pledging the assets prior to accepting the bid guarantee." This requirement indicates the essential nature of the documents pledging the assets to the Bond. In this instance, the Certificate provided with the Bond was determined inadequate due to the lack of any independent evaluation of value, clarity of title, or liquidity. Compare to Matter of Electrical Generation Technology, Inc., B- 235809 (1989). Failure to properly question assets of an Individual Surety may result in damages to the Federal Government. See, for example, Letter (Matter of Mr. Brad J. Hutchinson), B- 230871, June 19, 1996. Therefore, even though, the Comptroller General has held in Matter of Altex Enterprises, Inc., B-228200, Jan. 6, 1988, 88-1 CPD ¶ 7, that an agency may not require a surety to grant it a security interest in an asset, the Comptroller General has also held that an agency is entitled to know that, if necessary, assets on which an individual surety relies to satisfy a guarantee can be reached in the event of a default. See Matter of Aceves Construction and Maintenance, Inc., B- 233027, January 04, 1989.

While it is true that agencies may not automatically reject a bidder for unacceptable individual sureties because the SF 28 and supporting documentation contain minor defects that might easily be remedied - see Matter of Gene Quigley, Jr., 70 Comp. Gen. 273 (1991), 91-1 CPD ¶ 182 - in this instance the omitted documents would not have changed the essential nature of the assets. It is valid for the Contracting Officer to reject assets when he or she determines them to be speculative. See Matter of Jay Jackson & Associates, B- 271236 (1996). The key question in determining the sufficiency of a bid guarantee is whether the government will be able to enforce it. See Matter of Ware Window Co., et al., B-233367 et al., (1989), 89-1 CPD ¶ 122, cited in Kardan Construction, Inc., B- 235324 (1989).

7. Reference to Non-Responsiveness

The Protest refers to the bid having been rejected as non-responsive. The financial acceptability of an individual surety is a matter of responsibility and not responsiveness. See Matter of Transcontinental Enterprises, Inc., 66 Comp.Gen. 549, 87-2 CPD ¶ 3. In the event that the Contracting Officer misused the word "non-responsive" in conversation with Protester (it does not appear in the rejection letter), it is of no legal consequence. It is plain that the contracting officer was making a responsibility determination, regardless of any erroneous use of the word non-responsive. See Matter of Singleton Contracting Corp., B-216536, (1985), 85-1 CPD ¶ 355; Matter of Aceves Construction and Maintenance, Inc., cited above.

8. Conclusion

Based on the foregoing, I submit, as Counsel to the administering Division, that the Contracting Officer's actions were appropriate and were consistent with required contracting procedures.

__________________________
Julia L. Perry
Counsel to the Division
Eastern Federal Lands Highway Division
Federal Highway Administration
21400 Ridgetop Circle, Room 300
Sterling, VA 20166
(703)404-6206 (phone)
(703)404-6217 (fax)
**Julia.perry@fhwa.dot.gov**

CERTIFICATE OF SERVICE

I hereby certify that a copy of this Agency Response has been provided by email to Michael A. Gordon, as Representative of Protester Tip Top Construction Corporation, Inc., at Michael A. Gordon, PLLC, 1629 K Street, N.W., Washington, D.C., 20006, via mgordon202@aol.com, this _____ day of March, 2008.

Sincerely,

____________________________________
Julia L. Perry as Agency Representative