**MICHAEL A. GORDON PLLC**
1629 K Street N.W., Suite 300
Washington, D.C. 20006
(202) 508-1464 (telephone)
(202) 349-1701 (facsimile)

April 14, 2008

**VIA E-MAIL**
Kenneth Kilgour, Esquire
Office of the General Counsel
U.S. Government Accountability Office
441 G Street N.W.
Washington, D.C. 20548

Re: B-311305; Comments on the GAO's Telephone Conference

Dear Mr. Kilgour:

During a telephone conference on April 11, 2008, the GAO expressed its informal view that the term "personal property" in FAR §28.203-2(c)(4) was intended to mean anything that was not real property and therefore, that all personal property not listed in FAR §28.203(b) was unacceptable per se. This interpretation is incorrect because:

A. It is inconsistent with FAR §28.203(a), which states:

"(a) The Government will accept only cash, readily marketable assets, or irrevocable letters of credit from a federally insured financial institution from individual sureties to satisfy the underlying bond obligations." (Emphasis added).

The term "readily marketable" is a standard set forth in the "legislative history" of the regulation for determining the "Acceptability of Assets", the title of the regulation at issue. The FAR drafters' intent was to "identify and limit" the types of acceptable assets pledged by individual sureties. See 53 FR 44564-01 (Nov. 3, 1988). These types were to be limited based on a "standard" of "acceptability" based on whether the assets had an "identifiable value and ready marketability," not by an exclusive list of acceptable assets. Specifically, the FAR drafters stated that among:

"... other things, the revisions would:

2. Identify and limit the types of assets which are acceptable for pledge based upon a standard of identifiable value and ready marketability." (Emphasis added).

This standard of acceptability was deemed to adequately protect the Government's interests and is included in the term "readily marketable" in FAR ¶28.203-2(a). That is why the regulation is called "Acceptability of Assets" instead of "Acceptable Assets."



COMMERCIAL TRADE SECRETS; DISCLOSURE OUTSIDE THE FEDERAL GOVERNMENT IS SUBJECT TO 5 U.S.C. §551 AND 18 U.S.C. §1905

B. The language used in FAR §28.203(b) shows that the list is non-exclusive. It states in pertinent part:

"(b) Acceptable assets include-- ..." (emphasis added).

The word "include" means that other types of assets can be "included" which, while not on the list, meet the section (a) standard of identifiable value and ready marketability. Nothing in the legislative history indicates that an agency was prohibited from accepting any type of acceptable asset from an individual surety if it was not on the list. Indeed, there would be no legitimate reason to prohibit assets meeting this standard. Had the FAR drafters' intent been an exclusive list, the word "include" would have been "are" and the drafters would have unequivocally stated that the types of assets identified were limited to the five types listed in section (a).

C. The language used in FAR §28.203 (c) shows that the list in section (b) is non-exclusive. It begins:

"(c) Unacceptable assets include but are not limited to-- ..."

There would be no reason to reserve a right to add new unacceptable assets if the only acceptable assets were those five listed in part (b).

D. Based on the above, and in the language in section (c), FAR §28.203(c)(4) does not prohibit all "personal property" assets if not listed in section (b). It states:

"(4) Personal property other than that listed in paragraph (b) of this subsection (e.g., jewelry, furs, antiques) ...." (Emphasis added).

Interpreted consistently with the regulation as a whole, the phrase "other than that listed in paragraph (b)" was intended to assure that the acceptable personal property assets on the list in part (b) were not unacceptable. For example, stocks and bonds personally owned by the surety that were listed on the national exchanges in paragraph (b), and thus which had an identifiable value and were readily marketable were acceptable. However, personal property such as "jewelry, furs and antiques" which are unique and often valued based on personal tastes do not have an identifiable value and are not readily marketable, and thus, are unacceptable. This is true for all of the other items listed as unacceptable in part (c).[1]

---

[1] An account receivable in subpart (c)(1) has an identifiable value, but it is not readily marketable. Foreign securities in subpart (c)(2) and foreign real property in subpart (c)(3)(i) do not have an identifiable value and are not readily marketable. While real property is acceptable as defined in part (b) under conditions where its value can be readily ascertained and is considered readily marketable, experience has shown that personal residences in subpart (c)(ii) and real property owned jointly with another (unless the parties agree to pledge it jointly) in subpart (c) (iii), and life estates or future interest in real property in subpart (c)(iv) are either not readily marketable or do not have an identifiable value. Finally, letters of credit in subpart (c)(8), unless irrevocable are not readily marketable.



COMMERCIAL TRADE SECRETS; DISCLOSURE OUTSIDE THE FEDERAL GOVERNMENT IS SUBJECT TO 5 U.S.C. §551 AND 18 U.S.C. §1905

The view that "personal property" in this subsection was intended to mean any asset that was not "real property" is disproved by the language in §§(c).

First, §§(c)(4) listed specific examples. There was no need to do this if only the "personal property" listed in section (b) was acceptable.

Second, the FAR drafters would not have included other examples of unacceptable "personal property" in §§(c). Specifically, the FAR drafters included as unacceptable "personal property", foreign securities in subpart §§(c)(1), stocks and bonds of the individual surety in a controlled, affiliated, or closely held concern of the offeror/contractor in §§(c)(5), "corporate assets (e.g. plant equipment, inventory)" in §§(c)(6), "speculative assets (e.g. mining interests)" in §§(c)(7), or letters of credit in subpart §§(c)(8). Under the GAO's interpretation of §§(c)(4), these assets already would have been prohibited. Thus, all of these subsections would be superfluous and insignificant in violation of established canons of interpretation. See Office of Emergency Preparedness, 49 Comp. Gen. 104, B-148946, (August 19, 1989); Postmaster General, 38 Comp. Gen. 128, B-135333 (August 19, 1958); see also VA Venture; St. Anthony Medical Center, Inc., B-222622-.2, September 12, 1986, 86-2 CPD 289.

The GAO's preliminary interpretation is also undermined by other canons of statutory and regulatory construction, *ejusdem generis* and *noscitur a sociis*, which stand for the proposition that when a general term (here, "personal property") is grouped with narrower terms in a list "(i.e. jewelry, furs and antiques)", the narrower terms limit the scope of the general term. This Office and the U.S. Supreme Court follow this principle. Postmaster General, 50 Comp. Gen. 255, B-166772, October 7, 1970, 1970 CPD ¶ 95 ("calamitous visitation" followed by examples which limited the term to the types of calamities listed); Dolan v. U.S.P.S., 546 U.S. 481 (2006)(while "negligent transmission" could encompass a larger number of acts, listing of examples limited scope of the term); Washington State Department of Social and Health Services, et al., v. Guardianship Estate of Keffeler, 537 U.S. 371, 384-85 (2002) ("other legal processes" defined by the legal processes listed in the statute by their characteristics); Forbes Lithographic Manufacturing Co. v. Worthington, 132 U.S. 655 (1889) ("iron show cards" were not "printed matter" based on the paper products listed as examples in the statute); Neal v. Clark, 95 U.S. 704 (1877) (although acts of "fraud" were exempt from protection of bankruptcy laws, by reference to "embezzlement" in the statute, the court concluded that other species of indirect fraud were not exempted).

The bottom line is that the personal property specifically identified by examples in§§(c)(4), "jewelry, furs and antiques" are totally unlike coal, which has an identifiable value by reference to national indices, including the Department of Energy's website, and thus, is readily marketable.



COMMERCIAL TRADE SECRETS; DISCLOSURE OUTSIDE THE FEDERAL GOVERNMENT IS SUBJECT TO 5 U.S.C. §551 AND 18 U.S.C. §1905

E. The GAO's preliminary interpretation was not proffered by the Federal Highway Administration ("FWHA") in spite of its attempts to find any type of unacceptable asset. Nor is it accepted by the other federal agencies that approved bonds pledging "previously mined, extracted, stockpiled, marketable coal" or other "personal property" not on the list. The practice of federal agencies is significant and strongly supports Tip Top's interpretation of FAR §28.203-2.

The FWHA's Failure to Make Inquiry Renders the Interpretation Issue Moot

If after reviewing today's submissions, the GAO continues to have questions relating to the interpretation of the regulation, the protest must still be sustained. FWHA alleged that during its evaluation of the bid bond, it had material concerns about the acceptability of the pledged asset. The IFB p. J-2, and this Office's case law required FWHA to afford Tip Top's surety an opportunity to respond to those concerns and if they were unresolved, to allow the individual surety to substitute the asset.

The IFB states in pertinent part:

"...the CO may, after reviewing the affidavit of the individual surety and documentary information on the security interest and the assets pledged, by certified mail, to the surety's business or resident address (as shown on the bond) request the surety to provide further information and/or documents with respect to any of the documents provided. The CO may require such information to be furnished under oath. Failure of the surety to accept such mail or failure of the surety to respond with the requested information or documents within 7 business days of receipt of the request, will be cause for rejection of the surety."

This IFB provision follows GAO case law requiring an agency to make the type of material inquiries FWHA has asserted. Gene Quigley, Jr., 70 Comp. Gen. 273, B-241565, February 19, 1991, 91-2 CPD ¶182. FWHA was not permitted to assume the worst and reject the bid. D.M. Potts Corporation, B-231855, November 4, 1988, 88-2 CPD ¶440.

As argued by the surety and Tip Top during the telephone conference, in review period, Tip Top's surety, if unable to satisfy the stated FWHA concerns, had the right to submit substitute assets. FAR §28.203-4, "Substitution of Assets" states:

"An individual surety may request the Government to accept a substitute asset for that currently pledged by submitting a written request to the responsible contracting officer. The contracting officer may agree to the substitution of assets upon determining, after consultation with legal counsel, that the substitute assets to be pledged are adequate to protect the outstanding bond or guarantee obligations. If acceptable, the substitute assets shall be pledged as provided for in subpart 28.2."


COMMERCIAL TRADE SECRETS; DISCLOSURE OUTSIDE THE FEDERAL GOVERNMENT IS SUBJECT TO 5 U.S.C. §551 AND 18 U.S.C. §1905

FWHA's discretion was to be limited solely on whether the substitute assets are acceptable.[2] Tip Top's surety would have submitted an asset conforming to the five assets listed as acceptable. Since an acceptable bid bond would result in an award to Tip Top, FWHA's failure to provide this opportunity before rejecting the bid establishes the requisite prejudice.

This Office's preliminary view during the telephone conference was that the regulation was inapplicable because it preceded the regulation dealing with release of bonds or alternatively, that it appears to address a surety deciding to replace a performance or payment bond after award. This is not in accordance with the plain language of the regulation or this Office's case law.

The regulation contains no restrictions as to the type of bond or the timing. Its placement in the regulations follows FAR §28.203-3 which describes requirements for submission of an acceptable real estate asset, a matter that would be part of the Contracting Officer's review of the acceptability of assets. The next logical regulation would be one addressing a situation during the review of a bid bond prior to award where the assets were questioned by the agency; or alternatively, if the surety determined that the asset pledged needed to be replaced. The regulation would also cover substitution of assets in a performance or payment bond after award if either bond's viability was questioned by the agency or if the surety determined for any reason that the assets needed to be replaced. The regulation addressing release of the bonds that follows completion of the validity of each stage would logically follow these issues. Any doubts are resolved by this Office's case law.

In U.S. Floors, Inc., B-241552, B-241555, February 6, 1991, 91-1 CPD ¶130, a protest alleged that there were deficiencies in the awardee's bid bond. After a protest was filed, the awardee's surety requested that certain personal property and real estate that had been pledged be substituted as its assets were unacceptable. The GAO rejected the protester's position that the initial pledged assets, even though unacceptable, required rejection of the bid bond, stating:

> "... FAR § 28.203-4 specifically permits the contracting officer to agree to a surety's substitution of assets for those originally pledged after determining that the substitute assets to be pledged are adequate to protect the outstanding bond or guarantee obligation. (footnote omitted). Hence, we find that the sureties' initial failure to submit a pledge of assets, as well as the other documentation noted by USF, and the fact that a substitution of assets by the surety Brent D. Butcher was permitted, had no effect on the acceptability of the Butcher bid."

Accord Bundick Enterprises, Inc., 70 Comp. Gen. 94, B-239867-.2, November 19, 1990, 98-2 CPD ¶402 (regulation means substitution permitted for assets pledged).

---

[2] The agency concerns about Tip Top's schedule, which Tip Top believes were addressed by its CPM schedules, were not an appropriate consideration in determining whether to accept the bid bond since this would have circumvented the Small Business Administration's Certificate of Competency rules.



COMMERCIAL TRADE SECRETS; DISCLOSURE OUTSIDE THE FEDERAL GOVERNMENT IS SUBJECT TO 5 U.S.C. §551 AND 18 U.S.C. §1905

CONCLUSION

Tip Top believes that this Office's preliminary views are incorrect and would undermine the intent of the FAR standard for acceptable assets on which the assets at issue have been accepted by many federal agencies. Tip Top trusts that upon review of Tip Top's or the individual surety's submissions today, this Office will agree that FAR §28.203-2(c)(4) does not prohibit coal and will conclude that "previously mined, extracted, stockpiled, marketable coal" is an acceptable asset with an identifiable value and readily marketable, totally unlike the "jewelry, furs and antiques" and the other assets the agency cited as unacceptable.

But even if this Office still has a question as to the intent in the FAR, the protest still should be sustained because the agency failed to raise any of its alleged concerns regarding this asset before rejecting it and thus, deprived Tip Top and its surety of the right to substitute acceptable assets, which the individual surety has stated it possesses. An offer to this effect has already been made to the FWHA. No response has been received.

No legitimate basis will exist for rejecting acceptable substitute assets given the $1.4 million in savings Tip Top's bid represents. Accordingly, for the reasons set forth in Tip Top's and the individual surety's submissions to this Office, the protest should be sustained and this Office should recommend that (a) the agency either accept the pledged asset or an acceptable substitute asset and (b) award the contract to Tip Top.

Respectfully submitted,

Michael A. Gordon
Fran Baskin
Counsel for Tip Top Construction Corp.

cc. Julia L. Perry, Esq.



COMMERCIAL TRADE SECRETS; DISCLOSURE OUTSIDE THE FEDERAL GOVERNMENT IS SUBJECT TO 5 U.S.C. §551 AND 18 U.S.C. §1905