GAO
Accountability * Integrity * Reliability

United States Government Accountability Office
Washington, DC 20548

# Facsimile Transmission Sheet

If transmission problems occur, please call
202-512-4768 and ask for Kenneth Kilgour.
Our fax number is 202-512-9749.

**Date:** May 5, 2008

Number of pages, including this cover sheet: ___

**Re:** B-311305
Tip Top Construction Corporation

**From:** Kenneth Kilgour
Senior Staff Attorney

| Name | Firm/Agency | Phone | Fax |
|---|---|---|---|
| Michael Gordon, Esq. | Michael A. Gordon, PLLC | 202-508-1464 | 202-349-1701 |
| Julia Perry, Esq. | Federal Highway Administration | 703-404-6206 | 571-404-6217 |

**Comments:**

Please see the attached decision.

GAO
Accountability * Integrity * Reliability
United States Government Accountability Office
Washington, DC20548

Comptroller General
of the United States

# Decision

**Matter of:** Tip Top Construction Corporation

**File:** B-311305

**Date:** May 2, 2008

Michael A. Gordon, Esq., and Fran Baskin, Esq., Michael A. Gordon, PLLC, for the protester.
Julia L. Perry, Esq., Department of Transportation, for the agency.
Kenneth Kilgour, Esq., and Christine S. Melody, Esq., Office of the General Counsel, GAO, participated in the preparation of the decision.

**DIGEST**

Protest that agency improperly rejected bid as nonresponsive for lack of a valid bid bond is denied where the contracting officer reasonably determined that the assets pledged by the surety, which were incapable of being placed in escrow, were unacceptable.

**DECISION**

Tip Top Construction Corporation protests the rejection of its apparent low bid as nonresponsive for lack of a valid bid bond, under invitation for bids (IFB) No. DTFH71-08-B-00002, issued by the Department of Transportation, Federal Highway Administration (FHWA), for construction of a five-leg roundabout on the island of St. John, U.S. Virgin Islands. Tip Top contends that the FHWA unreasonably concluded that its bid bond was defective.

We deny the protest.

The IFB, issued November 1, 2007, required each bidder to submit with its bid a bid guarantee, or bid bond,[1] in the amount of not less than 20 percent of the bid price or

---

[1] A bid guarantee is a form of security ensuring that a bidder will, if required, execute a written contract and furnish payment and performance bonds. Federal Acquisition Regulation (FAR) § 28.001; American Artisan Prods., Inc., B-292380, July 30, 2003, 2003 CPD ¶ 132 at 4. The guarantee is also available to offset the cost of reprocurement of the goods or services. Paradise Constr. Co., B-289144,
(continued...)

$3 million, whichever is less. After bid opening, the protester was the apparent low bidder. The protester's bid contained an individual surety bid bond in the amount of $1.8 million, with E.C. Scarborough identified as the individual surety.[2] The assets were described as an "allocated portion of $191,350,000.00 of previously mined, extracted, stockpiled and marketable coal, located on the property of E.C. Scarborough, [followed by a precise description of the property location]." Bid Bond, Certificate of Pledged Assets. The contracting officer determined that the surety's assets did not meet the requirements of the FAR, Statement of Facts at 1, and notified the protester that its bid was rejected because the assets were unacceptable. The protester and the surety argue that the contracting officer abused her discretion when she rejected the bid bond on the basis that the surety's assets were unacceptable.[3]

The contracting officer is vested with a wide degree of discretion and business judgment in determining the acceptability of an individual surety, including the adequacy of the surety's assets, and we will not question such a determination so long as it is reasonable. Santurce Constr. Corp., B-240728, Dec. 10, 1990, 90-2 CPD ¶ 469 at 4. We see no basis to question the contracting officer's determination here.

---

(...continued)
Nov. 26, 2001, 2001 CPD ¶ 192 at 2. Where the guarantee is in the form of a bid bond, it secures the liability of the surety to the government if the holder of the bond fails to fulfill these obligations. Id. The surety for a bid bond can be either an individual surety or a corporate surety, although there are different requirements for each. See generally FAR Part 28, Bonds and Insurance.

[2] We allowed the individual surety to participate in the protest, given his interest in the outcome. See Bid Protest Regulations, 4 C.F.R. § 21.3(j) (2007). The surety was represented by Dennis C. Ehlers, Esq., of the law firm of McManus, Schor, Asmar & Darden, LLP. The surety participated in an April 10 teleconference conducted by GAO and submitted comments on the protest.

[3] The protester also implies that the agency's rejection of its bid due to the inadequacy of its bid bond was pretextual, an improper rationale for the agency to avoid contract award to the protester. Comments at 4-5. Essentially, the protester is alleging that agency officials acted in bad faith. Government officials are presumed to act in good faith and any argument that contracting officials are motivated by bias or bad faith must be supported by convincing proof; we will not attribute unfair or prejudicial motives to procurement officials on the basis of inference or suppositions. ACC Constr. Co., Inc., B-289167, Jan. 15, 2002, 2002 CPD ¶ 21 at 4. Based on our review of the record, which as discussed below supports the reasonableness of the agency's rejection of the bid bond, we conclude that the protester has failed to establish bad faith. See Innovative Commc'ns Techs., Inc., B-291728, B-291728.2, Mar. 5, 2003, 2003 CPD ¶ 58 at 10.

The FAR states in pertinent part:

> 28.203-1 Security interests by an individual surety.
> (a) An individual surety is acceptable for all types of bonds except position schedule bonds. . . .
> (b) The value at which the contracting officer accepts the assets pledged must be equal to or greater than the aggregate penal amounts of the bonds required by the solicitation and may be provided by one or a combination of the following methods:
>> (1) An escrow account[4] with a federally insured financial institution in the name of the contracting agency. . . . Acceptable securities for deposit in escrow are discussed in [FAR §] 28.203-2 [below]. While the offeror is responsible for establishing the escrow account, the terms and conditions must be acceptable to the contracting officer. . . .
>> (2) A lien on real property, subject to the restrictions in [FAR §§] 28.203-2 and 28.203-3.
>
> 28.203-2 Acceptability of assets.
> (a) The Government will accept only cash, readily marketable assets, or irrevocable letters of credit from a federally insured financial institution from individual sureties to satisfy the underlying bond obligations.
> (b) Acceptable assets include–
>> (1) Cash, or certificates of deposit, or other cash equivalents with a federally insured financial institution;
>> (2) United States Government securities at market value. (An escrow account is not required if an individual surety offers Government securities held in book entry form at a depository institution. . . );
>> (3) Stocks and bonds actively traded on [eight named U.S. security exchanges] with certificates issued in the name of the individual surety. . . ;
>> (4) Real property owned in fee simple [with various restrictions];
>> (5) Irrevocable letters of credit (ILC) issued by a federally insured financial institution in the name of the contracting agency. . . .

---

[4] An escrow account is a "bank account, generally held in the name of the depositor and an escrow agent, that is returnable to depositor or paid to a third person on the fulfillment of specified conditions." Black's Law Dictionary 19 (8th ed. 2004).

(c) Unacceptable assets include but are not limited to –

*****

(4) Personal property other than that listed in paragraph (b) of this subsection (e.g., jewelry, furs, antiques).

FAR §§ 28.203-1, 28.203-2 (emphasis added).

The FAR also specifies that when a bidder is using an individual surety, the bidder must submit a standard form (SF) 28, Affidavit of Individual Surety. FAR § 28.106-1(e). Where an individual surety is pledging assets "other than real estate" to back the bond, the SF 28 requires the surety to "describe the assets, the details of the escrow account, and attach evidence thereof."[5] See SF 28, block 7(b) (emphasis added).

The protester and the surety offered several arguments in support of the protest, both during the teleconference and in their briefs. Because the protester most succinctly summed up the arguments, we will refer to them as the protester's, though the surety incorporated the protester's arguments by reference. We have considered all of the protester's and surety's arguments and find them without merit; we address here primarily those that concern the adequacy of the bid bond, specifically, the reasonableness of the agency's finding that the assets were unacceptable.

The protester focuses on four passages from the FAR to support its assertion that the contracting officer unreasonably determined that its surety's asset was unacceptable. First, it argues that FAR § 28.203-2(a)–"The Government will accept only cash, readily marketable assets, or irrevocable letters of credit"–makes any "readily marketable asset" acceptable. Second, the protester argues that paragraph (b) of FAR § 28.203-2 is not an all-inclusive list–"[a]cceptable assets include," (emphasis added)–and so the drafters of the FAR must have intended for other assets, not included in the list, to also be acceptable. Third, the statement in FAR § 28.203-2(c) that "[u]nacceptable assets include but are not limited to. . ." suggests that there must be acceptable assets other than those listed in paragraph (b). Finally, the protester argues that the asset offered, mined coal, is nothing like the assets that the FAR cites as examples of prohibited personal property–jewelry, furs and antiques. The protester argues that what distinguishes unacceptable assets from acceptable assets is the latter's identifiable value and ready marketability. Thus, the protester argues, an antique, more difficult to appraise and to liquidate, is

---

[5] The SF 28 submitted by the protester failed to include the details of an escrow account, instead stating, "Certificate of Pledged Assets, attached hereto." Protester's SF 28.

unacceptable, while coal, which has an ascertainable value and a ready market, is acceptable.

We disagree. The protester's interpretation of the FAR to permit the acceptance of coal as an asset reads out of the FAR the indispensable guarantee that the government can collect on the bond, namely, the fact that the personal property backing the bond has been placed in escrow.[6] Thus, to be an acceptable personal property asset under the FAR, an asset must be capable of being placed in an escrow account. See FAR § 28.203-1(b)(1). As noted above, SF 28 requires individual sureties to describe the escrow account into which the surety will place the personal property being pledged in support of the bond. The protester's arguments are inconsistent with the regulatory framework set forth in the FAR and the accompanying SF 28.

The protester also asserts that it had a right to substitute assets under FAR § 28.203-4. Comments on Teleconference at 4. That provision gives a surety the right to request asset substitution, not the right to the substitution. See FAR § 28.203-4 (noting that an "individual surety may request the Government to accept a substitute asset. . . . The contracting officer may agree to the substitution of assets."). Furthermore, while agencies may not automatically reject a bidder for unacceptable individual sureties because the SF 28 and supporting documentation contain minor defects that might easily be remedied, Gene Quigley, Jr., B-241565, Feb. 19, 1991, 91-1 CPD ¶ 182 at 4, the wholesale substitution of assets is not one of the minor document defects that are contemplated in Quigley.

The protest is denied.

Gary L. Kepplinger
General Counsel

---

[6] The surety incorrectly asserts that during the teleconference the GAO attorney stated that coal was not a readily marketable asset and that the surety had not given the agency a security interest in the coal. Coal is not an acceptable asset, and thus whether it is a readily marketable asset is immaterial to the protest resolution. As the discussion of the requirements of the FAR makes clear, the government's intent is not to obtain simply a security interest in personal property, but rather a security interest that it can then perfect through filing, rather than through taking possession of the asset. For a brief discussion of the difference between perfected and unperfected security interests, see Black's Law Dictionary, supra at 1173, 1387.