IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

| | | |
|---|---|---|
| TIP TOP CONSTRUCTION, INC. | ) | |
| | ) | |
| Plaintiff, | ) | No. 08-352C |
| | ) | (Judge Bush) |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**INDEX OF EXHIBITS LISTED IN DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS AND CROSS-MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

| Exhibit | Description |
|---|---|
| A | Declaration of Albert C. Rodebaugh, II Dated June 10, 2008 |
| B | Permit Renewal Notice Letter from Sherry Grubb, West Virginia Department of Environmental Protection, Mining and Reclamation, to Green Valley Coal Company, Dated July 11, 2002 |
| C | Letter from David C. Hughart, Green Valley Coal Company, to West Virginia Department of Environmental Protection, Dated July 28, 2002 |
| D | Letter from Thomas H. Matheny, West Virginia Department of Environmental Protection, Division of Mining and Reclamation, to David C. Hughart, Green Valley Coal Company, Dated July 29, 2002 |
| E | Letter from Larry A. Marshall, Green Valley Coal Company, to West Virginia Department of Environmental Protection, Dated December 4, 2007 |
| F | November 1996 Deed |
| G | 1992 Quitclaim Deed |

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

| | | |
|---|---|---|
| TIP TOP CONSTRUCTION, INC. | ) | |
| | ) | |
| Plaintiff, | ) | No. 08-352C |
| | ) | (Judge Bush) |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DECLARATION OF ALBERT RODEBAUGH**

I, Albert Rodebaugh, hereby declare under penalty of perjury the following:

1. I am a specialist in the Inspection and Enforcement Division of the West Virginia Department of Environmental Protection.

2. The only permits currently in place for the R-707 site in Nicholas County, West Virginia, are an Article 3 permit, which is a mining and reclamation permit, and NPDES (National Pollution Discharge Elimination System) permit, both granted to Green Valley Coal. Without modification, these permits do not permit reprocessing coal refuse.

3. Anyone wishing to reprocess coal refuse on the site would be required to post all required bonds at the time of issuance of the permit or modification of the current permits. These bonds would include a reclamation bond and a water treatment bond.

4. If an application were made and all required bonds were posted, at least 51 days would be necessary for the advertisement of a significant revision, which the change from a reclamation permit to a reprocessing permit constitutes, and comment period. A review of plans submitted by the permit-seeker, including a reprocessing plan, abandonment plan, and sediment control plan, would then begin.

EXHIBIT A

I make this declaration freely and voluntarily and under penalties of perjury.

Executed in Oak Hill, West Virginia, this 10th day of June 2008.

Albert Rodebaugh II

Albert Rodebaugh

**DEPARTMENT OF ENVIRONMENTAL PROTECTION**
**Mining and Reclamation**
10 McJunkin Road
Nitro, WV 25143-2506
July 11, 2002

GREEN VALLEY COAL COMPANY
PO BOX 190
LEIVASY, WV 26676

**Permit Renewal Notice Letter**

Dear Permitee:

In accordance with West Virginia Code 22-3-19, the following permit R070700 issued to GREEN VALLEY COAL COMPANY is subject to expiration on 2/1/03.

Application for renewal of the aforementioned permit must occur at least 120 days prior to permit expiration. Therefore, you must submit a MR-17 application for permit Renewal to the local DEP Regional Office on or before 10/4/02 complete with all required attachments.

It is important to note that the following items must be prepared and submitted with the renewal application: A current insurance certificate and all necessary permit requirements for National Pollutant Discharge Elimination System (NPDES). Further, If modifications are required to comply with 22-3-19(a)(1)(A), a compliance schedule shall be submitted with the application specifying the times of submitted information. Advertisement for Renewal/Reissuance shall be accomplished after submission of application.

Renewal packages are available at the regional office for your use which include Forms MR-17 Application for Permit Renewal, general procedures, and sample renewal advertisements. Inclusive in this process is the reissuance of NPDES permits. Appropriate instructions for this effort are included in the renewal Package. The Director shall waive the requirements for renewal if the permitee certifies in writing that all coal extraction is completed, that all backfilling and regrading will be completed and reclamation activities ongoing.

Failure to make timely submittals could result in enforcement actions by this agency, or possible invalidation of the above referenced permit.

Sincerely,

Sherry Grubb

Sherry Grubb

cc: Oak Hill Regional Office

**EXHIBIT B**

**Green Valley Coal Company**
**P. O. Box 190**
**Leivasy, WV 26676**
**304/846-6600**

July 28, 2002

State of West Virginia
Division of Environmental Protection
116 Industrial Drive
Oak Hill, WV 25901
Att: Mr. Thomas Matheny

RE: Permit Renewal R-707

On behalf on Green Valley Coal Company and in accordance with CRS 38-2-3.27, we are requesting a waiver on the renewal requirements for permit R-707. All coal disposal has been completed and backfilling, regrading and reclamation will be completed.

I trust this meets with your approval and if you have any questions or comments, please feel free to contact this office.

Respectfully submitted,

David C. Hughart

David C. Hughart
President

Sworn and subscribed before me this 28 day of July, 2002.

Frances M. Meadows
Notary Public

My Commission Expires: December 15, 2003

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
FRANCES M. MEADOWS
BOX 88
Cottle, WV
My Commission Expires December 15, 2003

**RECEIVED**
**Office of Mining and Reclamation**
JUL 29 2002
**Oak Hill**

**EXHIBIT C**

Division of Mining and Reclamation
116 Industrial Drive
Oak Hill, West Virginia 25901
(304) 465-1911 Telephone
(304) 465-0031 Fax

# West Virginia Department of Environmental Protection

Bob Wise
Governor

Michael O. Callaghan
Cabinet Secretary

July 29, 2002

Mr. David C. Hughart
Green Valley Coal Company
PO Box 190
Leivasy, West Virginia 26676

Dear Mr. Hughart:

In accordance with CSR 38-2-3.27, your request for a waiver of the renewal of Permit Number R-707 has been approved based on the following conditions:

1. No further coal extraction or refuse disposal can occur on this permit.

2. Reclamation activities on this permit must remain ongoing until complete.

Should you fail to comply with the above conditions, enforcement action may be initiated requiring the renewal of this permit.

If you have any questions, please contact me at your convenience.

Yours truly,

Thomas H. Matheny

Thomas H. Matheny
Environmental Inspector Supervisor

CC: Nitro File
Regional File ✓
Inspector
Permit Supervisor



EXHIBIT D

GVC

**Green Valley Coal Company**
**P. O. Box 190**
**Leivasy, West Virginia 26676**
**Phone: (304) 846-6600 Fax (304) 846-6693 E-mail: larry.marshall@masseyenergyco.com**

approved RKt 12-6-07

RECEIVED
Office of Mining & Reclamation
DEC 04 2007
OAK HILL

December 4, 2007

State of West Virginia
Department of Environmental Protection
116 Industrial Drive
Oak Hill, WV 25901
Att: Mr. Russell Keaton

RE: Request for Time Extension
R-707

Dear Mr. Keaton:

On behalf of Green Valley Coal Company, due to the inclement winter weather conditions and safety concerns we are requesting a time extension for completing the regarding on permit R-707. Approximately 1/3 of the outslopes have been track in and seeded. We will resume reclamation activities in the spring of 2008, which should be no later than the last of May.

I trust this meets with your approval and if you have any questions on this matter, please feel free to contact this office.

Thank you.

Respectfully submitted,

Larry A. Marshall

Cc: D. Hughart
S. Hatfield

**EXHIBIT E**

90.20 17.50 36425

BOOK 374 PG 680

Barry L Mullens
24 Merald Rd.
Rainelle WV 25962

THIS DEED made dated this 15th day of November 1996, by and between THE LADY H COAL COMPANY, INC., a corporation, CONSOLIDATED SEWELL, INC., a corporation, and SEWELL COAL COMPANY, a corporation, jointly as Grantor, and BARRY L. MULLENS and WEYMOUTH L. MULLENS, jointly as Grantee;

WHEREAS, Grantor is a debtor-in-possession in proceedings now pending in the United States Bankruptcy Court for the Southern District of West Virginia who has authorized Grantor to sell the real estate owned by it free and clear of all liens and encumbrances at an auction sale held on April 17, 1996;

WHEREAS, Grantee was the highest bidder at auction for the property conveyed by this instrument and the said bankruptcy court has approved and confirmed such sale of real estate free and clear of liens and encumbrances, as noted by the Order Confirming Sales Under the Motion of Debtor for Approval of Auction Sale Procedures, for Authority to Sell Real and Personal Property Free and Clear of Liens and Encumbrances, and for Assignment of Executory Contracts and Leases, entered May 10, 1996, a certified copy of which is attached hereto as Exhibit "A";

WHEREAS, the foregoing bankruptcy court order provides that a list of liens included in those liens which are released by operation of the foregoing order should be presented to the Offices of the Clerks of the County Commission of Nicholas County and Greenbrier County, West Virginia and such list has been prepared and attached hereto as Exhibit "B".

NOW, THEREFORE, WITNESSETH: that for and in consideration of the sum of Twenty Thousand One Hundred Dollars ($20,100), the receipt and sufficiency of which is hereby acknowledged, Grantor hereby GRANTS and CONVEYS unto Grantee, as joint tenants with the right of survivorship, and not as tenants in common, all of Grantor's right, title and interest in and to that tract of land in Kentucky District, Nicholas County, West Virginia, situate



EXHIBIT F

along with eastern right-of-way of the Railroad Property and on the waters of Panther Creek and Adkins Lick, more particularly bounded and described as follows:

Beginning at a stake, corner to tract W-22, thence in part with tract W-22; S 19-20-35 W. 2108.90 feet passing a set stone, corner to tracts W-22 and W-24 at 10-98.90 feet, in all 2108.90 feet to a point, thence; N 83-56-01 W. 254.61 feet to a point, thence; N 51-29-08 W. 738.70 feet to a point, thence; N 03-37-17 W, 870.74 feet to a point, thence; N 54-34-36 W, 816.06 feet to a point, thence; N 66-35-16 W, 422.81 feet to a point, thence; N 06-15-56 W, 339.03 feet to a point, thence; N 79-00-00 W, 265.00 feet to a point, in Little Laurel Creek Road, thence; N 16-40-00 W, 135.49 feet to a point, thence; S 79-00-00 E, 362.00 feet to a point, in Little Laurel Creek, thence along the meanders of said creek; N 00-37-52 W, 758.76 feet to a point, thence; N 19-23-37 E, 548.10 feet to a point, thence; N 14-06-30 E, 771.26 feet to a point, thence; N 04 ~ 32 W, 383.02 feet to a point, thence; N 43-26-33 E, 234.14 feet to a point, thence; N 30-13-02 E, 315.93 feet to a point, thence; N 08-27-32 E, 197.14 feet to a point, thence; N 00-00-00 E, 237.00 feet to a point, in Little Laurel Creek, thence; N 09-37-17 W, 532.49 feet to a point, in Little Laurel Creek, thence; N 22-01-32 E, 711.96 feet to a point, in Little Laurel Creek, thence leaving said creek and along meanders of a mine access road; N 32-08-52 W, 298.81 feet to a point, thence; N 16-42-52 W, 358.13 feet to a point, thence; N 40-42-39 W, 510.55 feet to a point, thence; N 5111-49 W, 1061.20 feet to a point, in said road, thence leaving the road; N 82-16-52 W, 1675.18 feet to a point, thence; N 48-55-06 W, 517.40 feet to a point, thence; N 16-41-57 W, 626.42 feet to a point, thence; N 01-21-50 E, 420.12 feet to a point, thence; N 23-04-13 E, 293.47 feet to a point, thence; N 01-23-25 E, 1030.30 feet to a point; thence; N 90-00-00 E, 210.00 feet to a point, on the south side of Gauley River, thence; S 14-3715 E, 475.39 feet to a point, thence; S 03-55-06 W, 1463.42 feet to a point, thence; S 54 ~ 48 E, 752.13 feet to a point, thence; N 90-00-00 E, 1250.00 feet to a point, thence; S 70-51-07 E, 381.08 feet to a point, thence; SW 36-29-50 E, 1076.02 feet to a point, thence; S 59-02-10 E, 583.10 feet to a point, thence; S 67-26-34 E, 351.92 feet to a point, thence; S 88-35-36 E, 1018.31 feet to a point, thence; S 46-49-02 E, 832.68 feet to a point, in said river, thence leaving the river; S 79-53-17 E, 797.39 feet to a point, near center of Panther Creek RR Bridge, thence; N 63-44-29 E, 418.15 feet to a point, in center line of B & O RR, thence generally following center line of B & O RR; S 88-07-20 E, 305.16 feet to a point, thence; S 55-32-21 E, 309.27 feet to a point, thence; S 34-12-02 E, 622.68 feet to a point, thence; S 60-15-18 E, 685.29 feet to a point, thence; S 4519-52 E, 611.66 feet to a point, thence; S 54-02-58 E, 1371.18 feet to a point, thence; S 28-48-39 E, 228.25 feet to a point, thence; S 02-51-45 E, 200.25 feet to a

point, thence; S 14-10-41 W, 195.97 feet to a point, thence; S 12-28-05 W, 763.49 feet to a point, in center line of said B & O RR, thence leaving said B & O RR; N 90-00-00 E, 42.00 feet to a point, thence; S 18-08-08 E, 363.03 feet to a point, thence; S 17-08-25 W, 559.87 feet to a point, thence; S 67-41-38 E, 126.46 feet to a point, thence; S 19-25-30 W, 420.96 feet to a point, thence; S 36-24-59 W, 227.41 feet to a point, thence; S 07-51-58 W, 153.44 feet to a point, thence; S 24-22-55 E, 305.22 feet to a point, thence; S 52-25-40 W, 503.77 feet to a point, thence; S 05-41-18 W, 514.53 feet to a point, thence; S 90-00-00 W, 173.00 feet to a point, in Secondary Route 39/15, thence; N 09-59-06 W, 144.18 feet to a point, in Secondary Route 39/15, thence leaving said Route 39/15; N 28-21-08-W, 301.12 feet to a point, thence; N 01-15-08 W, 183.04 feet to a point, thence; N 37-59-40 E, 336.26 feet to a point, in Secondary Route 39/15, thence with said road; N 20-30-36 E, 1021.77 feet to a point, thence; N 10-58-26 E, 1103.17 feet to a point, thence; N 01-2425 E, 285.09 feet to a point, thence; N 25-06-53 W, 353.41 feet to a point, thence; N 46-19-01 W, 615.35 feet to a point, in Secondary Route 39/15, thence leaving said Road; S 47-51-45 W, 566.39 feet to a point, thence; N 54-12-40 W, 795.14 feet to a point, thence; N 67-40-17 W, 302.70 feet to a point, thence; N 88-05-27 W, 300.17 feet to a point, thence; S 70-08-41 W, 191.38 feet to a point, thence; S 42-11-04 W, 431.86 feet to a point, thence; S 42 ~ 04 W, 431.86 feet to a point, in Brock Run, thence; N 3341-24 W, 396.61 feet to a point, in Brock Run, thence leaving said Run and along the meanders of a mine access road; N 19-01-32 E, 306.76 feet to a point, thence; S 86-39-42 W, 601.02 feet to a point, thence; N 82-0112 W, 540.23 feet to a point, thence; N 69-07-01 W, 266.51 feet to a point, thence; N 38-21-31 W, 207.87 feet to a point, thence; N 72-59-54 W, 707.94 feet to a point, thence; N 80-13-03 W, 147.14 feet to a point, in mine access road, thence leaving said access road; S 56-32-19 W, 417.14 feet to a point, thence; S 72-38-46 W, 117.34 feet to a point, thence; S 1807-10 W, 401.93 feet to a point, thence; S 49-41-34 E, 190.14 feet to a point, thence; S 22-18-22 E, 210.77 feet to a point, thence; S 42-30-38 W, 406.97 feet to a point, thence; S 21-57-38 E, 334.25 feet to a point, thence; S 89-39-42 E, 420.14 feet to a point, thence; S 31-32-25 E. 1050.30 feet to a point, in line of B & O Exception 2, thence; S 01-51-08 E, 125.30 feet to a point, a large Hemlock to corner B & O Exception 2, thence; S 64-56-06 W, 560.00 feet to a point, in a line of B & O Exception 2, thence; S 85-0201 W, 676.49 feet to a point, thence; S 46-04-22 W, 377.66 feet to a point, thence;42-27-05 E, 238.53 feet to a point, thence; S 00-00-00 E, 194.00 feet to a point, thence; S 46-28-25 W, 439.97 feet to a point, thence; S 15 24-16 W, 639.99 feet to a point, thence; S 07-25-53 E, 255.14 feet to a point, thence; S 34-29-20 E, 212.19 feet to a point, thence; N 71-44-14 E, 526.52 feet to a point, thence; S 82-28-34 E, 213.84 feet to a point, thence; N 12-48-15 E, 315.85 feet to a point, thence; N 86-21-16 E,

361.73 feet to a point, thence; N 47-59-37 E, 446.79 feet to a point, thence; S 59-21-19 E, 308.02 feet to a point, thence; S 22-55-51 E, 278.97 feet to a point, in line of B & O Exception 2, thence; S 34-04-29 W, 675.00 feet to a point, a stake corner to Tract W-22, thence with said Tract W-22; S 81-20-23, 494.46 feet to the beginning containing 370.,33 acres less 66.56 acres for the Railroad Property, leaving 303.77 acres more or less and being a portion of the B& O-I Tract;

and being a part of that certain tract or parcel of land heretofore conveyed to Grantor and described as Parcel No. 7 in that certain Quitclaim Deed, dated November 20, 1992, by and between New Gauley Coal Corporation and Grantor, The Lady H Coal Company, Inc., and recorded in the Office of the Clerk of the County Commission of Nicholas County, in Deed Book 349, at Page 232. For purposes of this deed the "Railroad Property" is that property conveyed to Grantor and others by Valerie Post, Executrix of the Estate of Joseph W. Post, by Deed dated May 13, 1996 and of record in the office of said Clerk in Deed Book 370, at Page 494.

The Grantor hereby reserves and excepts from the property conveyed by this instrument all of its right, title and interest in the Railroad Property and in the following portion of the tract described by this instrument:

BEGINNING, at a nail in the center and at the West end of the Railroad bridge over Panther Creek; thence with the West right of way of the Railroad Property, SE 5,649.44 5 feet to a point on the West right of way of the Railroad Property 5; thence leaving said right of way SW 11.00 feet to a point on the East bank of Panther Creek thence with the East bank of said, creek NE 5,649.44 feet to the beginning, containing 3.10 acres more or less and including all of the land West of Panther Creek and East of the Railroad Property from the mouth of Panther Creek to a point 5,649.44 feet from the mouth of Panther Creek.

The Grantor hereby further excepts and reserves for itself and any person or entity assuming reclamation related to prior mining by Grantor or its affiliates and their predecessors in interest, the right to enter upon the premises conveyed herein for the limited purpose of conducting reclamation including revegitation, water

treatment and such other reclamation activities as may be required under the terms of applicable law and any mining permit affecting the premises. The Grantee agrees not to interfere with . all lawful reclamation activities related to the premises and such permits.

The Grantee is hereby granted a right of way and easement for purpose of ingress and egress to the property conveyed by this instrument from West Virginia State Route 39/15 across Panther Creek on the road bridges and upon the gravel road constituting the former railroad bed upon the Railroad Property to the extent such road extends south from the first road bridge across Panther Creek near the mouth of Panther Creek.

The conveyance herein is subject to all recorded easements, rights of way, restrictive covenants, outconveyances and all prior reservations of coal, oil, gas, timber and other mineral rights.

Subject to the foregoing reservations, the Grantor hereby covenants that it will WARRANT SPECIALLY its title to the property herein conveyed and that the same is free and clear of all liens and encumbrances.

The total consideration paid for the property conveyed by this instrument is $20,100.00.

WITNESS the following signatures and seals:

THE LADY H COAL COMPANY, INC.

(SEAL)

By: John F. [signature]

Its: Vice Pres: [signature]

CONSOLIDATED SEWELL, INC.

By: John T. Leabury

(SEAL) Its: Vice President

SEWELL COAL COMPANY

By: John T. Leabury

(SEAL) Its: Vice President

STATE OF WEST VIRGINIA,

COUNTY OF NICHOLAS, to-wit:

The foregoing instrument was acknowledged before me this 15 day of NOVEMBER, 1996, by JOHN LEABERRY of THE LADY H COAL COMPANY, INC., a corporation, by and on behalf of the corporation.

Given under my hand and seal this 15 day of NOVEMBER, 1996.

My commission expires: Feb 2nd 2003.

Leanne McCutcheon
Notary Public

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
LEANNE McCUTCHEON
P. O. BOX 191
HETTIE, WV 26681
My Commission Expires February 2, 2003

96000286 NICHOLAS COUNTY
Nov 15 1996 $90.20
STATE OF WEST VIRGINIA
Real Estate Excise Tax

BOOK 374 PG 685

STATE OF WEST VIRGINIA,

BOOK 374PG 686

COUNTY OF NICHOLAS, to-wit:

The foregoing instrument was acknowledged before me this 15 day of NOVEMBER, 1996, by JOHN LEABERRY of CONSOLIDATED SEWELL, INC., a corporation, by and on behalf of the corporation.

Given under my hand and seal this 15 day of NOVEMBER, 1996.

My commission expires: Feb 2nd 2003.

Leanne McCutcheon

Notary Public

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
LEANNE McCUTCHEON
P. O. BOX 191
NETTIE, WV 26681
My Commission Expires February 2, 2003

STATE OF WEST VIRGINIA,

COUNTY OF NICHOLAS, to-wit:

The foregoing instrument was acknowledged before me this 15 day of NOVEMBER, 1996, by JOHN LEABERRY of SEWELL COAL COMPANY, INC., a corporation, by and on behalf of the corporation.

Given under my hand and seal this 15 day of NOVEMBER, 1996.

My commission expires: Feb 2nd 2003.

Leanne McCutcheon

Notary Public

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
LEANNE McCUTCHEON
P. O. BOX 191
NETTIE, WV 26681
My Commission Expires February 2, 2003

THIS INSTRUMENT WAS PREPARED BY:
John A. Rollins, Attorney at Law
P. O. Box 1746
Charleston, WV 25326

A TRUE COPY
Certified this 13 day of November, 19 96
Samuel L. Kay, Clerk
U. S. Bankruptcy Court, S.D., W.Va.
By Jennifer Giampapa
Deputy Clerk

IN THE UNITED STATES BANKRUPTCY COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

In re:

| | | |
|---|---|---|
| LADY H COAL COMPANY, INC. | Case No. | 94-20449 |
| CONSOLIDATED SEWELL, INC. | | 94-20766 |
| SEWELL COAL CO. | | 94-02765 |
| LEIVASY MINING CORPORATION | | 94-20767 |
| EASTWOOD CONSTRUCTION, INC. | | 94-20710 |
| | Chapter 11, Reorganization | |
| Debtors. | Procedural Consolidation | |

ORDER CONFIRMING SALES UNDER THE MOTION OF DEBTORS FOR APPROVAL OF AUCTION AND SALE PROCEDURES, FOR AUTHORITY TO SELL REAL AND PERSONAL PROPERTY FREE AND CLEAR OF LIENS AND ENCUMBRANCES AND FOR ASSIGNMENT OF EXECUTORY CONTRACTS AND LEASES

On May 6, 1996, a hearing was held to confirm real estate sales made by the Debtors at a public auction held pursuant to the terms of this Court's Interim Order Accepting Clarifications and Modifications to Motion of Debtors for Approval of Auction and Sale Free and Clear of Liens and Encumbrances and for Assignment of Executory Contracts and Leases, and Providing Notice of Auction Sale and Hearing for Confirmation of Sales, entered March 27, 1996 ("Interim Order"). The Interim Order had approved sales of Debtors, Lady H Coal Company, Inc., Consolidated Sewell, Inc., Sewell Coal Co., Leivasy Mining Corporation and Eastwood Construction, Inc. (jointly "Debtors") at public auction under the terms set forth in the Motion of Debtors for Approval of Auction and Sale Procedures, for Authority to Sell Real Property, Free and Clear of Liens and Encumbrances and for Assignment of Executory Contracts and Leases ("Auction Sale Motion").

The provisions of the sale provided by the Interim Order were subject to rulings upon objections to the sale made and a hearing held on March 18, 1996. Two of the objections to the sale were filed by the UMWA 1992 Benefit Plan and the United Mine Workers of America ("objections"). The District Court, by Order entered March 13, 1996, directed this Court to submit proposed findings of fact and conclusions of law relating to the objections of the UMWA 1992 Benefit Plan in connection with the Coal Industry Retiree Health Benefits Act of 1992. The Court issued recommended findings of fact and conclusions of law as they related to the objections under its Recommendation and Memorandum to District Court for the Southern District of West Virginia on Objections of UMWA 1992 Benefit Plan and UMWA International to Motion of Debtors for Authority to Sell Real and Personal Property Free and Clear of Liens and Encumbrances and for Assignment of Executory Contracts and Leases, entered March 29, 1996 ("Recommendation"). The District Court reviewed the Recommendation and by



991-1
993-1

Memorandum Opinion and Order entered April 23, 1996, overruled the objections ("District Court Order"). Under the District Court Order, the objection of the UMWA 1992 Benefit Plan was overruled based upon the precedent established by the District Court decision in *UMWA 1992 Benefit Plan and its Trustees v. Leckie Smokeless Coal Co.*, No. 5:96-0092 (S.D.W.Va. Apr. 16, 1996) and the objection of the UMWA overruled based upon the adoption of the findings of the Recommendation. The District Court further found that, in the event the *Leckie* decision was revisited by the District Court or met with less than full agreement from the Court of Appeals, it would still overrule the objections by adoption of the Recommendation. After a ruling upon the objections, the District Court determined to leave to this Court questions of whether the consideration or other components of the proposed auction sales satisfied the good faith and fair and reasonable value requirements of Section 363(f) of the Bankruptcy Code with the full authority to proceed with the auction sales.

After due consideration of the matters presented to the Court, the objections filed, the testimony and other evidence submitted at the May 6th hearing, and upon judicial notice of the matters filed in the Debtors' bankruptcy cases, the Court makes the following findings in accordance with 11 U.S.C. §§ 105, 363, 365 and Bankruptcy Rule 6004:

1. This Court has jurisdiction over the matters presented pursuant to 28 U.S.C. §§ 157(a), 1334, as core proceedings for which this Court has the authority to enter a binding and final order;

2. The Court hereby adopts and incorporates by reference the Recommended Findings of Fact set forth in the Recommendation;

3. On April 17th, 18th and 19th, 1996, the Debtors, through their sales agent and auctioneer, Resource Marketing, Inc., sold all of their Equipment and Real Estate (as those terms are defined in the Interim Order) to various independent third party bidders;

4. The Equipment sold at the auction sale was sold to the parties identified in the Report of Sale of Resource Marketing, Inc., dated May 3, 1996, filed with the Court and introduced into evidence at the hearing. In connection with such sales, the Court hereby adopts and incorporates by reference its findings set forth in Exhibit "B" to the Recommendation;

5. At the auction, the Debtors sold their Real Estate (as identified on Exhibit "A" hereto) to Green Valley Coal Company ("Green Valley") and to various other purchasers (as identified in a summary form on Exhibit "B" attached to this Order). (Green Valley and the other purchasers jointly "Buyers"). Under the terms of the Interim Order and the Auction Sale Motion, and the filed Notice of Bidding and Auction Procedures ("Procedures") governing the sale, the sales of such Real Estate to the Buyers were subject to confirmation by the Court as provided by the Interim Order;

6. Proper notice of the Auction Sale Motion, the Procedures, the auction and the hearing on confirmation of the sales of the auction was provided in accordance with the provisions of 11 U.S.C. § 363(b) and (f) and Bankruptcy Rules 2002 and 6004;

7. The auction, Procedures and the sales of the Debtors' Real Estate ("Property") at the auction to be confirmed were fair and commercially reasonable under the circumstances presented. The prices received for the Property represents a fair and reasonable value for the assets purchased and constitutes the highest and best offers presented to the Debtors for the Property;

8. The Debtors have proved to satisfaction to the Court that the sale of the Property reflects the exercise of the Debtors' sound business judgment and is justified by the circumstances more fully set forth in the finding of the Recommendation and Interim Order;

9. The Buyers are completely unrelated to the Debtors and any of their officers, directors or stockholders;

10. The sales prices at the auction were not controlled by the agreement between potential or actual bidders, nor is there any evidence of fraud, collusion, or other defect regarding the conduct of the auction, within the meaning of 11 U.S.C. § 363(n);

11. The Buyers are acquiring the Property in good faith, are good faith purchasers within the meaning of 11 U.S.C. § 363(m) and *In re Abbott's Dairies of Pennsylvania, Inc.*, 788 153 (3rd Cir. 1996) and are entitled to the protections provided therein;

12. The sales of the Property to the Buyers is appropriately authorized under this Order and the Interim Order, free and clear of liens and other interests, pursuant to the provisions of 11 U.S.C. § 363(f), due to the fact that all holders of liens, claims or other interests, either:

(i) could be compelled, in a legal or equitable proceeding, to accept money in satisfaction of their lien or other interests, within the meaning of Section 363(f)(5); or

(ii) hold such lien or interest subject to a bona fide dispute, within the meaning of Section 364(f)(4); or

(iii) hold a lien and the price at which the Property was sold is higher than the aggregate value of all liens on the Property within the meaning of Section 363(f)(3), or is a disputed lien. Such lienholders are adequately protected in that they were allowed to bid at the auction sale and offset such bids by the amount of their claims; or

BOOK 374PG 689

BOOK 374 PG 690

(iv) applicable nonbankruptcy law permits sale of the Property free and clear of such interest pursuant to Section 363(f)(1);

13. Buyers are not assuming any of the Debtors' existing or future liabilities, whether joint or several, except as specifically provided under the terms of sale. The sale of the Property to the Buyers shall be a sale free and clear of all liens and interest identified in the Auction Sale Motion or below and of all claims held by any creditor or party in interest in this case against the Debtors, their bankruptcy estates or the assets to be sold, existing as of the date of the sale, the closing and transfer of title to Buyers, or which arise after such closing and transfer but arise from, or are incurred by reason of, the Debtors' ownership and operation of the Property or calculated by reference to the Debtors or their assets or operation for a period of time prior to closing. With the exception of the liabilities specifically assumed by writing by Buyers under their contracts to purchase or the Procedures or by the assumption of liabilities imposed by the assignment of a lease, executory contract or permit to a Buyer, the Buyers shall not, by reason of such purchase or the use of the Property, be liable for any such debts or liabilities of the Debtors that may otherwise be assertible against the Buyer by becoming a successor, successor in interest or by other operation of law under the terms of any statute, judicial decree or other provision of law, subject to the limitations set forth herein. Claims which are not subject to being assumed by the Buyers, absent express assumption in writing, include, without limitation, the existing or future duty or obligation of any of the Debtors to pay or provide for:

(i) employee wages and benefits;

(ii) Workers' Compensation, occupational disease claims, retirement and health benefits, unemployment claims or temporary disability or for insurance claims or insurance premiums, including, without limitation, claims arising out of the West Virginia Workers' Compensation Act, or the Federal Coal Mine Health & Safety Act of 1969, as amended, or any other similar state or federal statute providing an obligation to maintain health or other benefits or to pay premiums to any entity or to retirees and employees, former employees or dependents of the foregoing or to any other person;

(iii) payments due any multi-employer pension or benefit fund, including, without limitation, withdrawal liability under Title IV of the Employee Retirement Income Security Act of 1974;

(iv) claims arising out of any labor or collective bargaining agreements to which the Debtors are or have been parties;

(v) claims for personal injury or property damage arising prior to closing;

(vi) fees, penalties and other assessments of any nature incurred by any of the Debtors, including, without limitation, fines or penalties due to any

outstanding notice of violation issued by any permitting or other governmental unit or claims to terminate the Debtors' interests in permits or bonds arising out of the Debtors' violation history under the permits at times or for events occurring prior to any approved transfer of the permits to Buyers;

(vii) overriding royalties or sales commission to any parties not specifically provided by one of the leases or executory contracts assigned to a Buyer;

(viii) any obligations to pay premiums or other claims or liabilities under the Coal Industry Retiree Health Benefits Act of 1992;

(ix) any existing mechanics, employee or corporation liens under the laws of the State of West Virginia including those filed under W.Va. Code 38-2-31, 33 and 38-2-5, 6 and including those identified at the May 6, 1996 hearing belonging to the unpaid employees of any of the Debtors, Greenbrier Spring, Inc. or to John Kizer, d/b/a Appalachian Equipment, Inc., or which may be filed before closing of the sale of the Property or thereafter, based upon labor, materials or services provided prior to the closing and transfer of the sale of the Property to any of the Buyers; and

(x) any other liabilities or claims now existing against any of the Debtors not expressly assumed by any Buyer, whether contingent or absolute, liquidated or unliquidated, perfected or unperfected, matured or unmatured, including any sums due by cessation of Debtors' operations or dismissal of employees or termination of its arrangements or agreements with any other creditor or party in interest in their bankruptcy estates.

14. The Debtors have a right to assign the leases and executory contracts previously assumed and to assume and assign all other contracts not previously assumed by the Buyers in connection with the sales of the Property. These assignments shall be valid and binding notwithstanding any provision in any of the leases or other executory contracts (including, but not limited to, such provisions described in 11 U.S.C. § 365(b)(2) and (f)) that prohibit such assignment or transfer, provided, however, such assignments shall not be a waiver of any rights of the other parties to such instruments to require consent for any future assignments to the extent such consent is required under the existing terms of such leases or executory contracts;

15. The assignment of the leases and executory contracts to the Buyers as a part of the sale is in accordance with 11 U.S.C. § 365. Adequate assurance of future performance of the executory contracts and unexpired leases has been provided in the case of Green Valley as its parent corporation shall provide the guarantee of future performance of Green Valley as more particularly provided in exhibits introduced in the hearing. All monetary defaults of unpaid royalties and taxes due under any of the leases or executory contracts must be cured or promptly cured at closing;

16. The Court has determined that the potential for other defaults under the leases relating to mechanic's liens must be addressed by the issuance of injunctive relief, as provided by separate Order, to be entered promptly after this Order; and

17. The Debtors have to be granted authority to proceed promptly to closing due to the fact the Debtors: (i) have no present funds available to maintain their mine facilities or to cure lease defaults that could led to the termination of the valuable leases to be assigned to Green Valley; (ii) the Debtors' insurance for coverage of underground mines has not been renewed as of May 1, 1996 and the availability of other insurance after May 31st appears unlikely.

NOW, THEREFORE, it is hereby **ORDERED** that:

A. The Debtors' auction sales of the Property be and the same are hereby confirmed and the Debtors are authorized to immediately close the sale of the Property and transfer of the same to the Buyers;

B. Pursuant to the provisions of 11 U.S.C. §§ 363(b) and (f), 365 and 105 and Bankruptcy Rule 6004, the Debtors are hereby authorized to sell, transfer, convey and assign the Property to the Buyers free and clear of all liens and other interests as set forth in paragraph 14 of this Order, the District Court Order and the other findings herein or in the Recommendation;

C. The Debtors are authorized and directed to effectuate the conveyance of the property to the Buyers and to execute and deliver any and all deeds, assignments, closing statements and any and all other documents necessary to close the sale of the Property and to pay from the proceeds of sale such costs of transfer and sale as may be reasonable and necessary to complete the transactions identified, including the cure of unpaid royalties and taxes due under leases to be assigned;

D. The Debtors are authorized and directed to cure before or at closing, any monetary defaults under the leases and executory contracts to be assigned and upon the payment of the cure amounts for such defaults, such leases and executory contracts shall be deemed in full force and effect. Upon and after assignment of the leases and executory contracts to Buyer, Green Valley, the Debtors are relieved from continuing any obligations under such instruments pursuant to 11 U.S.C. § 365(k);

E. The Property conveyed to the Buyers shall be free and clear of all liens and interests previously noted, and all liens and claims of any person holding valid and enforceable, perfected liens, together with any and all other claims against the Debtors, shall be channeled and attach to the proceeds of sale of the

Property, subject to any rights of the Debtors or others to avoid or otherwise contest the validity, extent or priority of such liens or other interests;

F. In conveying the title to real estate or lease of real property of record, the Buyers and the Debtors shall attach a certified copy of this Order to the transfer instruments recorded. To assist the Clerks of the County Commission, and Sheriff Offices of Nicholas and Greenbrier Counties, West Virginia, the Debtors and Buyers are to provide a certified copy of this Order to such offices for recordation and a list of any liens recorded with respect to Property transferred prior to closing for indexing the release of such liens by reference to the recorded copy of this Order. Buyers are obligated under the Procedures to pay to such offices transfer, excise, taxes and real estate taxes on the particular parcels purchased by a Buyer, without the inclusion of interest, penalties or collection costs on such taxes arising after the filing of the Debtors' bankruptcy proceeding on July 20, 1996;

G. Should an appeal of this Order or other request for alteration or amendment of the same be filed, the Buyers shall be entitled to the benefits of 11 U.S.C. § 363(m) and the Debtors and Buyers may proceed with closing of the sale as authorized by this Order and prior orders notwithstanding any such appeal or other motion, unless a stay of this Order has been issued by a court of applicable jurisdiction and is in effect at the time of closing;

H. The terms of this Order shall be in effect and enforceable on the day of entry. This order shall be binding upon, and shall inure to the benefit of, the Debtors, the Buyers and their respective successors, nominees, and assigns; and

I. Notwithstanding any completion or dismissal of the Debtors' bankruptcy cases, this Court shall retain jurisdiction to the extent necessary for the purpose of enforcing this Order or the District Court Order.

ENTER: MAY 10 1996

Ronald G. Pearson, Judge

BOOK 374 PG 693

BOOK 374 PG 694

# LADY H COAL COMPANY AUCTION

## REAL ESTATE BID LOTS

REVISED: April 11, 1996

Exhibit "A"

**THE LADY H COAL CO. AUCTION**
**GROUP BID LOT A**
**COAL RELATED REAL ESTATE**

The following items of real estate tracts, mineral leases, mining permits and real estate improvements (A-1 through A-69) will be offered at auction as a group. Excepting items that may otherwise be designated at the auction, each of the items will also be offered separately. The higher of the group or individual bids will control.

There is a minimum bid on the group of items of $934,000, and minimum bids on individual items where specifically noted.

<u>REAL ESTATE TRACTS - surface ownership only</u>.

A-1. Roger Spencer, 2.76 acres, Above Sunshine, DB 344/818

A-2. Rosemary Venerable, 5.30 acres, No. 7 Drift, DB 313/442

A-3. W. A. O'Dell, 17.00 acres, No. 7 Drift, DB 313/442

A-4. Gauley Land Co., 9.787 acres, No. 7 Drift, DB 313/442

A-5. Roy Rarliff, 0.42 acres, Truck Dump, DB 335/490

A-6. Eugene Richmond, 8.27 acres, Blue Branch, DB 313/442

A-7. John Trout, 40.00 acres, Blue Branch, DB 313/442

A-8. Willie Dorsey, 7.00 acres, Blue Branch, DB 313/442

A-9. Sara Witlock, 3.00 acres, Blue Branch, DB 336/634

A-10. H. K. Stowers, 18.71 acres, Blue Branch, DB 333/58

A-11. New Gauley Co., Parcel 1 58.81 acres, No. 7 Drift, DB 349/232

A-12. New Gauley Co., Parcel 3, 23.00 acres, Sunshine Area, DB 349/232

A-13. New Gauley Co., Parcel 5, 5.44 acres, No. 7 Shaft, DB 349/232

A-14. New Gauley Co., Parcel 8, 23.63 acres, No. 4, New Shaft, DB 349/232

A-15. Nicholas Realty Co., Lots 48 & 49, No. 7 Shaft Road, DB 313/442

(all of the above parcels are situate in Nicholas County, West Virginia)

BOOK 374PG 695

MINERAL LEASES



A-16 Consolidated, Amended and Restated Coal Mining Lease, effective August 1, 1992, between New Gauley Coal Corporation, Consolidated Sewell, Inc., Sewell Coal Company, The Lady H Coal Company, Inc. and Western Pocahontas Properties Limited Partnership (NOTE: There is a minimum bid on this item of $385,000 equal to unpaid royalties and taxes due through March 1996).

A-17 Indenture and Agreement of Lease dated November 1, 1971, between Westvaco Corporation and Sewell Coal Company. (NOTE: There is a minimum bid on this item of $9,949.00 for unpaid royalties and taxes through the 1st half of 1995).

A-18 Coal Lease, dated January 17, 1989, between James C. Amick, Bonnie Amick Richmond and The Lady H Coal Company, Inc., recorded in Deed Book 292, page 505 Nicholas County.

A-19 Lease, dated April 3, 1986, between Murnane and Willie Morgan Hudkins and The Lady H Coal Company, Inc., recorded in Lease Book 58, page 166.

A-20 Lease dated April 1, 1986, between Westvaco Corporation, New Gauley Coal Corporation and The Lady H Coal Company, Inc., recorded in Lease Book 57, page 809. (NOTE: There is a minimum bid on this and the following Westvaco lease for a total of $56,898.00, equal to the unpaid royalties and taxes through the first half of 1995).

A-21 Lease, dated April 1, 1986, between Westvaco Corporation and The Lady H Coal Company, Inc., recorded in Lease Book 57, page 787.

A-22 Lease, dated April 30, 1991, between James M. Groves, Effie White and The Lady H Coal Company, Inc. (NOTE: There is a minimum bid on this item of $60,200.00 equal to unpaid royalties and taxes).

A-23 Lease, dated August 21, 1979, between Marguerite Groves and Sewell Coal Corp.

A-24 Option and Agreement dated September 25, 1978, between Marguerite Groves and Sewell Coal Company (43 aces, more or less).

A-25 Lease dated January 14, 1988, between Mrs. Blendine Martin Kessler and Lady H Coal Company, Inc. (10 acres, more or less, of surface).

A-26 Lease dated December 1, 1962, between Murnane Hudkins and Willie Morgan Hudkins and Imperial Smokeless Coal Company (63 acres).

A-27 Amendment to Agreement and Coal Lease dated July 1, 1993, between K-P Mining, Inc., Assignee of H. R. Deitz and Sewell Coal Company, Inc.

A-28 Lease dated April 25, 1956, between The Saxman Coal and Coke Company and Cherry River Coal and Coke Company (4000 acres).

A-29 Lease dated April 24, 1962, between Eugene A. McKenzie, et als. And Cherry River Coal and Coke Company.

A-30 Coal Lease dated February 12, 1977, between Pearl McClung (single) and Island Creek Coal Company.

A-31 Agreement dated October 26, 1977, between Nellie Rader Derenge, et als., and Cherry River Coal and Coke Company.

A-32 Lease and Agreement dated July 1, 1961, between Gauley Coal Land Company (now Westvaco) and Cherry River Coal and Coke Company and Donegan Coal and Coke Company. [NOTE: There is a minimum bid on this lease ($71,173.49 - taxes & royalties) and the preparation plant located on the lease ($350,000)].

A-33 Lease dated April 1, 1976 between Wanita Ramplenich and Island Creek assigned to Lady H.

A-34 Lease dated January 7, 1975 between J. C. Williams, et al. and Cherry River Coal and Coke Company (299.00 acres).

MINING PERMITS

A-35 No. 7 Mine
Permit No. U-148-82

A-36 No. 9 Surface Mine
Permit No. S-3069-88

A-37 No. 10 Surface Mine
Permit No. S-3068-88

A-38 Rader Run Surface Mine
Permit No. S-15-82

A-39 No. 5 Siding
Permit No: 0-09-83

A-40 No. 2 Refuse Area
Permit No. 0-36-85

BOOK 374PG 697

A-41 Brushy Meadow Surface
Permit No. S-3075-87

A-42 Brushy Meadow Deep
Permit No. U-3076-87

A-43 Line Laurel Deep
Permit No. U-3001-88

A-44 No. 5 Surface Mine
Permit No. S-3023-88

A-45 Miller Deep Mine No. 3
Permit No. U-3046-86

A-46 Miller Deep Mine Nos. 1 & 2
Permit NO. D-38-82

A-47 DR-21 (Big Ditch)
Permit No. S-5636

A-48 No. 1 Mine
Permit No. EM-109

A-49 No. 1-A Mine
Permit No. EM-95

A-50 No. 3 Mine
Permit No. U-3066-86

A-51 No. 4 (Old Shaft)
Permit No. EM-102

A-52 No. 4 (New Shaft)
Permit No. EM-111

A-53 Haulroad
Permit No. H-652

A-54 No. 1 Plant
Permit No. P-677

A-55 No. 1 Refuse Area A
Permit No. R-707

A-56 No. 1 Refuse Area B
Permit No. R-644

A-57 No. 4 Plant
Permit No. P-642

A-58 No. 4 Refuse Area A
Permit No. R-690

A-59 No. 4 Refuse Area B
Permit No. R-671

A-60 Holcomb Deep Mine
Permit No. EM-112

A-61 Holcomb Plant
Permit P-653

A-62 Holcomb Refuse
Permit No. R-715

A-63 No. 1-A Air Shaft
Permit No. U-9-84

A-64 Quinwood Prep Plant
Permit No. 0-155-83

A-65 Blue Branch Refuse
Permit No. 0-10-83

A-66 Entrance Permit
Permit No. 09-91-0365

A-67 Entrance Permit
Permit No. 09-89-0522

A-68 Conveyor Permit
Permit No. 09-90-0027

A-69 Entrance Permit
Permit No. 09-90-0033

BOOK 374 PG 699

IMPROVEMENTS BOOK 374 PG 700

Any purchaser of the foregoing items will receive all permanent fixtures, buildings, or other improvements on the fee surface properties or leases not separately identified for sale as equipment. In the case of the foregoing package as a group there is included the Debtors' preparation plant (See Item A-42) and related facilities and underground mine facilities. Underground improvements included are in place belt, belt structure, water lines, power lines, ventilation fans, and other property in the Debtors' No. 7 and 7A mines, other than mobile equipment.

OTHER PROPERTY

The Debtors will also convey to any purchaser of the group of assets all additional rights and permits related to the foregoing property but not specifically identified. This will include rights granted under the instruments identified in the attached motion exhibits attached to the Notice of Bidding and Auction Procedures, dated March 30, 1996, except to the extent such items are included or directly related to other identified real estate bid lots.

This bid lot does not include other fee property specifically designated for separate group or individual bids in Bid Lots B, C, D and E.

**THE LADY H COAL AUCTION**
**BID LOTS B-1 THROUGH B-25**
**UNIMPROVED NON-COAL RELATED REAL ESTATE**

The following are surface only real estate tracts (B-1 through B-25) which will each be offered for sale. This real estate is not related to existing mines or other coal facilities. None of these tracts have improvements and are not included in any of the property identified in Group Bid Lot #A, Coal Related Real Estate nor in any of the items in Bid Lot C, D or E.

B-1. W. H. O'Dell, 8.826 acres, Grassy Creek, DB 313/442

B-2. Danny & Neil Gwinn, 11.47 acres, Grassy Creek, DB 313/442

B-3. T.C. O'Dell Hrs., 110.00 acres, Company House, DB 313/442

B-4. Georgia-Pacific, 9.60 acres, Jetsville Road, DB 313/442

B-5. Elgin Meece, 114.30 acres, No. 8 Strip, DB 313/442

B-6. Wallace Dorsey, 74.00 acres, No. 8 Strip, DB 313/442

B-7. Reness Stull, 33.00 acres, No. 8 Strip, DB 313/442

B-8. Paul Fitzwater, 13.97 acres, Above No. 7 Drift, DB 313/442

B-9. J. E. Beavers, 1.832 acres, No. 8 Strip, DB 313/442

B-10. W. M. Rhodes, 4.97 acres, Above 7 Drift, DB 313/442

B-11. Grace Pitsenbarger, 15.00 acres, Across From 7, DB 313/442

B-12. Jack Boley, 4.97 acres, Above 7 Drift, DB 313/442

B-13. George & Sadie Ray, 35.00 acres, Across From 7, DB 313/442

B-14. Samuel Trout, 48.50 acres, Hell Roaring Creek, DB 313/442

B-15. Jess Losch, 0.45 acres, Hominy Falls, DB 313/442

B-16. Otis Pitsenbarger, 8.40 acres, White Buck Knob, DB 313/442

B-17. Robert Blankenship, 1.00 acres, Hell Roaring Creek, DB 313/442

B-18. Fred Brown, 53.00 acres, Hell Roaring Creek, DB 313/442

B-19. Fred McCutcheon, 63.75 acres, Hell Roaring Creek, DB 313/442

B-20. New Gauley Co., Parcel 4, 23.42 acres, No. 4 Old Slope, DB 313/442

B-21. New Gauley Co., Parcel 6, 6.89 acres, Old Landfill, DB 313/442

B-22A New Gauley Co., Parcel 7, 117.00 acres, Sewell Property, DB 313/442

B-22B New Gauley Co., Parcel 7, 342.00 acres, Sewell Property, DB 313/442

B-23. New Gauley Co., Parcel 2, 66.85 acres, No. 5 Siding, DB 313/442

B-24 Felicita Amick, Lots 3 & 4 across from Office, DB 313/442

B-25 New Gauley Coal Co., Parcel 2 66.85 acres, No. 5 Siding, DB 313/442

All tracts are situate in Nicholas County, West Virginia except those noted with an "*" which are situate in Greenbrier County, West Virginia

BOOK 374 PG 701

**THE LADY H COAL CO AUCTION**
**BID LOTS C-1 THROUGH C-6**
**IMPROVED REAL ESTATE MULTIPURPOSE**

The following parcels of improved real estate (C-1 through C-5) will each be offered for sale. The buildings on the lots will not include furniture or other contents, but will include all fixtures not separately tagged for sale.

C-1. T. C. O'Dell Hrs., 10.00 acres, includes Superintendent's House, DB 313/442

C-2. Ross O'Dell, 0.32 acres, includes Engineering Building, DB 313/442

C-3. Ray & Mary Neal, 0.418 acres, includes Main Office Building, DB 313/442
Willard & Lyda Hughes, 0.30 acres, includes Main Office, DB 313/442

C-4. W.A. O'Dell, 45.00 acres includes Rescue Building, DB 313/442

C-5. New Gauley Co., Building Only - Central Shop Building, DB 349/232

**THE LADY H COAL CO. AUCTION**
**BID LOT D**
**WHITE MIST COAL**
**FEE REAL ESTATE**

This property includes all of the parcels of real estate known as the "White Mist Property". This property includes all mineral and surface interests and is situate in Nicholas County, West Virginia as more particularly described in a Deed dated November 30, 1984 between The Pittston Company and Sewell Coal Company and Deed dated April 3, 1981, between White Mist Fuel Corporation and The Pittston Company. See Deed Books 307/554; 288/657. Included with this property shall be a right of way and easement from property owned by the Estate of Joseph W. Post dated April ____, 1996, along the Gauley River, constituting a portion of the former railroad right of way conveyed by CSX Transportation, Inc., sufficient to allow access for the life of the mining of coal reserves. The right of way and easement is subject to a separate one time payment by the purchaser directly to the Post Estate of $225,000.

**THE LADY H COAL CO. AUCTION**
**BID LOT E**
**GEORGIA-PACIFIC – LECKIE RESERVES**

This property consists of the lease between Georgia-Pacific Corporation and Lady H Coal Co. dated October 1, 1969 (Meadow River Lumber Company and Meadow River Coal and Land Company and Imperial Smokeless Coal Company). This lot also includes Lady H's sublease of such property and overriding royalty under that certain sublease between Lady H and Leckie Smokeless Coal Co. dated December 16, 1986.

There is a minimum bid on this property of $125,000 constituting a sum equal to the approximate amount of unpaid royalties and taxes due Georgia-Pacific Corporation. A slightly lesser sum is currently due to Lady H by Leckie or any assignee or successor in interest to Leckie's interest in the foregoing sublease. Such sums now due to Lady H by Leckie under the sublease as of the auction date will not be included in the assignment to the high bidder of Bid Lot E, but all future royalties due under such sublease are included together with such recoupment rights or prepaid royalty credit as may applicable under the base lease.

BOOK 374 PG 703

BOOK 374 PG 704

**ENVIRONMENTAL DISCLOSURES ON LADY H REAL ESTATE**

1. Underground storage tank at No. 7 warehouse. This tank is certified with the State. The tank formerly held gasoline, but has been drained. The tank is situate on surface tract A-11, being a tract of 58.1 acres obtained from New Gauley Company. DB 349/232 (parcel 1).

2. Water treatment is required on portions of the 459.91 acre tract from New Gauley Company described as parcel 7 in DB 313/442. This water treatment will be reduced or eliminated upon completion of reclamation on two mining permits.

3. An old landfill was located on service parcel B-21, being a tract of 6.89 acres obtained from New Gauley Company. DB 313/442 (parcel 6). The landfill has been reclaimed and vegetation established.

Dated this 11th day of April, 1996

RECEIPT FOR RECORD
BOOK____PAGE____
95 NOV 15 PM 4:19
COUNTY CLERK
NICHOLAS COUNTY, WV

LADY H COAL CO. ET AL.
SUMMARY OF GROSS AUCTION PROCEEDS

| Sale Date | Items | Gross Amount |
|---|---|---|
| April 17,1996 | Real Estate Group A, B-3, C-1, 2, 3, 4, D, E | $3,750,000.00 |
| April 17, 1996 | Real Estate All B Group except B-3 | $169,055.32 |
| April 17, 1996 | Office Furniture, Equipment | $25,483.00 |
| April 18, 1996 | Mining equipment | $438,742.50 |
| April 18, 1996 | Equity from Cat. Fin. Sale of Equipment | $23,440.00 |
| April 19, 1996 | Mining equipment, supplies, inventory | 343,451.00 |
| | Total Gross Proceeds | $4,750,271.82 |

BOOK 374 PG 705

Exhibit "B"

LADY H COAL, ET AL.
SUMMARY OF ITEMS OF TANGIBLE PROPERTY NOT
YET SOLD AT AUCTION

1. Collateral of Simmons-Rand Co.
   4 Coal Haulers

2. Collateral of Orix Credit Alliance
   2 Coal Haulers
   2 Shuttle Cars
   1 Continuous Miner

3. Post Real Estate on Gauley River
   not Transferred upon White Mist access
   (See Motion)

4. Coal inventory above coal pad

5. Laboratory Equipment
   (mixed fixtures and other lab equipment agreed to be sold
   to Green Valley)

REAL ESTATE BID LOT SUMMARY

| PURCHASER | ITEM | AMOUNT |
|---|---|---|
| Green Valley Coal Company | Group A, D, E, B-3, C 1, 2, 3, 4 | $3,750,000.00 |
| Jeffrey Russell, d/b/a R & S Sawing | B1 | $3,530.40 |
| Samuel Walter Thomas GMS | B-9, B-12, B16 | $4,915.30 |
| Jeffrey Russell, d/b/a R & S Sawing | B2 | $3,441.00 |
| Barry L. Mullens & Weymouth Mullens | B22B | $17,100.00 |
| James A. Spade | B8, B10, B20 | $9,903.75 |
| Edward Rudd | B14, B15, B18, B19 | $61,012.40 |
| Bruce Dana & Rowden Roberts | B23 | $8,356.25 |
| William A. McCourt & Sally S. McCourt | B24 | $1,100.00 |
| Lorren Hellems, Jr. | B17 | $575.00 |
| Larry E. Losch | B22-A | $20,475.00 |
| Helen Miller | B-21 | $2,756.00 |
| Robert Ruckman | B-4 | $5,280.00 |
| Gary L. Moten | B11, B13 | $8,000.00 |
| Harley McClung | B5, B6, B7 | $22,610.22 |

BOOK 374 PG 707

(3)

IN THE UNITED STATES BANKRUPTCY COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

In re:

| | | |
|---|---|---|
| LADY H COAL COMPANY, INC. | Case No. | 94-20449 |
| CONSOLIDATED SEWELL, INC. | | 94-20766 |
| SEWELL COAL CO. | | 94-02765 |
| LEIVASY MINING CORPORATION | | 94-20767 |
| EASTWOOD CONSTRUCTION, INC. | | 94-20710 |
| | Chapter 11, Reorganization | |
| Debtors. | Procedural Consolidation | |

ORDER CORRECTING ORDER CONFIRMING SALES UNDER THE MOTION OF DEBTORS FOR APPROVAL OF AUCTION AND SALE PROCEDURES, FOR AUTHORITY TO SELL REAL AND PERSONAL PROPERTY FREE AND CLEAR OF LIENS AND ENCUMBRANCES AND FOR ASSIGNMENT OF EXECUTORY CONTRACTS AND LEASES

On this day the Court was advised that the Court's Order Confirming Sales Under The Motion Of Debtors For Approval Of Auction And Sale Procedures, For Authority To Sell Real And Personal Property Free And Clear Of Liens And Encumbrances And For Assignment Of Executory Contracts And Leases, entered May 10, 1996 ("Order") has several clerical errors that should be corrected. It is accordingly,

ORDERED that the Order be and hereby is amended as follows:

1. The designation of "Paragraph 14" in line 4 of Paragraph "B" on Page 6 of the Order is amended to "Paragraph 13".

2. The date of "July 20, 1996" in line 12 of Paragraph "F" on Page 7 of the Order is amended to "July 20, 1994"; and

3. The provisions regarding the issuance of injunctive relief as a part of the sale under the Order and referred to in Paragraph 16 of the Order is now set forth in this Court's Memorandum Opinion and Order Granting Injunctive Relief, entered May 13, 1996.

ENTER: MAY 16 1996

Ronald G. Pearson, Judge

**EXHIBIT B**

**LIST OF LIENS TO BE RELEASED BY INDEX OF THE OFFICE OF CLERKS OF THE COUNTY COMMISSION OF NICHOLAS COUNTY WEST VIRGINA AND GREENBRIER COUNTY, WEST VIRGINIA TO BANKRUPTCY COURT ORDER ENTERED MAY 10, 1996**

NICHOLAS COUNTY, WEST VIRGINIA

1. Notice of Mechanic's Lien by All Crane and Equipment Rental Corp., Mechanic's Lien Book 4, at Page 253.

2. Notice of Mechanic's Lien of L & K Miller Mining, Inc. recorded Mechanic's Lien Book 4, at Page 194.

3. Notice of Mechanic's Lien of the unpaid non-union employees of Lady H Coal Company, Inc. and Eastwood Construction Company, Inc., Mechanic's Lien Book 5, at Page 1.

4. UCC financing statement and fixture filings of United Coal Company in file 48808 and in Book 231, at Page 631.

5. Notice of Mechanic's Lien of unpaid non-union employees of Lady H Coal Company, Inc. and Eastwood Construction Company, Inc., Mechanic's Lien Book 5, at Page 53.

6. Notice of Mechanic's Lien of unpaid employees of Greenbrier Spring, Inc. Mechanic's Lien Book 4, at Page 833.

7. Notice of Mechanic's Lien of unpaid employees of Lady H Coal Company and Eastwood Construction Company, Inc., Mechanic's Lien Book 4, at Page 808.

8. Notice of Mechanic's Lien of All Crane & Equipment Rental Corp., Mechanic's Lien Book 4, at Page 344.

9. Notice of Mechanic's Lien of David Chrisman Mechanic's Lien Book 4, at Page 281.

10. Notice of Mechanic's Lien of SBA Consultants, Inc., Mechanic's Lien Book 4, at Page 270.

11. Abstract of Judgment of Joe L. Smith, Jr., Inc., d/b/a B. J. W. Printing and Office Supplies, Judgment Lien Book 12, at Page 727.

12. Notice of Tax Lien of Andrew S. Richardson, Commissioner of Employment Security, Tax Lien Book 10, at Page 765.

13. Notice of Mechanic's Lien of William J. Gregory, Mechanic's Lien Book 4, at Page 837.

14. Notice of Workers' Compensation Lien of Workers' Compensation Division, Andrew N. Richardson, Commissioner, Tax Lien Book 13, at Page 447.

15. Notice of Workers' Compensation Lien of Workers' Compensation Division, Andrew N. Richardson, Commissioner, Tax Lien Book 13, at Page 374.

16. Notice of Federal Tax Lien under Internal Revenue Service laws by the Internal Revenue Service Tax Lien Book 13, at Page 509.

17. Notice of Workers' Compensation Lien by Workers' Compensation Division, Andrew N. Richardson, Commissioner, Tax Lien Book 13, at Page 556.

18. Notice of Workers' Compensation Lien by Workers' Compensation Division, Andrew N. Richardson, Commissioner, Tax Lien Book 13, at Page 134.

19. Notice of Workers' Compensation Lien by Workers' Compensation Division, Andrew N. Richardson, Commissioner, Tax Lien Book 13, at Page 447.

20. Abstract of Judgment of Joe L. Smith, Jr., d/b/a B.J.W. Printing and Office Supplies, Judgment Lien Book 12, at Page 726.

GREENBRIER COUNTY, WEST VIRGINIA

1. Notice of Mechanic's Lien of unpaid employees of Lady H Coal Company, Inc. and Eastwood Construction Company, Inc., et al., Mechanic's Lien Book 6, at Page 371.

2. Notice of Mechanic's Lien of unpaid employees of Greenbrier Spring, Inc., Mechanic's Lien Book 6, at Page 402.

3. UCC 1 Financing Statement of United Coal Company No. 59940, file 48725, Financing Book 8, at Page 74. Further reference Book 225 at Page 9.

STATE OF WEST VIRGINIA, Nicholas County
Commission Clerk's Office 11-15-96
The foregoing Deed together with
the certificate of its acknowledgment, was this day presented in said office and admitted to record.
Teste: John Greer Clerk

(Page 1 of 21)

308
10.50

4879

Western Pocahontas Properties Limited Partnership
PO Box 2827
Huntington WV 25727

BOOK 0349 PAGE 232

QUITCLAIM DEED

THIS QUITCLAIM DEED is made this 20th day of November, 1992, between NEW GAULEY COAL CORPORATION, a West Virginia corporation, party of the first part, hereinafter referred to as "Grantor", and THE LADY H COAL COMPANY, INC., a West Virginia corporation, hereinafter referred to as "Grantee", party of the second part,

W I T N E S S E T H:

That for and in consideration of the sum of Ten Dollars ($10.00), cash in hand paid and other good and valuable consideration, including the execution of a promissory note in the amount of $70,000.00, executed by Grantee, payable to the order of Grantor, the receipt and sufficiency of which is hereby acknowledged, the Grantor does hereby remise, release and forever quitclaim unto The LADY H COAL COMPANY, INC., a West Virginia corporation, without warranties of any kind, and subject to the terms, conditions, exceptions and reservations made herein, all of the Grantor's right, title and interest in and to the surface only of certain parcels of real estate situate in Nicholas County, West Virginia, more particularly described in Exhibit A attached hereto and by this reference incorporated herein and made a part hereof, and as shown on the map attached hereto and incorporated herein.



EXHIBIT G

EXCEPTING, HOWEVER, all oil and gas underlying the above described property, together with all existing licenses, easements, leases, rights-of-way, reservations, exceptions and/or restrictions heretofore granted by or otherwise lawfully acquired from Grantor or its predecessors in title, whether of record or not;

AND FURTHER RESERVING to Grantor, its successors or assigns, all minerals beneath the surface of the above described property. For purposes of this deed the term "minerals" shall refer to all coal, coal by-products, and substances found in association with coal; all ores and other non-fugacious minerals; all oil and gas underlying the above described property; all subterranean water and fluids; all other subterranean substances and products not heretofore granted or conveyed by Grantor or its predecessors in title; and all combinations of the same, or any or all of the same that may hereafter be found thereon, whether such minerals are marketable or now have a recognized value; and it is the intention of the parties that Grantor may make use of any existing technology or technology hereafter developed to use, extract, store in subterranean spaces, process and/or transport through subterranean spaces, any such minerals situate greater than five (5) feet beneath the surface of the above described property. It is specifically understood that the foregoing provision shall not prevent Grantee from drilling wells for and using any subterranean water, so long as such use does not interfere with the exercise by Grantor of its rights with respect to the minerals or the exercise of the rights of Grantor or any

other owner or any lessee of the oil and gas beneath the above described property.

Grantee specifically recognizes that underground mining operations may have been conducted under the subject land and Grantee, for themselves, their successors and assigns, for and in consideration of the grant made herein, do hereby WAIVE and RELEASE all surface damage and damages of any sort however caused (including, without limitation, damages or claims arising under any West Virginia or Federal law or regulation), which may now or hereafter arise in whole or in part from any physical conditions now or hereafter arising in whole, or in part, from such past mining. Grantee, for themselves, their successors and assigns further agree that Grantor shall not be in any manner liable for and does hereby WAIVE and RELEASE all surface damage and damages of any sort however caused (including, without limitation, damages or claims arising under any West Virginia or Federal law or regulation), arising from the exercise of the rights hereby excepted and reserved, whether or not the same be caused by or due to the negligent manner in which any mining operations are conducted or the rights are exercised.

This Deed is made and accepted upon the express condition that Grantee, their successors and assigns, will not make, allow, or cause to be made, deep-well disposal of waste in or into the subsurface underlying the above-described tract and the Grantee will not make, allow, or cause to be made any penetration of the subsurface of the above-described tract which would interfere

with or impede the exercise of the rights heretofore excepted or reserved herein by Grantor, its successors or assigns.

The rights, easements, waivers and privileges herein reserved to Grantor, its successors or assigns, are in enlargement of and not in restriction of the rights incidental to the ownership of said minerals and shall not terminate at the completion of the mining and/or removal of said minerals within the subject tract.

The Grantor does hereby reserve unto itself, its successors and assigns a vendor's lien to secure the payment of the purchase price for the property hereby conveyed.

The Grantor hereby declares that the total consideration paid for the property hereby conveyed is the sum of $70,000.00.

IN WITNESS WHEREOF, New Gauley Coal Corporation, a West Virginia corporation and The Lady H Coal Company, Inc., a West Virginia corporation, have caused this writing to be signed by their respective proper officers thereunto duly authorized, all as of the day and year first above written.

NEW GAULEY COAL CORPORATION,
a West Virginia corporation,

By [signature]
Its President

THE LADY H COAL COMPANY, INC.,
a West Virginia corporation,

By [signature]
Its President

BOOK 0349 PAGE 235

BOOK 0349 PAGE 236

STATE OF West VA,

COUNTY OF Cabell, TO-WIT:

The foregoing instrument was acknowledged before me this 29th day of December, 1992, by Rick Carter, President of NEW GAULEY COAL CORPORATION, a West Virginia corporation, on behalf of said corporation.

My commission expires November 1, 1998.

OFFICIAL SEAL NOTARY PUBLIC STATE OF WEST VIRGINIA PADDY SUE GAY ... Huntington, WV 25705 My commission expires Nov. 1, 1998

Paddy Sue Gay
Notary Public

STATE OF West Virginia,

COUNTY OF Nicholas, TO-WIT:

The foregoing instrument was acknowledged before me this 18 day of December, 1992 by Clyde M See, Jr., President of THE LADY H COAL COMPANY, INC., a West Virginia corporation, on behalf of said corporation.

My commission expires November 7, 1994.

OFFICIAL SEAL NOTARY PUBLIC STATE OF WEST VIRGINIA BARRY L. MULLENS P. O. Box 374 Craigsville, W.Va. 26205 My Commission Expires Nov. 7, 1994

Barry L. Mullens
Notary Public

This Instrument Was Prepared Without Examination of Title By:

Christopher J. Plybon, Esquire
Huddleston, Bolen, Beatty, Porter & Copen
P. O. Box 2185
Huntington, West Virginia 25722

EXHIBIT A

PARCEL NO. 1:

A tract of land situated on Brushy Meadow Creek in Kentucky District, Nicholas County, West Virginia, approximately 1 mile southeast of the town of Leivasy, more particularly bounded and described as follows:

Beginning at a 9 inch cherry tree on the west side of a private road, corner to a tract of land now owned or formerly owned by P.S. Pittsenberger; thence along the northerly line of said Pittsenberger

| | | |
|---|---|---|
| S 89 22' 10" W | 1397.41 | feet to a 30 inch red oak; thence |
| N 53 08' 00" W | 275.93 | feet to a 12 inch ash; thence |
| N 04 48' 40" W | 242.06 | feet to a fence post; thence |
| N 33 07' 10" E | 173.70 | feet to the south right-of-way line of the NF&G Railroad; thence |
| N 88 49' 30" E | 170.99 | feet to the north right-of-way line of the NF&G Railroad; thence |
| N 58 47' 20" E | 132.13 | feet to a fence post; thence |
| N 47 45' 30" E | 75.98 | feet to a fence post; thence |
| S 73 16' 40" E | 69.53 | feet to a corner of a cemetery; thence |
| S 16 43' 20" W | 168.57 | feet to a corner of a cemetery; thence |
| S 73 18' 40" E | 50.11 | feet to a point on the north right-of-way line of the NF&G Railroad; thence with the said right-of-way line |

| | | |
|---|---|---|
| S 81 49' 10" E | 126.63 | with the said right-of-way line |
| N 89 43' 20" E | 29.60 | feet to a point; thence |
| N 00 16' 40" W | 70.00 | feet to a point; thence |
| N 89 43' 20" E | 380.70 | feet to a point; thence |
| N 76 50' 50" E | 159.19 | feet to a point; thence |
| S 25 56' 40" E | 30.00 | feet to a point; thence |
| N 64 03' 20" E | 1235.36 | feet to a point on North right-of-way line of the NF&G Railroad; thence leaving said right-of-way line |
| N 25 56'40" W | 44.69 | feet to a point in Secondary Route 44/3; thence |
| N 57 35' 47" E | 428.44 | feet to a point in south side of said Route 44/3; thence leaving said road |
| S 35 02' 12" E | 337.87 | feet to a point; thence |
| S 27 18' 47" W | 385.09 | feet to a point; thence |
| S 88 43' 05" E | 474.72 | feet to a point; thence |
| N 70 17' 03" E | 159.56 | feet to a point; thence |
| N 75 34' 16" E | 211.66 | feet to a small white oak; thence |
| N 17 22' 20" E | 460.48 | feet to a point in Secondary Route 44/3; thence |
| S 79 07' 27" E | 779.26 | feet to a point in Secondary Route 44/3; thence |
| S 63 51' 13" E | 275.45 | feet to a point in south edge of Route 44/3 |
| S 13 23' 05" W | 295.39 | feet to a corner to Losch; thence |
| N 77 35' 38" W | 820.14 | feet to a set stone corner to Losch; thence |

| | | |
|---|---|---|
| S 13 11' 21" W | 550.00 | feet to a point in line of Losch; thence |
| S 86 08' 58" W | 1468.37 | feet to a point in line Tract T-2-1; thence |
| N 18 11' 42" W | 240.00 | feet to a point; thence |
| S 60 04' 00" W | 130.00 | feet to a point; thence |
| S 73 02' 30" W | 89.00 | feet to a point; thence |
| S 52 22' 30" W | 94.00 | feet to a point; thence |
| S 35 24' 10" W | 272.71 | feet to a point; thence |
| S 27 37' 18" W | 110.57 | feet to the beginning containing 58.81 acres more or less and being a portion of Tracts P-22 and T-6 |

BOOK 0349 PAGE 239

BOOK 0349 PAGE 240

PARCEL NO. 2:

A tract of land in Kentucky District, Nicholas County, West Virginia, situate approximately 1.5 miles southeast of the town of Leivasy and on the waters of Brushy Meadow Creek, more particularly described as follows:

| | | |
|---|---|---|
| | | Beginning at a point in State Secondary Route 44/13 corner to Losch; thence along said road |
| S 73 46' 22" E | 675.47 | feet to a point in road; thence; |
| N 87 19' 41" E | 1501.63 | feet to a point; thence |
| S 77 13' 33" E | 1266.34 | feet to a point on north side of said road; thence |
| S 09 42' 24" E | 385.52 | feet to a point on east side of a mine road; thence |
| S 85 00' 49" W | 1495.66 | feet to a point; thence |
| S 70 54' 23" W | 550.27 | feet to a point; thence |
| S 48 00' 46" W | 269.07 | feet to a point; thence |
| S 80 22' 49" W | 598.41 | feet to a point; thence |
| N 32 09' 08" W | 413.40 | feet to a point; thence |
| N 77 00' 19" W | 648.39 | feet to a point in the easterly line of the land of said Losch; thence along said line |
| N 13 06' 18" E | 896.31 | feet to the beginning containing 66.85 more or less and being a portion of tracts T-3-2, T-3-3 and G-8. |

PARCEL NO. 3:

A tract of land in Kentucky District, Nicholas County, West Virginia, situate approximately 2,500 feet north of the town of Leivasy and on the Waters of Grassy Creek and Brushy Meadow Creek, more particularly described as follows:

| | | |
|---|---|---|
| | | Beginning at a rock on the west side of Grassy Creek, corner to Tract T-23; thence; |
| N 13 47' 00" W | 346.50 | feet to a hemlock and maple, corner to Tract T-23; thence |
| N 03 44' 31" W | 144.79 | feet to a point; thence |
| N 47 12' 09" W | 183.98 | to a point; thence |
| N 75 57' 50" W | 226.77 | feet; thence |
| N 60 07' 16" W | 371.36 | feet; thence |
| N 25 40' 19" E | 200.82 | feet; thence |
| N 20 23' 25" W | 889.75 | feet; thence |
| N 83 12' 40" E | 211.48 | feet; thence |
| S 17 23' 13" E | 518.70 | feet; thence |
| S 89 26' 48" E | 448.30 | feet to a point in Grassy Creek in line of Tract T-23; thence along four lines of Tract T-23 |
| S 22 14' 35" W | 70.00 | feet to a rock in Grassy Creek; thence |
| S 54 08' 42" E | 387.65 | feet to a point; thence |
| S 35 20' 40" E | 533.38 | feet to a Cherry stump; thence |
| S 03 24' 50" W | 427.24 | feet to a stake in a line of Tract T-23; thence |
| N 86 35' 10" W | 129.58 | feet to a point near center State Route 39; thence |
| S 15 39' 38" W | 222.58 | feet to a point in center State Route 39; thence |

| | | |
|---|---|---|
| S 39 55' 50" W | 136.02 | feet to a point in a line of Tract T-23; thence |
| N 56 03' 22" W | 139.04 | feet to the beginning containing 23.00 acres more or less and being a part of Tract T-23 |

PARCEL NO. 4:

A tract of land in Kentucky District Nicholas County, West Virginia, situate on the Waters of Panther Creek, approximately 4,000 feet southeast of the Panther Creek Bridge at Lowland and on the south side of State Route 39, more particularly described as follows:

| | | |
|---|---|---|
| | | Beginning at a point in Panther Creek; approximately 600 feet south west of an abandoned mine office building; thence |
| N 13 25' 52" W | 1722.10 | feet to a point in Panther Creek; thence |
| N 52 18' 21" E | 139.01 | feet to a point near the center of State Route 39; thence more or less with the centerline of said Route 39 |
| S 46 00' 18" E | 604.67 | feet to a point; thence |
| S 57 34' 21" E | 503.51 | feet to a point; thence |
| S 81 57' 03" E | 499.92 | feet to a point; thence leaving Route 39 |
| S 46 48' 10" W | 1460.90 | feet to the beginning containing 23.42 acres more or less and being a portion of the B&O-1 tract |

PARCEL NO. 5:

A tract of land in Kentucky District, Nicholas County, West Virginia, situate approximately 3,000 feet east of the intersection of the O'Dell Town Road with State Route 20 and on the waters of Jim's Branch, more particularly bounded and described as follows:

| | | |
|---|---|---|
| | | Beginning at a point N 88 38 W 505.14 feet from the center of a mining shaft; thence |
| N 30 27' 56" E | 394.46 | feet to a point; thence |
| S 65 29' 33" E | 747.33 | feet to a point; thence |
| S 20 33' 22" W | 85.44 | feet to a point; thence |
| S 72 33' 10" W | 366.88 | feet to a point; thence |
| N 72 15' 19" W | 524.98 | feet to the beginning containing 5.44 acres more or less and being a portion of G-3 tract. |

BOOK 0349 PAGE 243

PARCEL NO. 6:

BOOK 0349 PAGE 244

A tract of land in Kentucky District, Nicholas County, West Virginia, situate on the waters of Panther Creek and on the west side of State Secondary Route 39/15 approximately 1.3 miles north of the intersection of said Route 39/15 and State Route 39, more particularly bounded and described as follows:

| | | |
|---|---|---|
| | | Beginning at a point in the Westerly R/W line of State Secondary Route 39/15 from which a P.K. nail set in the westerly edge of blacktop is N 89 06' E 58.74 feet; thence |
| S 89 05' 58" W | 765.54 | feet to a point; thence |
| N 25 25' 07" W | 467.32 | feet to a point; thence |
| S 88 18' 15" E | 746.09 | feet to a point; in the Westerly R/W line of said Secondary Route 39/15, from which a P.K. nail set in the center of black top is S 88 18' E 51.75 feet; thence along the westerly line of said Route 39/15 |
| S 25 15' 30" E | 223.71 | feet to a point; thence |
| S 33 54' 47" E | 223.70 | feet to the beginning containing 6.89 acres, more or less, and being a portion of B&O Tract 1. |

PARCEL NO. 7:

A tract of land in Kentucky District, Nicholas County, West Virginia, situate along the south side of Gauley River and on the waters of Little Laurel Creek and Panther Creek; more particularly bounded and described as follows:

| | | |
|---|---|---|
| | | Beginning at a stake, corner Tract W-22; thence in part with Tract W-22 |
| S 19 20' 35" W | 2108.90 | feet, passing a set stone, corner to tracts W-22 & W-24 at 1098.90 feet, in all 2108.90 to a point, thence |
| N 83 56' 01" W | 254.61 | feet to a point; thence |
| N 51 29' 08" W | 738.70 | feet to a point; thence |
| N 03 37' 17" W | 870.74 | feet to a point; thence |
| N 54 34' 36" W | 816.06 | feet to a point; thence |
| N 66 35' 16" W | 422.81 | feet to a point; thence |
| N 06 15' 56" W | 339.03 | feet to a point; thence |
| N 79 00' 00" W | 265.00 | feet to a point in Little Laurel Creek Road; thence |
| N 16 40' 00" W | 135.49 | feet to a point; thence |
| S 79 00' 00" E | 362.00 | feet to a point; in Little Laurel Creek; thence along the meanders of said creek |
| N 00 37' 52" W | 758.76 | feet to a point; thence |
| N 19 23' 37" E | 548.10 | feet to a point; thence |
| N 14 06' 30" E | 771.26 | feet to a point; thence |
| N 04 11' 32" W | 383.02 | feet to a point; thence |
| N 43 26' 33" E | 234.14 | feet to a point; thence |
| N 30 13' 02" E | 315.93 | feet to a point; thence |
| N 08 27' 32" E | 197.14 | feet to a point; thence |

| | | |
|---|---|---|
| N 00 00' 00" E | 237.00 | feet to a point in Little Laurel Creek; thence |
| N 09 37' 17" W Laurel Creek; thence | 532.49 | feet to a point in Little |
| N 22 01' 32" E | 711.96 | feet to a point in Little Laurel Creek; thence leaving said Creek and along meanders of a mine access road |
| N 32 08' 52" W | 298.81 | feet to a point; thence |
| N 16 42' 52" W | 358.13 | feet to a point; thence |
| N 40 42' 39" W | 510.55 | feet to a point; thence |
| N 51 11' 49" W | 1061.20 | feet to a point in said road; thence leaving the road |
| N 82 16' 52" W | 1675.18 | feet to a point; thence |
| N 48 55' 06" W | 517.40 | feet to a point; thence |
| N 16 41' 57" W | 626.42 | feet to a point; thence |
| N 01 21' 50" E | 420.12 | feet to a point; thence |
| N 23 04' 13" E | 293.47 | feet to a point; thence |
| N 01 23' 25" E | 1030.30 | feet to a point; thence |
| N 90 00' 00" E | 210.00 | feet to a point on the south side of Gauley River, thence |
| S 14 37' 15" E | 475.39 | feet to a point; thence |
| S 03 55' 06" W | 1463.42 | feet to a point; thence |
| S 54 11' 48" E | 752.13 | feet to a point; thence |
| N 90 00' 00" E | 1250.00 | feet to a point; thence |
| S 70 51' 07" E | 381.08 | feet to a point; thence |
| S 36 29' 50" E | 1076.02 | feet to a point; thence |
| S 59 02' 10" E | 583.10 | feet to a point; thence |
| S 67 26' 34" E | 351.92 | feet to a point; thence |
| S 88 35' 36" E | 1018.31 | feet to a point; thence |

| | | |
|---|---|---|
| S 46 48' 02" E | 832.68 | feet to a point in said River; thence leaving the River |
| S 79 53' 17" E | 797.39 | feet to a point near center Panther Creek RR Bridge; thence |
| N 63 44' 29" E | 418.15 | feet to a point in center line B&O RR; thence generally following center line of B&O RR |
| S 88 07' 20" E | 305.16 | to a point; thence |
| S 55 32' 21" E | 309.27 | feet to a point; thence |
| S 34 12' 02" E | 622.68 | feet to a point; thence |
| S 60 15' 18" E | 685.29 | feet to a point; thence |
| S 45 19' 52" E | 611.66 | feet to a point; thence |
| S 54 02' 58" E | 1371.18 | feet to a point; thence |
| S 28 48' 39" E | 228.25 | feet to a point; thence |
| S 02 51' 45" E | 200.25 | feet to a point; thence |
| S 14 10' 41" W | 195.97 | feet to a point; thence |
| S 12 38' 05" W | 763.49 | feet to a point in center line of said B&O RR; thence leaving said RR |
| N 90 00' 00" E | 42.00 | feet to a point; thence |
| S 18 08' 08" E | 363.03 | feet to a point; thence |
| S 17 08' 25" W | 559.87 | feet to a point; thence |
| S 67 41' 38" E | 126.46 | feet to a point; thence |
| S 19 25' 30" W | 420.96 | feet to a point; thence |
| S 36 24' 59" W | 227.41 | feet to a point; thence |
| S 07 51' 58" W | 153.44 | feet to a point; thence |
| S 24 22' 55" E | 305.22 | feet to a point; thence |
| N 86 07' 43" E | 133.30 | feet to a point; thence |
| N 17 11' 09" E | 101.53 | feet to a point; thence |

| | | |
|---|---|---|
| N 06 09' 33" W | 139.81 | feet to a point; thence |
| N 33 57' 04" E | 608.79 | feet to a point; thence |
| S 70 44' 17" E | 481.98 | feet to a point; thence |
| N 10 44' 04" E | 429.52 | feet to a point; thence |
| S 82 57' 43" E | 81.61 | feet to a point; thence |
| N 14 08' 45" E | 126.85 | feet to a point; thence |
| N 34 44' 05" W | 91.26 | feet to a point; thence |
| N 10 19' 52" E | 195.16 | feet to a point; thence |
| N 38 55' 39" W | 100.26 | feet to a point; thence |
| N 02 13' 52" E | 77.06 | feet to a point; thence |
| N 74 00' 44" E | 274.18 | feet to a point, corner to to Richwood Airport; thence |
| S 32 32' 10" E | 628.00 | feet to a point, corner to Richwood Airport; thence |
| N 37 39' 20" E | 580.00 | feet to a point, corner to Richwood Airport; thence |
| S 78 47' 59" E | 104.33 | feet to a point; thence |
| S 01 02' 30" W | 165.03 | feet to a point; thence |
| S 46 35' 28" W | 203.73 | feet to a point; thence |
| S 12 31' 44" W | 156.73 | feet to a point; thence |
| S 67 41' 59" E | 234.54 | feet to a point; thence |
| S 31 11' 24" E | 260.68 | feet to a point; thence |
| S 71 59' 45" E | 188.24 | feet to a point; thence |
| N 79 37' 13" E | 205.35 | feet to a point; thence |
| S 34 34' 58" E | 516.21 | feet to a point; thence |
| S 64 47' 56" W | 1690.95 | feet to a point; thence |
| S 72 05' 44" W | 1229.55 | feet to a point; thence |
| S 87 39' 17" W | 586.49 | feet to a point; thence |
| N 05 41' 18" W | 514.53 | feet to a point; thence |

| | | |
|---|---|---|
| S 90 00' 00" W | 173.00 | feet to a point in Secondary Route 39/15; thence |
| N 09 59' 06" W | 144.18 | feet to a point in Secondary Route 39/15; thence, leaving said Route 39/15 |
| N 28 21' 08" W | 301.12 | feet to a point; thence |
| N 01 15' 08" W | 183.04 | feet to a point; thence |
| N 37 59' 40" E | 336.26 | feet to a point in Secondary Route 39/15; thence with said road |
| N 20 30' 36" E | 1021.77 | feet to a point; thence |
| N 10 58' 26" E | 1103.17 | feet to a point; thence |
| N 01 24' 25" E | 285.09 | feet to a point; thence |
| N 25 08' 53" W | 353.41 | feet to a point; thence |
| N 46 19' 01" W | 615.35 | feet to a point in Secondary Route 39/15; thence leaving said Road |
| S 47 51' 45" W | 566.39 | feet to a point; thence |
| N 54 12' 40" W | 795.14 | feet to a point; thence |
| N 67 40' 17" W | 302.70 | feet to a point; thence |
| N 88 05' 27" W | 300.17 | feet to a point; thence |
| S 70 08' 41" W | 191.38 | feet to a point; thence |
| S 42 11' 04" W | 431.86 | feet to a point in Brock Run; thence |
| N 00 00' 00" E | 990.00 | feet to a point in Brock Run; thence |
| N 33 41' 24" W | 396.61 | feet to a point in Brock Run; thence leaving said Run and along the meanders of a mine access road |
| N 19 01' 32" E | 306.76 | feet to a point; |
| S 86 39' 42" W | 601.02 | feet to a point; thence |
| N 82 01' 12" W | 540.23 | feet to a point; thence |

| | | |
|---|---|---|
| N 69 07' 01" W | 266.51 | feet to a point; thence |
| N 38 21' 31" W | 207.87 | feet to a point; thence |
| N 72 59' 54" W | 707.94 | feet to a point; thence |
| N 80 13' 03" W | 147.14 | feet to a point in mine access road thence leaving said access road |
| S 56 32' 19" W | 417.14 | feet to a point; thence |
| S 72 38' 46" W | 117.34 | feet to a point; thence |
| S 18 07' 10" W | 401.93 | feet to a point; thence |
| S 49 41' 34" E | 190.14 | feet to a point; thence |
| S 22 18' 22" E | 210.77 | feet to a point; thence |
| S 42 30' 38" W | 406.97 | feet to a point; thence |
| S 21 57' 38" E | 334.25 | feet to a point; thence |
| S 89 39' 42" E | 420.14 | feet to a point; thence |
| S 31 32' 25" E | 1050.30 | feet to a point in Line of B&O Exception 2; thence |
| S 01 51' 08" E | 125.30 | feet to a large hemlock to corner B&O Exception 2; thence |
| S 64 56' 06" W | 560.00 | feet to a point in a line of B&O Exception 2; thence |
| S 85 02' 01" W | 576.49 | feet to a point; thence |
| S 46 04' 22" W | 377.66 | feet tp a point; thence |
| S 42 27' 05" E | 238.53 | feet to a point; thence |
| S 00 00' 00" E | 194.00 | feet to a point; thence |
| S 46 28' 25" W | 439.97 | feet to a point; thence |
| S 15 24' 16" W | 639.99 | feet to a point; thence |
| S 07 25' 53" E | 255.14 | feet to a point; thence |
| S 34 26' 20" E | 212.19 | feet to a point; thence |
| N 71 44' 14" E | 526.52 | feet to a point; thence |
| S 82 28' 34" E | 213.84 | feet to a point; thence |

| | | |
|---|---|---|
| N 12 48' 15" E | 315.85 | feet to a point; thence |
| N 86 21' 16" E | 361.73 | feet to a point; thence |
| N 47 59' 37" E | 446.79 | feet to a point; thence |
| S 59 21' 19" E | 308.02 | feet to a point; thence |
| S 22 55' 51" E | 278.97 | feet to a point in line of B&O Exception 2; thence |
| S 34 04' 29" W | 675.00 | feet to a stake corner Tract W-22; thence with said Tract W-22 |
| S 75 10' 25" E | 402.60 | feet to the beginning containing 459.91 acres more or less and being a portion of the B&O-1 Tract. |

PARCEL NO. 8:

A tract of land in Kentucky District, Nicholas County, West Virginia, situate approximately 6000 feet north of the town of Nettie and on the waters of of Little Laurel Creek, more particularly bounded and described as follows:

Beginning at a point in forks of an access road leading from Nettie down Little Laurel Creek and a wood road; thence

| | | |
|---|---|---|
| N 38 28' 14" W | 1181.46 | feet to a point; thence |
| N 18 21' 32" E | 1190.60 | feet to a point west of access road; thence |
| S 80 32' 16" E | 273.72 | feet to a point; thence |
| S 35 17' 12" E | 398.15 | feet to a point; thence |
| S 14 46' 58" W | 744.65 | feet to a point in woods road; thence |
| S 15 22' 35" E | 622.27 | feet; to said woods road; thence along same |
| S 17 29' 17" W | 382.69 | feet to the beginning containing 23.63 acres more or less and being a portion of the B&O-1 tract. |

The aforesaid Parcel No. 1 is a part of the property conveyed to New Gauley Coal Corporation by two deeds: (1) from W. A. O'Dell, et al. dated October 16, 1946, recorded in the Office of the Clerk of the County Commission of Cabell County, West Virginia in Deed Book No. 109, at Page 500, and (2) from The Tidewater Coal Company dated March 15, 1919, recorded in Deed Book No. 65, at Page 117.

The aforesaid Parcel 2 is a part of the property conveyed to New Gauley Coal Corporation by two deeds: (1) from The Tidewater Coal Company by deed dated March 15, 1919, recorded in the aforesaid Clerk's Office in Deed Book No. 65, at Page 117, and (2) from Gauley Coal Land Company dated January 21, 1919, recorded in Deed Book No. 64, at Page 419.

The aforesaid Parcel No. 3 is a part of the property conveyed to New Gauley Coal Corporation by W. A. O'Dell, et al. by deed dated October 16, 1946, recorded in the Office of the Clerk of the County Commission of Cabell County, West Virginia in Deed Book No. 109, at Page 500.

The aforesaid Parcels Nos. 4, 6, 7 and 8 are a part of the property conveyed to New Gauley Coal Corporation by The Gauley Company and West Virginia & Pittsburgh Railroad Company by deed dated November 14, 1921, recorded in the aforesaid Clerk's Office in Deed Book No. 70, at Page 464.

The aforesaid Parcel No. 5 is a part of the property conveyed to New Gauley Coal Corporation by Gauley Coal Land Company by deed dated January 21, 1919, recorded in the aforesaid Clerk's Office in Deed Book No. 64, at Page 419.

RECEIPT FOR RECORD 93 JAN 25 PM 1:47

$7.15 COUNTY DD 066407

$7.15 COUNTY DD 066406

$21.45 STATE & COUNTY D 466108

$21.45 STATE & COUNTY D 466107

$94.05 STATE & COUNTY F 366418

$94.05 STATE & COUNTY F 366417

$31.35 COUNTY FF 056793

$31.35 COUNTY FF 056792

**STATE OF WEST VIRGINIA**

Nicholas County Commission Office 1-25 19 93

This Deed was this day presented in said office and thereupon together with the certificate thereto annexed is admitted to record.

Teste John Greer Clerk