IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

| | | |
|---|---|---|
| TIP TOP CONSTRUCTION, INC. | ) | |
| Plaintiff, | ) | |
| | ) | No. 08-352C |
| v. | ) | Judge Lynn J. Bush |
| | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

TIP TOP'S MOTION TO STRIKE, OR IN THE ALTERNATIVE, TO SUPPLEMENT THE ADMINISTRATIVE RECORD

Plaintiff, Tip Top Construction, Inc. ("Tip Top") moves to strike pages 1 to 13 (first paragraph) of the Defendant's reply brief and all supporting exhibits. These materials are untimely, improper, and legally irrelevant. The materials pre-dated Defendant's opening brief and should have been included (if at all) as part of its opening brief. This would have provided Tip Top a fair opportunity to respond. Instead, Defendant held back on these materials until its reply brief and raised new (albeit irrelevant) factual and legal issues.

Defendant's reply brief is also an improper, backdoor attempt to supplement the administrative record ("AR"). Even if Defendant had moved to supplement the AR, which it did not, there is no basis to grant such a motion. The materials Defendant now wants the Court to consider do not relate to an initial jurisdictional determination of "standing" but are in support of a merits "prejudice" determination which actually is an improper post-hoc Department of Justice ("DOJ") "responsibility determination." Defendant's case law support is, thus, irrelevant.

Further, Defendant cannot prove that this asset could never have been accepted by the Federal Highway Administration's ("FHWA") CO. The CO never conducted <u>any</u> investigation or evaluation of the coal asset before or after rejecting the bid bond.

Defendant has adopted this tactic to divert the Court's attention from this fundamental failing on the part of the CO by raising irrelevant "prejudice" arguments. However, it is undisputed that the surety's coal asset has been accepted by other agencies. AR 430-31. Moreover, and apart from the coal asset, Defendant has not even asserted that Tip Top's surety could not have submitted an acceptable substitute asset under FAR §28.203-4 and thus, competed. Thus, there is no legal basis to supplement the record.

Alternatively, if the Court allows Defendant to supplement the record, Tip Top respectfully requests that the Court permit Tip Top to supplement the record with the Declarations of Edmund C. Scarborough, Barry Mullens, the person who sold Mr. Scarborough the property and coal, and the attached exhibits thereto, and the Supplemental Declaration of Percy J. Hollins, the owner of Tip Top. These declarations show that the Government's allegations regarding Mr. Scarborough's ownership and his alleged inability to readily market coal or the stockpile of coal refuse in either an "as is" or in processed form are inaccurate and misleading. In short, these new allegations, ostensibly relating the merits "prejudice" argument, are shown to be incorrect and inadequate to overcome Tip Top's proof that it would have a substantial chance for the award.

A. <u>The Declaration and Exhibits and Arguments Based on Them are Untimely</u>

The Declaration of Albert Rodebaugh, Defendant's first exhibit, was signed on June 10, 2008, the same day Defendant filed its motion for judgment on the AR in this case. The other exhibits were in existence long before that date and/or are matters of public record. Defendant offers no excuse for why these materials were not included in its opening brief. No request for a time extension was made. It appears that Defendant chose to withhold these materials to gain an unfair tactical advantage. On this basis alone, Tip Top's motion to strike should be granted.

B. Defendant's Legal Authority for Supplementing the Record is Inapplicable

Galen Medical Associates v. United States, 74 Fed. Cl. 377 (2006) does not support supplementation of the AR in this case. In Galen, the Court was presented with records after the case was filed that showed that Galen was not authorized to do business at the time of the award. The Court held that the protester's status at that time deprived the Court of jurisdiction to reach the merits since Galen could not have legally received that contract.

The Court in Galen did not consider OMV Medical Inc. v. United States, 219 F.3d 1337, 1343-44 (Fed. Cir. 2000) in which the Federal Circuit held that in a bid protest case, this Court can only consider the grounds contemporaneously asserted by the CO for the agency's decision, to be an impediment to consideration of this prejudice/standing issue. The initial jurisdictional prejudice/standing issue — whether Galen could have obtained a contract on the date of award – was unrelated to the CO's merits decision to eliminate Galen. Instead, the supplemental materials addressed the initial jurisdictional standing determination to be made by the Court "before proceeding to the merits…." Galen, supra, 74 Fed. Cl. at p. 380.

Defendant's attempt at this late date to supplement the record with arguments and materials is based on a different prejudice/standing determination. "Prejudice" for this type of standing is not subject to a motion to dismiss.[1] It involves a more thorough weighing of the merits after the Court concludes that there has been a determination that the protester has succeeded on the merits. A&D Fire Protection v. United States, 72 Fed. Cl. 126, 131, fn. 4 (2005) citing Bannum, Inc. v. United States, 404 F.3d 1346, 1353 (2005); accord Night Vision Corp v. United States, 68 Fed. Cl. 368, 392 fn. 23 (2005).

[1] Indeed, Defendant only sought dismissal for alleged non-responsiveness. Def. Motion, pp. 1-2; 8. Defendant's standing argument based on "prejudice" presumed that the CO violated the regulations. Def. Motion at p. 26.

This second merits determination is the basis for Defendant's attempt to supplement the record with materials that have long existed. Thus, the considerations underlying Galen do not support Defendant's late supplementation.

Myers Investigative Services, Inc. v. United States, 275 F.3d 1366, 1371 (Fed. Cir. 2002) also does not support Defendant's attempted supplementation. Indeed, Defendant has not met or even alleged the essential elements for this second "prejudice" defense under Myers as Defendant cannot show that a CO could not have accepted the asset or a substitute asset, thus, enabling Tip Top to compete.

In Myers, in deciding whether a bidder "could compete for the contract" for a sole source award, the court found that the protester, by its own admission, had introduced no evidence that it was capable of performing the contract. Thus, even if the protester prevailed on its legal arguments, the protester had not shown even the minimum requisite evidence that it could have had a substantial chance to compete for the contract.

Here, Tip Top has more than established that it can compete for the award if it prevails on the merits. It is undisputed that Tip Top submitted the low bid, a bid bond, an SF 28, and a pledge of assets. AR 218, 227-32. Defendant cannot dispute that Tip Top's surety has issued acceptable bid bonds which have been accepted by other federal agencies, including bid bonds pledging his coal assets. AR 430-33. For good reason, Defendant has not even asserted that Tip Top's surety could not have submitted a substitute asset. If Tip Top's protest grounds are upheld, Tip Top's surety will have the opportunity to either persuade the CO to accept the coal asset or to submit an acceptable substitute bond under FAR §28.203-4. Once the bid bond is accepted, Tip Top has a substantial chance to compete for the award. Hawaiian Dredging v. United States, 59 Fed. Cl. 305, 326 (2004).

To attempt to overcome this showing and justify its late supplementation of the record, Defendant has gone outside the contemporaneous evaluation and the AR (which includes post-hoc materials) and attacked the coal asset by misinterpreting its supplemental documents (consisting mostly of prior deeds to the land on which the coal is stockpiled) to question the existence of the asset and to impugn the surety's credibility. As shown by the attached Declarations, discussed below, these claims are inaccurate, misleading, and in any event, do not prove that the surety's bid bond was incapable of being accepted. The record and case law establish that if injunctive relief is granted, Scarborough's coal asset or a substitute asset could be accepted by an objective CO.

The AR shows that bid bonds pledging Scarborough's coal asset have been accepted by a number of COs from other agencies. AR 432. While Defendant speculates that the FHWA CO will never accept this asset, her contemporaneous rejection was based on an unreasonable interpretation of the regulations and a violation of FAR §28.203(a), which, as consistently interpreted in numerous Government Accountability Office ("GAO") precedents before and after the 1991 regulations were issued, required her to provide an opportunity for the surety to support its asset or submit a substitute asset. Jay Jackson & Associates, B-271236-.3, Sept. 10, 1996, 96-2 CPD ¶111, citing Gene Quigley, Jr., 70 Comp. Gen. 273, B-241565, Feb. 19, 1991, 91-2 CPD ¶182; National Environmental Services Company, Inc., B-254377, Nov. 22, 1993, 93-2 CPD ¶290; Astro Painting Company, B-247922-.2, June 19, 1992, 92-1 CPD ¶535; Pamfilis Painting, Inc., B-247922, June 15, 1992, 92-1 CPD ¶521; Don Kelland Materials, Inc., B-245801, Feb. 3, 1992, 92-1 CPD ¶135; E.C. Development, supra; D.M. Potts Corporation, B-231855, Nov. 4, 1988, 88-2 CPD ¶440; Transcontinental Enterprises, Inc., 66 Comp. Gen. 549, B-225802, July 1, 1987, 87-2 CPD ¶3; Advance Building Maintenance Co., B-176849 (January 2, 1973).

Further, the FHWA CO erroneously believed she was prohibited from considering additional support outside of the bid documents. AR 263. Thus, her future position as to the bid bond and/or the underlying assets is a matter of speculation.

Moreover, Defendant has even not asserted in its "prejudice" argument that Scarborough could not have submitted an acceptable substitute asset. Def. Mot. pp. 26-32. The record shows that Scarborough has submitted acceptable assets other than coal to federal agencies. AR 430, 433. Since FAR §28.203-4 and the above case law permits a substitution, Defendant cannot meet a critical element in Myers – that Scarborough could not have submitted an acceptable bond which would prevent Tip Top from competing.

To attempt to address this flaw, Defendant makes merits arguments based on (a) a disputed interpretation of FAR §28.203-4 claiming only a surety can submit the request, and (b) a disputed interpretation of when that request must be made. Neither position is valid.

Defendant itself admits that other COs have accepted substitute assets without even receiving a request. Gulf & Texas Trading Co., B-253991.2, Jan. 24, 1994, 94-1 CPD ¶31. Thus, the alleged requirement that only a surety can make a request to submit a substitute bond is not a legal impediment preventing a surety from submitting an acceptable substitute asset.

Defendant's post-hoc rationale that the surety's request after award was untimely and could not have been accepted is without merit. Tip Top, on behalf of the surety, offered a substitute asset immediately after the CO's improper rejection. He was told by the CO that the FAR prevented acceptance of a substitute asset, an incorrect statement that she later confirmed. AR 565, Hollins ¶2, AR 263.

Moreover, the case law cited by Defendant regarding the time to consider matters of FAR part 9.1 responsibility, i.e. up to the time of award, presumes the contractor is still under consideration. Here, Tip Top was eliminated from consideration when the CO issued her final determination on the surety's responsibility. AR 243.

Finally, even if, for reasons Defendant has not explained, a request by the surety was elevated to a material requirement, and the award was the cutoff date for requests, the CO's erroneous position that no support for the bond could be accepted slammed the door shut and made any such requests futile, useless acts. AR 263. Drakes Bay Land v. United States, 424 F.2d 574, 577 (1970); John Crowley v. United States, 56 Fed. Cl. 291 (2003); McDonnell Douglas Corp. v. United States, 37 Fed. Cl. 285, 292, fn. 11 (1997); Four Winds Forwarding, Inc. v. United States, 13 Cl. Ct. 510 (1987).

In sum, Defendant's attempt to supplement the record must be rejected because (a) Galen supra relates to initial "standing" and "prejudice," and (b) Defendant has failed under Myers, supra, to establish that Tip Top would be unable to compete for the award. No legal or factual basis to supplement the record at this late date exists.

B. Alternatively, Tip Top's Declarations and Exhibits Should Supplement the AR

Tip Top's motion for judgment should be granted on the contemporaneous evaluation record. OMV Medical, supra. As set forth in Tip Top's pleadings, the CO's contemporaneous reason for eliminating Tip Top, AR 243, was contrary to law, unreasonable, and an abuse of discretion. After receiving Tip Top's request on the surety's behalf that the surety be allowed to submit a substitute asset of cash, and after receiving the surety's letter offering support of the asset, AR 260-62, the CO's erroneous belief that she could accept no support for the bond, including a substitute asset, was an abdication of discretion. AR 565, Hollins ¶2, AR 263.

Assuming solely for the sake of argument that the Court were to deny Tip Top's motion to strike and allow Defendant's late supplementation on the issue of "prejudice," Tip Top should also be permitted to supplement the record with the attached declarations and exhibits to address these allegations. The Declarations confirm that (a) Scarborough owns the asset, Mullen ¶¶6, 8-13, Scarborough ¶22, (b) coal refuse is not a "mining" or "mineral interest" but is mined, extracted, stockpiled and readily marketable coal exceeding the penal sum of the bond based on reference spot prices of coal, Mullen ¶¶ 15-23, Scarborough ¶¶21-32, (c) the asserted value of the refuse coal had a reasonable basis, Id., (d) Scarborough is the individual surety who authorized the attorney-in-fact to sign the bid bond and SF 28, Scarborough ¶¶2-3, 6-14, and (e) if the coal asset had been rejected, either initially by the CO after due consideration, or if upon a Tip Top default and an FHWA demand for immediate payment, Scarborough has and would submit acceptable substitute assets. Id., ¶¶28, 35-38, 41.

A. Scarborough Owns the Valuable Coal Which Exists in His Coal Refuse Stockpile

Defendant's claims that Scarborough does not own the coal or that the coal does not "exist" are misleading, inaccurate hyperbole. Valuable coal exists in Scarborough's coal refuse, a fact disclosed in the Alliance Report to the GAO, AR 435-57, included as an exhibit to Tip Top's Memorandum in support of injunctive relief, and confirmed in Mr. Mullen's Declaration. See Mullen ¶15-23.

With respect to Scarborough's ownership, reclamation is not related to processing coal refuse. Mullen¶8. Defendant apparently believes that Scarborough has no right to sell the coal because, it claims incorrectly, coal refuse is subsurface and must be mined. Nothing supports this claim.

Deed reservations or restrictions on "mining permit" or "coal … mineral rights" have nothing to do with previously mined, extracted that was stockpiled on the "surface" of the R707 Property. The omitted portion of the quote cited by Defendant which states that Scarborough had no rights to the minerals "beneath the surface" defines this area as "5 feet" below the surface. Def. Ex. G, p. A 39. The surface of the ground from which 5 feet is measured is not the top of a stockpile of coal refuse any more than the surface of the ground is measured from the top of a skyscraper.

Defendant's claim that Scarborough's coal refuse was "presumably" placed below the surface during "reclamation" activities, as noted above, is inaccurate. Mullen ¶8. The bottom line is that Scarborough unequivocally owns the R707 Property as well as the coal refuse stockpiled on the surface of the property. He has the legal right to process and/or sell the coal refuse.

B. Coal Refuse is Readily Marketable

Defendant's implication that the coal could not have been timely processed or sold and thus, cannot be readily marketed is speculation. Mr. Roderbaugh's declaration makes no representation on how long a modification or transfer of the Green Valley would take to allow removal of the coal. Scarborough had taken steps to process the coal refuse. Scarborough ¶23, 28. Permits are not a significant impediment to obtaining the value. Mullens ¶23.

Moreover, the FAR imposes no time limit when an acceptable asset must be converted to cash. Real estate, an acceptable asset, often cannot be sold immediately. The purpose of the regulations is to assure the recovery of the penal amount of the bond from a readily marketable asset. This coal refuse stockpile can be sold "as is" for more than the penal value of the bond. Scarborough, ¶29-32, Mullen, ¶¶15-23.

Finally, in the event of a contractor default, the surety has options as to how to make good on its obligations. The alternatives include but are not limited to the surety (i) paying the penal sum in cash or with other assets it owns, (ii) borrowing against the pledged asset to raise cash to pay the penal sum, (iii) allowing the Government to take possession of the asset, and (iv) selling the asset "as is" or after further processing. Scarborough, ¶¶35-38. Nothing prevents the CO from accepting this asset or, of course, a substitute asset.

CONCLUSION

Defendant cannot justify its late and improper attempt to supplement the record. It has offered no proof that the FHWA would have been required to reject its coal asset or an acceptable substitute asset that would justify the loss of $1.4 million savings to the taxpayer and a significantly earlier completion of a much needed roundabout represented by Tip Top's low bid. Scarborough's coal asset exists, is owned by Scarborough, is readily marketable, and has sufficient value. It could have been accepted and, even if rejected by the CO after due consideration, Scarborough could and would have submitted an acceptable substitute asset under FAR §28.203-4. For these reasons, Tip Top respectfully requests that its motion to strike be granted. Alternatively, Tip Top respectfully requests that if Defendant's supplementation is allowed, that the Court also accept Tip Top's Declarations and exhibits attached thereto.

Respectfully submitted,
s/ Michael A. Gordon
MICHAEL A. GORDON PLLC
1629 K Street N.W., Suite 300
Washington, D.C. 20006
(202) 508-1464 (telephone)
(202) 349-1701 (facsimile)
Attorney of Record
for Plaintiff, Tip Top Construction, Inc.

OF COUNSEL:
Fran Baskin, Esquire
June 27, 2008