IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

| | | |
|---|---|---|
| TIP TOP CONSTRUCTION, INC.<br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) | <br><br>No. 08-352C<br>Judge Lynn J. Bush |

TIP TOP'S MOTION FOR RECONSIDERATION

Pursuant to Court of Federal Claims Rule 59, Plaintiff, Tip Top Construction, Inc. ("Tip Top") respectfully requests that the Court reconsider its opinion denying Tip Top's protest and enter an injunction in the interim; alternatively, the Court should stay performance of the contract pending Tip Top's appeal of the decision. The motion for reconsideration should be granted because:

(a) the Court's obviously troubled conclusion that the Federal Highway Administration ("FHWA") Contracting Officer ("CO") did not abuse her discretion regarding a substitute asset was based on a key premise that is in conflict with the record. Specifically, the Court understood that the CO had refused to respond to the request to substitute assets because it had been made by Tip Top on behalf of the surety rather than by the surety itself, allegedly in violation of Federal Acquisition Regulation ("FAR") §28.203-4. This was not the contemporaneous reason for her treatment of the above request for substitution of assets, which as this Court recognizes is the only reason is to be evaluated under OMV Medical Inc. v. United States, 219 F.3d 1337 (Fed. Cir. 2000). In fact, the CO did respond to the request, and refused to accept it based on the legally erroneous position that the FAR did not allow a substitution of assets. See AR 700. An exercise of discretion based on legal error cannot fall within the parameters of rationality and is not entitled to deference. The motion for reconsideration should be granted.

(b) the Court's determination that the CO had no legal duty to inquire as to the asset or entertain requests for substitute assets based on John C. Grimberg v. United States, 185 F.2d 1297, 1301 (1999), an issue of first impression, should be reconsidered since it directly conflicts with longstanding Government Accountability Office ("GAO") precedent; and

(c) the Court's reading of the CO's February 19, 2008 rejection letter as primarily based on matters relating to an escrow account is not supported by the letter or the record and thus, is in conflict with OMV Medical. This approach effectively substituted the GAO's financial responsibility determination for the actual basis on which the CO rejected the bid bond.

As discussed below, under the applicable legal standards and relevant facts, the CO's rejection of the bid bond was arbitrary, capricious, an abuse of discretion and in violation of law, requiring a new responsibility determination including fair consideration of a substitute asset. Significant legal issues and the balance of harms merit issuance of injunctive relief.

A. The CO's Rejection of a Substitute Asset was Based on a Legal Error

The Court found that the CO did not to respond to Tip Top's request to substitute assets on behalf of the surety because the request was not "sufficiently formal" under FAR §28.203-4 and thus, was "inappropriate and improperly submitted." Decision at p. 39. This was alleged to be the basis on which the CO's discretion not to entertain an acceptable substitute asset was found to have been rationally exercised. The Court supported this interpretation of the CO's contemporaneous reasoning by contrasting her refusal to respond with her written response to the surety's lawyer's letter. AR 263.

The record shows that an alleged lack of formality was not the basis for the CO's rejection of the substitution request, the only determination this Court is reviewing under OMV Medical. The uncontested Declaration of Percy J. Hollins states:

> 2. Shortly after the Federal Highway Administration ("FHWA") rejected my bid, and after getting approval from the surety's agent, I sent my February 21, 2008 e-mail to the Contracting Officer, Wanda Peffer, in which I offered a substitute asset on the surety's behalf. I followed up that e-mail with a telephone call to Ms. Peffer and informed her that the surety was willing to provide a substitute asset or cash in support of the bid bond we provided. **She stated that the FARs would not allow for a substitute asset by the individual surety and that she would not accept it.** (Emphasis added). AR 700.

This Declaration, filed shortly before oral argument, shows that the February 20, 2008 e-mail, as amplified by Mr. Hollins' call, was a written request by the surety offering to provide a substitute asset or cash that Tip Top was making on its behalf. The declaration also shows that the CO did not refuse to respond based on formalities; she unequivocally rejected the request based solely on her erroneous view that a request for a substitution of assets was not allowed under the FAR in the case of an individual surety.

The CO's contemporaneous basis for rejection has no legal basis. Nothing in FAR §28.203-4 limits the CO's discretion to accept a substitution of assets by an individual surety in any fashion. Indeed, U.S. Floors, Inc., B-241552, B-241555, Feb. 6, 1991, 91-1 CPD ¶130, the leading GAO case expressly dealing with a challenge to a substitution of assets under FAR §28.203-4, shows that a CO can properly accept substitution for an otherwise unacceptable personal property asset even after a protest has been filed.

Moreover, even Defendant conceded in its Motion, p. 35, that Contracting Officers have evaluated substituted assets without a formal request. Gulf & Texas Trading Co., B-253991-.2, Jan. 24, 1994, 94-1 CPD ¶3. Even if more formality was required than occurred here, Gulf shows it could have been waived.

An agency's surety financial responsibility determination based on a direct conflict with applicable regulations and case law cannot meet the legal standard for a rational exercise of discretion.

Moreover, even if such formality was required, her rejection of this request for the reasons given showed that a later request by the surety would have been a futile act. The law does not require contractors to engage in useless, futile acts. See Drakes Bay Land v. United States, 424 F.2d 574, 577 (1970); John Crowley v. United States, 56 Fed. Cl. 291 (2003); McDonnell Douglas Corp. v. United States, 37 Fed. Cl. 285, 292, fn. 11 (1997); Four Winds Forwarding, Inc. v. United States, 13 Cl. Ct. 510 (1987). Following this unequivocal rejection, the surety's February 21, 2008 letter addressed the acceptability of the original asset. AR 260-62.

The CO's erroneous rejection of this substitution request was highly prejudicial. Tip Top, as the low bidder, would have been entitled to the award if cash or cash equivalents offered had been substituted to support the bond.

The Court was obviously troubled even by the CO's refusal to respond. Given the omitted but significant detail in a declaration submitted shortly before oral argument, the Court should reconsider its decision and grant Tip Top's motion and the relief requested. Or, the Court could call the CO and Mr. Hollins to testify on the contemporaneous basis for the CO decisions. See Watts-Healy Tibbits, a JV v. United States, ___ Fed. Cl. __ (July 23, 2008).

B. The CO Had a Duty to Inquire Prior to Rejection of the Bid

The Court's holding that the CO had no obligation to inquire regarding assets or to allow a request for substitution of assets should be reconsidered. In Grimberg, the Federal Circuit merely adopted GAO precedent which held that no CO inquiry was required of a contractor when making a responsibility determination under FAR part 9.1. See Harvard Interiors Manufacturing Co., B-247400, May 1, 1992, 92-1 CPD ¶413; EPCo Associates, B- 238015, April 13, 1990, 90-1 CPD ¶388. Thus, the Federal Circuit would likely follow the GAO's different requirements for an individual surety's financial responsibility under FAR §28.203.

The GAO has long held that this separate FAR §28.203 determination for a surety requires that a CO, before rejecting the otherwise low bidder, is obligated to seek explanations from the surety in support of the asset pledged or to pledge substitute assets:

> "… the agency should give the bidder the opportunity to have its sureties provide satisfactory explanations or pledge sufficient and acceptable assets." "… we think the contracting officer had an **obligation** to allow Mr. Quigley to obtain further explanations from the individual sureties regarding the pledged assets **or to allow the sureties to pledge additional assets.**" (Emphasis added).

Accord Jay Jackson & Associates, B-271236-.3, Sept. 10, 1996, 96-2 CPD ¶111; see also Advance Building Maintenance Co., B-176849 (Jan. 2, 1973).

The GAO's approach enables the agency to preserve the low bid from a bidder found responsible under FAR part 9.1, including through the substitution of acceptable assets under FAR §28.203-4. The CO's failure to do so here cost the Government $1.4 million.

While the Court noted factual distinctions,[1] in all of the GAO cases in which an obligation to contact the surety was required, the original assets were unacceptable. Indeed, that is when substitution is needed. No authority has been cited to limit FAR §28.203-4 to situations where the unacceptable asset could arguably have been one of the five types of acceptable assets listed in FAR §28.203-2(b). Unlike the substitution of sureties, which is prohibited as a matter of responsiveness, see Bundick Enterprises, Inc., 70 Comp. Gen. 94, B-239867-.2, Nov. 19,1990, 90-2 CPD ¶402, substitution of assets is expressly permitted under FAR §28.203-4 without limitation. In the GAO case dealing with a challenge to the substitution of assets under FAR §28.203-4, substitution for the original unacceptable personal property asset took place after a protest was filed. U.S. Floors, supra.

[1] Tip Top notes that in Jay Jackson, supra, the agency requested additional information on a mining right, an unacceptable speculative asset under FAR §28.203-2(c)(7). When the protester later attempted to argue that the asset had value as real estate, the GAO rejected this assertion, finding that "… the protester never identified the property as anything other than a mining claim." See also U.S. Floors, supra (permitting substitution of an unacceptable personal property asset.)

In sum, under the correct standard applicable to surety financial responsibility determinations, the CO abused her discretion by rejecting Tip Top without providing the opportunity to support the asset or submit an acceptable substitute asset.

C. OMV Medical Was Not Correctly Applied

The Court's intent was to adhere to OMV Medical which confines the review to the CO's actual contemporaneous basis for decision and rationale. Unfortunately, the Court's interpretation of the CO's February 19, 2008 letter effectively resulted in the disregard of the CO's stated rationale. That letter stated:

> "We have reviewed the Bid Bond submitted with your Bid in response to the subject Invitation for Bids and find it inadequate. It does not meet the requirements of the Federal Acquisition Regulation (FAR) for an Individual Surety at Section 28.203. Individual Surety Bonds must be supported by acceptable assets, as listed in the FAR. Acceptable assets include cash, United States Government securities, stocks and bonds that are actively traded, real property owned in fee simple and irrevocable letters of credit. Speculative assets, which would include marketable coal, are specifically excluded under FAR 28.203(c)(7)." (Emphasis added).

The natural reading of the letter, as this Court recognized, Decision, p. 5, is that the CO was attempting to explain to Tip Top, the FWHA's specific reason for rejecting the surety's bid bond. That reason, stated in the last three sentences which deal only with FAR §28.203-2, was that the "marketable coal" was "specifically excluded" as a "speculative asset" in FAR §28.203-2(c)(7). However, this was not the basis on which this Court found the coal asset unacceptable.

Instead, the Court read the letter to say that the "primary basis" on which the CO had rejected the bid was FAR §28.203, and then focused on the FAR §28.203-1 "escrow account" requirements. Decision, pp. 30-31. Tip Top does not believe this reading is supported by the letter or the record. The Court recognizes that the CO's letter never mentioned "escrow account" requirements. Decision, p. 22. Given the CO's purpose, if "escrow account" requirements had been the "primary basis" for rejection of the surety, the CO would have identified them.

Further, the CO and her lawyer never mentioned an "escrow account" or FAR §28.203-1(b)(1) in their post-hoc rationales. Instead, the FHWA argued that the "mined but not marketed coal" had been rejected because it supposedly had to be sold first to be acceptable, a requirement that, of course, does not exist in the FAR and represents another CO legal error. AR 243-44, 263.

It was not the CO but the GAO which asserted that coal was unacceptable because it allegedly had to be physically capable of being deposited into an "escrow account" under FAR §28.203-1(b). As this Court stated, the GAO's post-hoc views are irrelevant. <u>All Seasons Construction, Inc. v. United States</u>, 55 Fed. Cl. 175, 177 fn.1 (2003). Yet, that is the actual effect of the Court's reading of the letter.

Moreover, the Court's analysis of the "escrow" regulations is inconsistent with the sources cited and unfortunately has effectively resulted in substituting the GAO's judgment for that of the CO. The Court stated that "deference" is owed to the FAR drafters' alleged intent. While the FAR drafters indicated that personal property should be in some sort of an escrow account, none of the drafters' comments or the final regulations state that the only acceptable personal property assets were those which were <u>physically</u> capable of meeting <u>the minimum "escrow account" defined in FAR §28.203-1(b)(i)-(vi)</u>. The regulation as written shows that the minimum "escrow account" requirements are for cash assets -- "funds" that can be deposited and withdrawn. <u>Id.</u>

Consistent with Tip Top's position that the minimum escrow requirements for cash do not apply to all acceptable assets, FAR §28.203-2(c)(2) contains different "escrow" requirements for Government securities not exempt from the above requirements. The "escrow" requirements for this asset differ because they require the securities to be sold first and converted to funds which are then deposited in an escrow account and available for withdrawal.

Also consistent with Tip Top's position is that no minimum "escrow" requirements were written for the other types of acceptable personal property listed in FAR §28.203-2(b) -- stocks and bonds and irrevocable letters of credit. None of these assets would meet the minimum "escrow account" requirements in FAR §28.203-1(b)(1)(i)-(vi) because both assets have to be sold first before they become "funds" capable of being deposited and withdrawn.

Based on (1) FAR §28.203-1(b) statement that a security interest "may be provided" by an escrow account, (2) "escrow" requirements different from the "minimum" requirements are in FAR §28.203-2(c)(2) , and (3) the absence of escrow requirements for the other acceptable personal property assets, including those not in the FAR but meeting the FAR drafters' standard of "ready marketability" (which intent is entitled to equal deference[2]), the specific escrow terms and conditions for the assets in (3) above (including readily marketable coal or gold) were to be determined through the CO's exercise of discretion to achieve the FAR drafters' intent. Indeed, FAR §28.203-1(b) states in pertinent part that:

> "… While the offeror is responsible for establishing the escrow account, the terms and conditions must be acceptable to the contracting officer.'' (Emphasis added).

Although coal cannot be physically placed in the bank account defined in the FAR §28.203-1(b) minimum "escrow account" requirements because coal, like gold, is not "funds" or cash, this asset could be placed in a bonded area in possession of a third party escrow agent, and in the event of a default, sold with the proceeds going to an escrow account. Such an "escrow" arrangement, like that for certain securities, would meet the FAR drafters' intent of assuring that the cash from sale of a readily marketable asset was available for withdrawal. Thus, the CO could have reasonably exercised her discretion to accept coal under this "escrow" arrangement.

---

[2] While the Court did not to decide whether the list of acceptable assets was "inclusive" or "exclusive", the FHWA admitted that the lists in FAR §28.203-2 were not exclusive. AR 263; see Tip Top Motion, pp. 27, Tip Top Reply, pp. 7-8. Indeed, if the list was exclusive, gold would be unacceptable.

The CO's unreasonable belief that she could not accept any support for the bond from the surety (which would include a modification of the security interest the surety conveyed by the pledge of assets, AR 232) because it would be "untimely" under non-existent federal regulations was not a "harmless error."[3]

In sum, by holding that marketable coal (and gold) was per se unacceptable because it could not be physically placed in an "escrow account" meeting the minimum requirements applicable to cash assets, this Court substituted the GAO's surety financial responsibility determination for the one contemporaneously made by the CO when, with permissible modifications to the pledge of assets, the CO could have rationally made the opposite determination. This is what OMV Medical prohibits.

D. Injunctive Relief is Warranted

Tip Top believes its motion for reconsideration establishes its likelihood of success on the merits and requests that performance of the contract be enjoined for the reasons set forth in Tip Top's pleadings. See Watts-Healy, supra (granting reconsideration). While the Court considers this motion and/or the Court elects to call the CO and Mr. Hollins to testify regarding the basis for the CO decisions, Tip Top requests that a preliminary injunction be entered for that short period.

Any harm to the agency from maintaining the status quo will be minimal. FHWA argued that it had to submit scheduling information to a school near the construction site. However, school busing will not start until September and bus schedules are often revised.

---

[3] The Court's suggestion that Tip Top could have avoided this litigation by asking the CO for advice on the meaning of the concededly "convoluted" bid bond regulations is not supported by the record or the realities of government contracting. The CO's views on the meaning of the bid bond regulations have been uniformly erroneous. Moreover, sureties, not contractors, are the experts in the complex bid bond area and contractors naturally rely on them. This is the likely reason that the GAO established different CO obligations regarding a surety's financial responsibility determination. In any event, and most importantly, these ambiguities were all matters of responsibility which should and would have been resolved had the CO not improperly rejected Tip Top's low bid as though it was a matter of responsiveness. Responsibility issues can be resolved after bid submission.

The other factors strongly favor the injunctive relief requested, including (a) the public's interest in the $1.4 million in savings, an earlier completion date, and a proper procurement, and (b) Tip Top's irreparable harm cited in its pleadings and exhibits. Further, the preliminary injunction will minimize the costs to terminate the erroneously awarded contract and reduce any possible harm to the awardee without adversely impacting the project's completion date.

CONCLUSION AND REQUEST FOR AN EXPEDITED DECISION

For the reasons stated above, Tip Top respectfully requests that the Court reconsider its decision in light of the facts and law set forth above and to grant Tip Top's motion. Tip Top requests that the Court enjoin performance of the contract in the interim and to issue permanent injunctive relief requiring a new FHWA responsibility determination in which the surety's pledged assets or substitute assets of cash or cash equivalents are fully and fairly considered.

Tip Top respectfully requests that the Court issue its decision on this motion quickly to minimize any harm to the parties and to preserve any appeal rights.

Respectfully submitted,
s/ Michael A. Gordon
MICHAEL A. GORDON PLLC
1629 K Street N.W., Suite 300
Washington, D.C. 20006
(202) 508-1464 (telephone)
(202) 349-1701 (facsimile)
Attorney of Record
for Plaintiff, Tip Top Construction, Inc.

OF COUNSEL:
Fran Baskin, Esquire
MICHAEL A. GORDON PLLC
1629 K Street N.W., Suite 300
Washington, D.C. 20006

August 7, 2008