IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

| | | |
|---|---|---|
| TIP TOP CONSTRUCTION, INC. | ) | |
| | ) | |
| Plaintiff, | ) | No. 08-352C |
| | ) | (Judge Bush) |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO**
**PLAINTIFF'S MOTION FOR RECONSIDERATION**

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

HAROLD D. LESTER, JR.
Assistant Director

AMANDA L. TANTUM
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20005
Tel. (202) 616-8131
Fax. (202) 514-8624

August 15, 2008

Attorneys for Defendant

# TABLE OF CONTENTS

DISCUSSION……………………………………………………………………………..1

I. Standard Of Review……………………………………………...…………..….1

II. Tip Top Fails To Allege Any Of The Required Grounds For Reconsideration…………………………………………..……..……………2

III. Should The Court Conclude That Tip Top Intended To Assert The Possibility Of Manifest Injustice, No Such Injustice Is Evidenced By The Court's Decision………………………………………………...………..……3

IV. The Court's Determination Regarding The Unacceptability Of Coal Contained No Errors Of Law And Cannot Result In Manifest Injustice…………4

A. Given The Court's Alternate Holding Regarding Patent Ambiguities, Tip Top Can Demonstrate No Manifest Injustice Resulting From The Purported Errors Of Law………………………...….5

B. The Court's De Novo Review Of A Legal Question Is Not At Odds With The Federal Circuit's Decision In OMV Medical…………………..7

C. The Court Should Disregard Tip Top's Criticism Of Its Legal Conclusion Regarding The Requirement Of An Escrow Account………..9

D. The Court's Decision Focused On The CO's Conclusion Regarding FAR § 28.203, Rather Than Considerations Included In This Determination…………………………………………………………12

E. The Lack Of Prejudice To Tip Top From The CO's Conclusions Also Precludes A Finding Of Any Injustice……………………………..14

IV. The Court's Conclusion That The CO Had No Duty To Inquire Into The Coal Refuse Asset Demonstrates No Error Of Law And Results In No Manifest Injustice…………………………………………………………...14

A. The Court Should Reject Tip Top's Criticisms Of The Court's Conclusions And Assertion Of Arguments That It Could Have, But Did Not, Make……………………………………………………….14

B. The Court's Alternate Holding Precludes Any Injustice Resulting From The Purported Errors Of Law……………………………………...17

C. Tip Top Has Not Demonstrated Prejudice, Precluding A Finding Of Injustice……………………………………………………………17

VI. The Court Did Not Misinterpret Facts Related To The CO's Rejection Of A Possible Substitution Of Assets Suggested By Mr. Hollins……………….17

A. Tip Top Reasserts Arguments Already Made And Considered By The Court…………………………………………………………...17

B. Tip Top Suffered No Prejudice As A Result Of The CO's Decision Not To Allow A Substitution Of Assets…………………………………18

C. Any Arguments By Tip Top Related To Mr. Hollins's June 27, 2008 Declaration Were Untimely…………………………………………...20

D. The CO's Decision Not To Accept A Suggested Substitution Was Rational……………………………………………………………..22

VII. Tip Top Is Not Entitled To Injunctive Relief Pending The Court's Decision…...22

CONCLUSION……………………………………………………………………..26

# TABLE OF AUTHORITIES

## CASES

Ammex v. United States,
52 Fed. Cl. 555 (2002)……………………………………………………….…3

Banknote Corp. of Am. v. United States,
365 F.3d 1345 (Fed. Cir. 2004)…………………………………………….....8

Bannum, Inc. v. United States,
59 Fed. Cl. 241 (2003)……………………………………..……….2, 16

Bean Stuyvesant, L.L.C. v. United States,
48 Fed. Cl. 303 (2000)……………………………………………………...22

Bender Shipbuilding & Repair Co., Inc. v. United States,
297 F.3d 1358 (Fed. Cir. 2002)……………………………………………..…16

Blue & Gold Fleet, L.P. v. United States,
492 F.3d 1308 (Fed. Cir. 2007)…………………………………………....5, 6, 7

Brewer v. Purvis,
816 F. Supp. 1560 (M.D. Ga. 1993)……………………………………..20

CACI, Inc. v. United States,
719 F.2d 1567 (Fed. Cir. 1983)……………………………………………..…22

CCL Service Corp. v. United States,
48 Fed. Cl. 113 (2000)……………………………………………………...22

Chapman Law Firm, LLC v. United States,
67 Fed. Cl. 188 (2005)……………………………………………………...25

Circle K Corp. v. United States,
23 Cl. Ct. 659 (1991)…………………………………………………….2, 16

Crowley v. United States,
56 Fed. Cl. 291 (2003)……………………………………………………...…19

Drakes Bay Land Co. v. United States,
424 F.2d 574 (Ct. Cl. 1970)……………………………………………...…20

Finch v. Hughes Aircraft Corp.,
926 F.2d 1574 (Fed. Cir. 1991)……………………………………………..21

First Federal Lincoln Bank v. United States,
60 Fed. Cl. 501 (2004)…………………………………………………...…..2, 3

FMC Corp. v. United States,
3 F.3d 424 (Fed. Cir. 1993)……………………………………………………22

Four Winds Forwarding, Inc. v. United States,
13 Cl. Ct. 510 (1987)…………………………………………………………19

General Electric Co. v. United States,
189 Ct. Cl. 116, 416 F.2d 1320 (1969)……………………………………2, 4

Grumman Data Systems Corp. v. Dalton,
88 F.3d 990 (Fed. Cir. 1996)……………………………………………………8

Henderson County Drainage District No. 3 v. United States,
55 Fed. Cl. 334 (2003)………………………………………..……….…2, 18

Herbert v. United States,
36 Fed. Cl. 299 (1996)…………………………………………………………4

Impresa Construzioni Geom. Domenico Garufi v. United States,
238 F.3d 1324 (Fed. Cir. 2001)……………………………………..……..15, 21

Infrastructure Defense Technologies, LLC v. United States,
81 Fed. Cl. 375 (2008)…………………………………………………………6

John C. Grimberg Co. v. United States,
185 F.3d 1297 (Fed. Cir. 1999)……………………………………….....…14, 15

Kontrick v. Ryan,
540 U.S. 443 (2004)…………………………………………………………...20

Making Consulting Corp. v. United States,
78 Fed. Cl. 715 (2007)…………………………………………………...…22

Masai Technologies Corp. v. United States,
79 Fed. Cl. 433 (2007)…………………………………………………………8

Matthews v. United States,
73 Fed. Cl. 524 (2006)……………………………………………………….2, 5

McDonnell Douglas Corp. v. United States,
37 Ct. Cl. 285 (1997)…………………………………………………………19

Moyer v. United States,
190 F.3d 1314 (Fed. Cir. 1999)…………………………………………………..20

NVT Technologies Inc. v. United States,
370 F.3d 1153 (Fed. Cir. 2004)………………………………...……………….6

OMV Medical, Inc. v. United States,
219 F.3d 1337 (Fed. Cir. 2000)………………………………………..…..5, 7, 9

OSG Product Tankers LLC v. United States,
No. 07-561C, 2008 WL 2853234 (Fed. Cl. June 19, 2008)……………………...16

Pacific Gas & Electric Co. v. United States,
74 Fed. Cl. 779 (2006)………………………………………………………….3

PGBA, LLC v. United States,
389 F.3d 1219 (2004)…………………………………………...….…23, 25

Pinckney v. United States,
No. 06-803C, 2008 WL 2973915 (Fed. Cl. July 29, 2008)…………………….2, 4

Precision Images, LLC v. United States,
79 Fed. Cl. 598 (2007)………………………………………………………...16

Principal Mutual Life Ins. Co. v. United States,
29 Fed. Cl. 157 (1993)………………………………………..........................2

Ramcor Services Group, Inc. v. United States,
41 Fed. Cl. 264 (1998)…………………………………………...…………20

Rotech Healthcare, Inc. v. United States,
71 Fed. Cl. 393 (2006)………………………………………………………….8

Scott v. United States,
78 Fed. Cl. 151 (2007)………………………………………………………….6

Seldovia Native Association Inc. v. United States,
36 Fed. Cl. 593 (1996)………………………………………………………….2

Shirlington Limousine & Transportation, Inc. v. United States,
78 Fed. Cl. 27 (2007)……………………………………………..…..….3, 4, 15

Sierra Military Health Services, Inc. v. United States,
58 Fed. Cl. 573 (2003)………………………………………………………...23

Six v. United States,

80 Fed. Cl. 694 (2008)……………………………………………………..……….15

Southern Nevada Shell Dealers Association v. Shell Oil,
725 F. Supp. 1104 (D. Nev. 1989)……………………………………………….20

Spherix, Inc. v. United States,
62 Fed. Cl. 497 (2004)……………………………………………………………...24

Terry v. Principi,
340 F.3d 1378 (Fed. Cir. 2003)………………………………………………..…11

United Enterprise & Associates v. United States,
70 Fed. Cl. 1 (2006)…………………………………………………………...…16

U.S. National Bank of Oregon v. Independent Insurance Agents of America Inc.,
508 U.S. 439 (1993)……………………………………………………………...11

Watts-Healy Tibbitts A JV, v. United States,
No. 08-261C, 2008 WL 2973949 (Fed. Cl. July 23, 2008)………………..….4, 21

Watts-Healy Tibbits A JV v. United States,
81 Fed. Cl. 655 (2008)……………………………………………………….….4

Yuba Natural Resources, Inc. v. United States,
904 F.2d 1577 (Fed. Cir. 1990)…………………………………………………2

**ADMINISTRATIVE DECISIONS**

Advance Building Maintenance Co.,
B-176849, 1973 WL 6549 (Comp. Gen. Jan. 2, 1973)…………………………..16

Henry Spen & Co.,
B-183164, 1976 U.S. Comp. Gen. LEXIS 2960 (Jan. 27, 1976)…………...……..8

Jay Jackson & Associates,
B-271236-.3, 96-2 CPD ¶ 111 (Sept. 10, 1996)…………………..…..……..15, 16

U.S. Floors, Inc.,
B-241552, 91-1 CPD ¶ 130 (Feb. 6, 1991)……………………………………18

**STATUTES AND REGULATIONS**

5 U.S.C. § 706…………………………………………………………………..…7

28 U.S.C. § 1491(b)(4)………………………………………………………….....7

41 U.S.C. § 605……………………………………………………………………..19

31 C.F.R. § 357.0…………………………………………………………………...12

FAR Part 9.1………………………………………………………………………..15

FAR Part 28………………………………………………………………………...15

FAR § 28.203…………………………………………………………...……...passim

FAR § 28.203-1……………………………………………………….….10, 11

FAR § 28.203-1(b)(1)(i)……………………………………………………………10

FAR § 28.203-2………………………………………….…………….....passim

FAR § 28.203-2(a)……………………………………………………..…...13

FAR § 28.203-2(b)……………………………………………..……..…...5, 13, 16

FAR § 28.203-2(b)(1)(i)…………………………………………………….….9

FAR § 28.203-2(b)(2)……………………………………………………...…11, 12

FAR § 28.203-2(b)(3)……………………………………………………………12

FAR § 28.203-2(c)…………………………...……………………………………..12

FAR § 28.203-2(c)(4)………………………………………………..……..5, 13

FAR § 28.203-2(c)(7)……………………………………………………......7, 12, 14

FAR § 28.203-4……………………………………………………………16, 18, 20

FAR § 28.203-6…………………………………………………….……....11

FAR § 33.103…………………………………………………………………………19

FAR § 52.228-11……………………………………………………...……….5, 11

**SECONDARY SOURCES**

American Heritage Dictionary of the English Language (3d ed. 2006)…………………13

John Downes and Jordan Elliott Goodman, Dictionary of Fin. and Inv. Terms (5th ed. 1998)…………………………………………...…………..…………12

Webster's Third New International Dictionary (1986)………………………………..9, 13

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

| | | |
|---|---|---|
| TIP TOP CONSTRUCTION, INC. | ) | |
| | ) | |
| Plaintiff, | ) | No. 08-352C |
| | ) | (Judge Bush) |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO**
**PLAINTIFF'S MOTION FOR RECONSIDERATION**

Pursuant to the Court's August 8, 2008 order, defendant, the United States, respectfully submits its response to the motion for reconsideration filed by Tip Top Construction, Inc. ("Tip Top"). Tip Top has failed to demonstrate any grounds upon which the Court should reconsider any portion of its judgment. Tip Top has failed to demonstrate manifest injustice as required by Rule 59(a) of the Rules of the Court of Federal Claims ("RCFC"). Additionally, Tip Top cannot establish the requisite criteria for injunctive relief, and, therefore, its motion for an injunction pending the Court's decision on its motion should be denied.

## DISCUSSION

### I. Standard Of Review

Plaintiff seeks reconsideration pursuant to RCFC 59, which provides, in relevant part, that "rehearing or reconsideration may be granted to all or any of the parties and on all or part of the issues, for any of the reasons established by the rules of common law or equity applicable as between private parties in the courts of the United States." RCFC 59(a)(1).

The decision to grant or deny a motion for reconsideration lies within the sound discretion of the Court. See Yuba Natural Res., Inc. v. United States, 904 F.2d 1577, 1583 (Fed. Cir. 1990). Most courts disfavor such motions. See Gen. Elec. Co. v. United States, 189 Ct. Cl. 116, 118, 416 F.2d 1320, 1322 (1969) ("The court has a right to know before it decides whether the parties have anything further to present."). The moving party must support its motion for reconsideration by a showing of exceptional circumstances justifying relief, based on a manifest error of law or mistake in fact. Pinckney v. United States, No. 06-803C, 2008 WL 2973915, at *3 (Fed. Cl. July 29, 2008) (citing Henderson County Drainage Dist. No. 3 v. United States, 55 Fed. Cl. 334, 337 (2003); Principal Mut. Life Ins. Co. v. United States, 29 Fed. Cl. 157, 164 (1993)). "Specifically, the moving party must show: (1) the occurrence of an intervening change in the controlling law; (2) the availability of previously unavailable evidence; or (3) the necessity of allowing the motion to prevent manifest injustice." Pinckney, 2008 WL 2973915, at *3 (citing Matthews v. United States, 73 Fed. Cl. 524, 526 (2006)); First Fed. Lincoln Bank v. United States, 60 Fed. Cl. 501, 502 (2004).

The motion "is not intended to give an unhappy litigant an additional chance to sway the court." Circle K Corp. v. United States, 23 Cl. Ct. 659, 664-65 (1991); accord Seldovia Native Ass'n Inc. v. United States, 36 Fed. Cl. 593, 594 (1996). Accordingly, "the movant . . . must do more than 'merely reassert[ ] arguments which were previously made and carefully considered by the court.'" Bannum, Inc. v. United States, 59 Fed. Cl. 241, 243 (2003).

## II. Tip Top Fails To Allege Any Of The Required Grounds For Reconsideration

Contrary to RCFC 59(a)(1), Tip Top has failed to allege, much less establish, any of the factual prerequisites that must exist before this Court may consider the merits of a motion for

reconsideration – that is, "any of the reasons [for reconsideration] established by the rules of common law or equity." RCFC 59(a)(1). Tip Top fails to acknowledge that motions for reconsideration pursuant to RCFC 59 will only succeed in a narrow set of circumstances. Tip Top does not claim that an intervening change in the controlling law has occurred, that previously unavailable evidence is now available, or that the motion is necessary to prevent manifest injustice. See First Fed. Lincoln, 60 Fed. Cl. at 502. Thus, Tip Top has failed to satisfy its burden under RCFC 59(a), and, accordingly, its motion for reconsideration should be denied.

## III. Should The Court Conclude That Tip Top Intended To Assert The Possibility Of Manifest Injustice, No Such Injustice Is Evidenced By The Court's Decision

Even should the Court conclude that Tip Top impliedly asserted that the motion was necessary to prevent manifest injustice, Tip Top cannot meet the standard of "manifest injustice" to support its motion for reconsideration. "'Manifest injustice' . . . refers to injustice that is apparent to the point of being almost indisputable." Shirlington Limousine & Transp., Inc. v. United States, 78 Fed. Cl. 27, 30 (2007) (quoting Pac. Gas & Elec. Co. v. United States, 74 Fed. Cl. 779, 785 (2006)); see also Ammex v. United States, 52 Fed. Cl. 555, 557 (2002) (defining "manifest" as "clearly apparent or obvious"). Tip Top has not articulated the injustice that it faces.

As noted below, Tip Top alleges errors of law related to the Court's conclusions on the acceptability of the coal refuse asset and the contracting officer's ("CO") duty to inquire into the coal refuse assets, but fails to acknowledge that the Court presented alternate holdings to support its decisions on these issues. Opinion at 33-35, 38 n.10. Given that the Court would have denied the protest on these alternate grounds even absent the purported "errors of law," Tip Top has suffered no apparent injustice. No manifest injustice exists where the protestor's allegations

demonstrate that it will suffer no harm from the specified error of law or fact. See, e.g., Shirlington Limousine, 78 Fed. Cl. at 31. Further, requiring an offeror to contact the CO to clarify ambiguous provisions in the Federal Acquisition Regulations ("FAR") and a solicitation, as instructed by Federal Circuit precedent, does not create a manifest injustice.

Even assuming that Tip Top's claim is that the motion is necessary to prevent "manifest injustice," Tip Top has failed to demonstrate that Court made a "manifest error of law, or mistake of fact," for the reasons discussed below. As noted above, such motions are disfavored and must demonstrate "exceptional circumstances." See Gen. Elec. Co., 189 Ct. Cl. at 118, 416 F.2d at 1322; Pinckney, 2008 WL 2973915, at *3. In fact, in the only decision cited by Tip Top, Watts-Healy Tibbitts A JV, v. United States, No. 08-261C, 2008 WL 2973949 (Fed. Cl. July 23, 2008), the Court only granted reconsideration to consider new facts discovered by the protestor and specifically rejected the protestor's additional requests, similar to Tip Top's, for reconsideration of arguments previously made and matters already considered by the Court in its earlier opinion. Watts-Healy, 2008 WL 2973949, at *2; Watts-Healy Tibbits A JV v. United States, 81 Fed. Cl. 655, 656, 658-59 (2008).

## IV. The Court's Determination Regarding The Unacceptability Of Coal Contained No Errors Of Law And Cannot Result In Manifest Injustice

Tip Top attempts to relitigate its claims by asserting that the Court's consideration of the inability to meet the FAR's requirements of an escrow account using coal as an asset "resulted in the disregard of the CO's stated rationale" for rejection of the coal asset and Tip Top's bid bond. Mot. for Recon. at 6. Any "attempts to litigate an issue on which the court has previously ruled cannot be tolerated." Herbert v. United States, 36 Fed. Cl. 299, 313 n.8 (1996).

Tip Top has demonstrated no manifest injustice, given that the Court also rejected its protest based on the alternate holding that Tip Top failed to seek clarification of the FAR prior to bidding. Further, even if the Court erred, Tip Top's protest would have failed because it suffered no prejudice as a result of the CO's decision on the unacceptability of coal.

In addition, as explained below, the Court's consideration of the escrow account requirements, which the CO did not discuss in her February 19, 2008 letter, was not at odds with the instructions of OMV Medical, Inc. v. United States, 219 F.3d 1337 (Fed. Cir. 2000), concerning review of CO decisions. Even if the Court were to conclude that it made an error of law, the unacceptability of coal is clear.

### A. Given The Court's Alternate Holding Regarding Patent Ambiguities, Tip Top Can Demonstrate No Manifest Injustice Resulting From The Purported Errors Of Law

Tip Top's concerns with the Court's consideration of the escrow account issue do not affect the Court's alternate holding that it could not consider Tip Top's interpretation of "acceptable assets" because of the offeror's failure to seek clarification of the FAR prior to bidding.[1] See, e.g., Matthews, 73 Fed. Cl. at 526. The Court concluded that "the ambiguities in the solicitation, the SF 28, and the FAR were so apparent that Tip Top had a duty to ask for clarification before bidding." Opinion at 34 (citing Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308, 1313 (Fed. Cir. 2007)). The Solicitation incorporated by reference FAR § 52.228-11, which required "[e]vidence of an escrow account containing cash, certificates of deposit, commercial or Government securities, or other assets described in FAR § 28.203-2." AR 37. As

[1] We do not concede that Tip Top's interpretation of the regulations to allow the pledge of assets other than the personal property listed at sections (1), (2), (3), and (5) of FAR § 28.203-2(b) is reasonable. Analyzing the whole regulation in context, including FAR § 28.203-2(c)(4), demonstrates that the personal property listed in these sections is the only acceptable personal property.

noted by the Court, Tip Top's failure to seek clarification regarding which assets would be acceptable precluded the Court's "acceptance of its interpretation in a subsequent action against the government." Opinion at 35 (citing Blue & Gold, 492 F.3d at 1313); see also Opinion at 34 (citing NVT Techs. Inc. v. United States, 370 F.3d 1153, 1162 (Fed. Cir. 2004)). A protestor who has the opportunity to object to a solicitation containing a patent ambiguity and "fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims." Blue & Gold, 492 F.3d at 1313. "Thus, a protest challenging the terms of a government solicitation containing a patent error may never be waged post-award," and a protestor attempting to bring such an action lacks standing. Scott v. United States, 78 Fed. Cl. 151, 154 n. 2 (2007); see also Infrastructure Def. Techs., LLC v. United States, 81 Fed. Cl. 375, 389 (2008).

The Court, therefore, could not accept Tip Top's interpretation of FAR § 28.203-2 as allowing coal to be pledged and accepted by a CO. Accordingly, any possible error of law in the Court's conclusion about the acceptability of the coal refuse asset would not create "manifest injustice," given the Court's alternate holding that it was precluded from considering Tip Top's interpretation of FAR §§ 28.203 and 28.203-2 and, therefore, had to accept the CO's interpretation. Indeed, the Court could have also determined that Tip Top lacked standing to bring a protest challenging a patent ambiguity.

While Tip Top mentions the Court's holding on patent ambiguities in a footnote, it claims only that the Court's conclusion "is not supported by the record or the realities of government contracting." Mot. for Recon. at 9 n.3. Tip Top does not address its failure to comply with the clear requirement in Federal Circuit precedent that it seek clarification, regardless of its opinion

on the futility of this action. Blue & Gold, 492 F.3d at 1313. Amazingly, Tip Top also claims that ambiguities in the FAR and the Solicitation identified by the Court are matters of responsibility that "can be resolved after bid submission," contrary to the reasoning of Blue & Gold and decisions applying it. Mot. for Recon. at 9 n.3. Tip Top fails to indicate any manifest error in the Court's conclusions regarding patent ambiguities.

### B. The Court's De Novo Review Of A Legal Question Is Not At Odds With The Federal Circuit's Decision In OMV Medical

Tip Top asserts that the Court's consideration of the escrow account issue "resulted in the disregard of the CO's stated rationale" for rejection of the coal asset and Tip Top's bid bond, in contravention of the requirements of the Federal Circuit's decision in OMV Medical, 219 F.3d 1337 (Fed. Cir. 2000). Mot. for Recon. at 6. Tip Top argues that the CO's statement in the February 19, 2008 letter to Tip Top that the coal asset was "speculative" under FAR § 28.203-2(c)(7) precludes the Court's consideration of FAR's escrow account requirements. Mot. for Recon. at 6-7. Tip Top fails to recognize, however, that the Court's determination involved its exercise of its de novo review of legal questions, in which the Court does not adhere to the CO's rationale.

First, as we discussed at oral argument, the correct interpretation of FAR § 28.203 and the acceptability of coal under this section are legal questions, which the Court reviews de novo. Under the Administrative Procedures Act ("APA") standards of 5 U.S.C. § 706, incorporated by 28 U.S.C. § 1491(b)(4), the "reviewing court shall decide all relevant questions of law." The Court was not bound to the explanations provided by the CO in determining this legal questions and could consider all sections of the FAR and other information to determine whether coal was

an acceptable asset.[2] H'g Tr. at 44:2-12, 51:22-52:8 (July 3, 2008). "It is well settled that the task of construing the terms of a government solicitation essentially involves contract interpretation, and therefore presents issues of law to be determined by the court." Rotech Healthcare, Inc. v. United States, 71 Fed. Cl. 393, 424 (2006) (citations omitted). In evaluating an agency's interpretation of a solicitation's terms and the FAR, the Court "does not inquire as to whether that interpretation was reasonable," but instead construes these terms de novo. Masai Techs. Corp. v. United States, 79 Fed. Cl. 433, 443 (2007). Examining the requirements of the FAR, the Court conducted its own "interpretation of the provisions of FAR 28.203 and related sections" and concluded that the coal asset was unacceptable for a reason not specifically identified in the CO's February 19, 2008 letter[3] – that an escrow account is legally necessary under FAR § 28.203 to create an acceptable asset. Opinion at 31. Emphasizing its de novo review in interpreting solicitations and FAR sections, the Court cited Banknote Corp. of America v. United States, 365 F.3d 1345 (Fed. Cir. 2004), and Grumman Data Systems Corp. v. Dalton, 88 F.3d 990 (Fed. Cir. 1996), which analyze legal interpretations made by the Court. Opinion at 33. The Court concluded that the CO's determination was rational because, "when read together,

---

[2] Tip Top did not address the Government's argument at the hearing, apparently conceding that the Court makes a de novo review of this question.

[3] Although the Court's opinion rejected this argument, we note that the CO's responsibility determination is not final until award, and, therefore, the CO can consider information brought to her attention after her initial finding of nonresponsibility but prior to award. Henry Spen & Co., B-183164, 1976 U.S. Comp. Gen. LEXIS 2960 (Jan. 27, 1976). Thus, information provided to the agency during the GAO protest should be considered a basis for the CO's determination. Furthermore, the CO's statement before the GAO is not considered to be a post hoc rationalization, but an explanation of facts at the time of her decision and should be considered by the Court.

the pertinent FAR provisions in the final analysis support the CO's final determination that Tip Top's proffered coal asset was unacceptable."[4] Opinion at 30-31.

The fact that the CO did not identify the impossibility of placing coal in an escrow account as a relevant factor is, therefore, irrelevant to the determination of the legal question regarding the acceptability of coal. OMV Medical is inapplicable in this situation. In OMV Medical, the question before the Court was the factual correctness of a mathematical calculation that might well change the outcome of the CO's decision. OMV Medical, 219 F.3d at 1343-44 (noting that the Court could not disregard a flaw in the calculation because the agency could have chosen to rely on another calculation). Thus, OMV Medical considered a question of fact, where here the question was whether the CO's decision that the bid bond was unacceptable under FAR § 28.203 was correct as a matter of law.

### C. The Court Should Disregard Tip Top's Criticism Of Its Legal Conclusion Regarding The Requirement Of An Escrow Account

Tip Top urges the Court to reconsider its conclusion that FAR § 28.203 and other FAR sections require an escrow account and claims, yet again, that the use of the term "funds" in FAR § 28.203-1(b)(1)(i) indicates that the escrow account requirements only apply to cash assets.[5]

---

[4] The Court's decision did not substitute the GAO's judgment for that of the Court, as claimed by Tip Top, but, like the GAO, considered the glaring inability to place coal in the escrow account required by the FAR for acceptable assets. Mot. for Recon. at 7.

[5] Central to Tip Top's argument is the assertion that "[t]he regulation as written shows that the minimum 'escrow account' requirements are for cash assets – 'funds' that can be deposited and withdrawn." Mot. for Recon. at 7; Compl. at 13; Mot. for J. at 25. This is patently incorrect. The term "funds" is used in the context of "assets acceptable under 28.203-2." "Funds" is defined as "available pecuniary resources ordinarily including cash and negotiable paper that can be converted to cash at any time without loss," and, therefore, includes all of the assets in FAR § 28.203-2(b) that are not real estate. Webster's Third New Int'l Dictionary (1986). The acceptable assets are cash, cash equivalents, securities, and irrevocable letters of credit. (The only asset not in the class of "funds" is real estate, which is treated separately in

Mot. for Recon. at 7-8. Tip Top merely repeats arguments made in its briefs and already considered and rejected by the Court. Pl. Mot. for J. at 25; Compl. at 13. The Court considered the entirety of FAR § 28.203-1, Opinion at 29-30, and ultimately determined that it "disagrees with Tip Top's contentions and finds that the solicitation and FAR provisions, when read harmoniously, are reasonably construed to require the surety to provide an asset (other than real estate) which could be placed into an escrow account." Opinion at 32-33. The term "funds" in FAR § 28.203-1(b)(1)(i) is used in the context of "assets acceptable under 28.203-2," as described in the other sections of FAR § 28.203-1, including subsections (a) and (b)(1) itself:

> 28.203-1 Security interests by an individual surety.
>
> (a) An individual surety may be accepted only if a security interest in assets acceptable under 28.203-2 is provided to the Government by the individual surety. The security interest shall be furnished with the bond.
>
> (b) The value at which the contracting officer accepts the assets pledged must be equal to or greater than the aggregate penal amounts of the bonds required by the solicitation and may be provided by one or a combination of the following methods:
>
> (1) An escrow account with a federally insured financial institution in the name of the contracting agency. (See 28.203-2(b)(2) with respect to Government securities in book entry form.) Acceptable securities for deposit in escrow are discussed in 28.203-2. While the offeror is responsible for establishing the escrow account, the terms and conditions must be acceptable to the contracting officer. At a minimum, the escrow account shall provide for the following:
>
> (i) The account must provide the contracting officer the sole and unrestricted right to draw upon all or any part of the funds deposited in the account.

---

block 7 of the SF 28.) Thus, not only can coal refuse not be placed in an escrow account, it is not in the class of personalty known as "funds."

The Court, by reviewing all relevant FAR sections explaining escrow account requirements, including FAR §§ 28.203, 28.203-1, 28.203-2, 28.203-6, and 52.228-11 and SF 28, conducted the necessary interpretation of FAR § 28.203-1 using the statutory language and its plain meaning from its text, structure, and purpose. U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am. Inc., 508 U.S. 439, 455 (1993). The Supreme Court has emphasized that, "in expounding a statute, [the Court] must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." Id. (emphasis added); see also Terry v. Principi, 340 F.3d 1378, 1385 (Fed. Cir. 2003) (explaining that, "when we construe a statute, we do so in the setting of the statutory scheme of which it is a part").

Tip Top also resurrects its argument, already considered by the Court, that the fact that FAR § 28.203-2(b)(2) does not require an escrow account for Government securities demonstrates that FAR § 28.203-1's escrow account requirements do not apply to acceptable assets other than cash. Mot. for Recon. at 7. Tip Top's argument, again, is nonsensical. The specific exemption from the escrow requirement would not be necessary if, as Tip Top argues, Government securities were implicitly exempt as non-cash assets. Gov't Mot. for J. at 30-31. Tip Top also makes a new argument, not made in its briefs, that the Government securities are exempted from the escrow requirements "because they require the securities to be sold first and converted to funds which are then deposited in an escrow account and available for withdrawal." Mot. for Recon. at 7. Aside from the untimeliness of this argument, Tip Top has cited no authority for this statement, which is clearly at odds with the language of FAR § 28.203-2(b)(2). Instead, FAR § 28.203-2(b)(2) allows Government securities, unlike other acceptable assets, to be held in book entry form at a depository institution so long as the individual surety, among

other things, "provide[s] evidence that the depository institution has . . . [a]greed to notify the agency prior to maturity of the security[.]"[6] FAR § 28.203-2(b)(2). If the Government securities had to be sold first and converted to funds, as Tip Top asserts, they would not be able to reach maturity while being held by the depository institution. The Court should, therefore, reject Tip Top's rehashed arguments and improperly-asserted new assertions as unfounded and an inappropriate basis for a motion for reconsideration.

**D. The Court's Decision Focused On The CO's Conclusion Regarding FAR § 28.203, Rather Than Considerations Included In This Determination**

Even should the Court agree with Tip Top's assertions that it erred in conducting a de novo review and considering the FAR's escrow account requirements, the Court would not have been limited to the CO's statement that coal was a "speculative asset" in her February 19, 2008 letter. Tip Top mischaracterizes the Court's determinations when it claims that the Court found that

> [t]he natural reading of the letter . . . is that the CO was attempting to explain to Tip Top the FHWA's specific reason for rejecting the surety's bid bond . . . stated in the last three sentences [of the first paragraph] which deal only with FAR § 28.203-2, was that the 'marketable coal' was 'specifically excluded' as a 'speculative asset' in FAR § 28.203-2(c)(7).

Mot. for Recon. at 6 (emphasis omitted). In fact, only the fifth and final sentence of the first paragraph discusses FAR § 28.203-2(c), while the second, third, and fourth discuss the

[6] All United States Government securities are issued in "book entry" form, meaning that they are not represented by a certificate. See John Downes & Jordan Elliott Goodman, Dictionary of Fin. And Inv. Terms 62 (1998); 31 C.F.R. § 357.0 (2008); http://www.treasurydirect.gov/instit/research/faqs/faqs_basics.htm. The obvious reason for not placing Government securities held in book entry form in an escrow account is that, unlike other acceptable securities, which must exist physically in certificate form, see FAR § 28.203-2(b)(3) (requiring "certificates issued in the name of the individual surety"), they do not exist in physical form and, therefore, cannot physically be held in escrow. Hence, the FAR's drafters included specific instructions in subsections (i) through (iii) of FAR § 28.203-2(b) to allow a pledge of Government securities without an escrow account, but with comparable safeguards.

requirements of FAR § 28.203, FAR § 28.203-2(a), and FAR § 28.203-2(b), respectively. AR 233. Furthermore, while Tip Top claims that this statement is the only portion of the CO's explanation that the Court may examine, the Court concluded that

> the CO rejected Tip Top's coal asset on two grounds: (1) that the asset "does not meet the requirements of the Federal Acquisition Regulations (FAR) for an Individual Surety at Section 28.203. . . . Acceptable assets include cash, United States Government securities, stocks and bonds that are actively traded, real property owned in fee simple, and irrevocable letters of credit" and, (2) that the coal asset is a "speculative asset," which is specifically excluded by Subsection 28.203-2(c)(7).

Opinion at 16 (quoting AR 233) (emphasis added). Tip Top's quibble with the Court's reading of this letter is an insufficient ground upon which to demand reconsideration.

Regardless, the CO, exercising business judgment, could reasonably conclude that the coal pile was the type of personal property that was unacceptable under FAR §§ 28.203 and 28.203-2(b).[7] AR 233. At the time of the February 19, 2008 decision, the pledge of assets involved unverified, un-assayed coal described as being located on acreage defined solely by a mining permit. Given this information, the CO reasonably characterized the asset as "speculative" – that is, "involving chance" and "risky," Am. Heritage Dictionary of the English Language (3d ed. 2006), and having a value "not established by demonstration," Webster's Third Int'l Dictionary (1986) – which prevented them from being readily marketable.

[7] We noted in our prior briefing that FAR § 28.203-2(c)(4) provides guidance about does provide guidance about the limits on the types of acceptable personal property under FAR § 28.203-2. Gov't Mot. for J. at 15; Gov't Reply at 20. Although the Court's opinion did not examine this argument, FAR § 28.203-2(c)(4) identifies as unacceptable "Personal property other than that listed in paragraph (b) of this subsection."

### E. The Lack Of Prejudice To Tip Top From The CO's Conclusions Also Precludes A Finding Of Any Injustice

The Court did not reach the question of prejudice because it determined that Tip Top failed on the merits of its bid protest. Opinion at 40. Should the Court determine that it erred in considering the escrow account requirements and that the CO's decision on unacceptability and characterization of the coal as "speculative" were irrational, any error by the CO was not prejudicial for the reasons noted by the Court: "the coal asset offered by Tip Top was not an acceptable asset because, as acknowledged by the protestor, coal cannot be placed into an escrow account, as required by the terms of the solicitation and controlling FAR provisions." Opinion at 33; see also Gov't Mot. for J. at 27-31 (discussing lack of prejudice due to failure to comply with escrow account requirements). Because the pledged asset was unacceptable, Tip Top thus cannot demonstrate manifest injustice or provide a reason for the Court to overturn its decision to deny the protest.

## IV. The Court's Conclusion That The CO Had No Duty To Inquire Into The Coal Refuse Asset Demonstrates No Error Of Law And Results In No Manifest Injustice

### A. The Court Should Reject Tip Top's Criticisms Of The Court's Conclusions And Assertion Of Arguments That It Could Have, But Did Not, Make

Tip Top appears to assert that the Court made an error of law in determining that the Federal Circuit's guidance in John C. Grimberg Co. v. United States, 185 F.3d 1297 (Fed. Cir. 1999), applied to the CO's decision and, therefore, that the CO was not obligated to request additional information about the coal refuse asset. Mot. for Recon. at 4-6; Opinion at 20-21, 36-38. In support of this position, Tip Top makes arguments attempting to limit the Federal Circuit's holding in Grimberg and refute factual distinctions between this case and earlier GAO decisions inconsistent with Grimberg that it could have, but did not, make in its earlier briefs.

Mot. for Recon. at 4-5. Our briefs discussed Grimberg and its application to FAR Part 28, asserted the inapplicability of GAO recommendations cited by Tip Top, and outlined the factual distinction between this case and Jay Jackson & Associates, B-271236-.3, 96-2 CPD ¶ 111 (Sept. 10, 1996), discussed by the Court in its opinion. Gov't Mot. for. J. at 19-21; Gov't Reply at 22-25. When a movant "had ample opportunity to raise these arguments in his previous motions," but failed to do so, the Court must reject a motion for reconsideration. Six v. United States, 80 Fed. Cl. 694, 698 (2008); see also Shirlington Limousine, 78 Fed. Cl. at 31 ("Motions pursuant to RCFC 59 'are not to be used as relief because an unhappy party failed to urge a theory which it could have raised in original proceedings.'").

Should the Court consider Tip Top's new arguments, Tip Top's assertion that the Federal Circuit would now rethink its conclusions in Grimberg ignores this Court's responsibility to follow the precedent that actually exists, not a hypothetical change in the Federal Circuit's views. In arguing that "the Federal Circuit would likely follow the GAO's different requirements for an individual surety's financial responsibility under FAR § 28.203," Tip Top ignores the Court's conclusion that Grimberg presented a "general standard for responsibility" applicable to both FAR Part 9.1 and Part 28. Opinion at 21. As noted by the Court, Tip Top's briefs "cite[d] no authority as to why the responsibility standard cited in FAR Part 9.1 and Grimberg is not applicable to all responsibility determinations, including those in FAR Part 28." Opinion at 21. In addition, a number of other Federal Circuit and Court of Federal Claims decisions have followed Grimberg's lead, holding that contracting officers have wide discretion in determining the amount of information that is required to make a responsibility determination, Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1334-45 (Fed. Cir.

2001); Bender Shipbuilding & Repair Co., Inc. v. United States, 297 F.3d 1358, 1362 (Fed. Cir. 2002); United Enter. & Assocs. v. United States, 70 Fed. Cl. 1, 29 (2006), and need not request additional information. OSG Prod. Tankers LLC v. United States, No. 07-561C, 2008 WL 2853234, at *5 (Fed. Cl. June 19, 2008).

The Court should also reject Tip Top's criticism of the Court's analysis of factual distinctions between this case and Jay Jackson & Associates, B-271236-.3, 96-2 CPD ¶ 111 (Sept. 10, 1996). Mot. for Recon. at 5. Tip Top argues for the first time that "[n]o authority has been cited to limit FAR § 28.203-4 to situations where the unacceptable asset could arguably have been one of the five types of acceptable assets listed in FAR § 28.203-2(b)." Tip Top Mot. for Recon. at 5. The Court's clear explanation, however, pointed out the distinctions between the GAO decisions cited by Tip Top and a case, like the present one, in which no additional information was needed to reach a conclusion about the asset's acceptability. Tip Top simply seeks through this argument to grasp "an additional chance to sway the court" by reasserting the precedential value of pre-1990 GAO decisions in a manner at odds with the purposes of motions for reconsideration. Circle K Corp., 23 Cl. Ct. at 664-65. Tip Top improperly repeats arguments made in its earlier briefs regarding the applicability of two GAO decisions, Jay Jackson, B-271236-.3, 96-2 CPD ¶ 111 (Sept. 10, 1996), and Advance Building Maintenance Co., B-176849, 1973 WL 6549 (Comp. Gen. Jan. 2, 1973). See Pl. Mot. for J. at 18-19. The Court thoroughly reviewed Tip Top's arguments related to Jay Jackson and Advance and, thus, should not reconsider them. Bannum, 59 Fed. Cl. at 243. Tip Top continues to overstate the importance of GAO recommendations, which, while possibly instructive, are not binding upon this Court. Precision Images, LLC v. United States, 79 Fed. Cl. 598, 619 n.40 (2007).

**B. The Court's Alternate Holding Precludes Any Injustice Resulting From The Purported Errors Of Law**

Furthermore, as noted above, the Court concluded that, even if it "were to agree with Tip Top's contention that the CO's failure to ask for more information amounted to an abuse of discretion, such an error would be deemed to have been harmless error." Opinion at 38 n.10. The CO's decision that coal was unacceptable under the FAR was rational, and "additional inquiry into the specifics of the proffered coal asset would have been futile." Id. Tip Top fails to address this alternate holding. The Court would have rejected Tip Top's arguments on the duty to investigate the asset on these alternate grounds even absent the purported "errors of law," and, therefore, Tip Top has suffered no apparent injustice.

**C. Tip Top Has Not Demonstrated Prejudice, Precluding A Finding Of Injustice**

Should the Court determine that it erred in finding no duty to inquire into the coal asset, any error by the CO was not prejudicial. As discussed above, the asset was not acceptable, and further inquiry would not have convinced the CO of its acceptability. Tip Top fails to show any manifest injustice or reason for the Court to uphold its protest.

**VI. The Court Did Not Misinterpret Facts Related To The CO's Rejection Of A Possible Substitution Of Assets Suggested By Mr. Hollins**

**A. Tip Top Reasserts Arguments Already Made And Considered By The Court**

Tip Top seeks a second attempt at challenging the CO's rejection of Mr. Hollins's statement that Mr. Scarborough had other assets, referring again to Mr. Hollins's June 27, 2008 supplemental declaration. Mot. for Recon. at 3-4. Tip Top does not present new evidence, but apparently asserts that the Court made a mistake in fact in considering this declaration. The Court, however, considered these arguments and Mr. Hollins's supplemental declaration at

length in its opinion. Opinion at 39. The Court concluded that the CO's decision did not "violate applicable FAR provisions" and "fell within the parameters of rationality under the controlling regulations and survived the standard of judicial review applicable in bid protests." Opinion at 40 and 40 n.11. Tip Top cannot seek reconsideration "by merely reasserting arguments which were previously made and were carefully considered by the court." Henderson County Drainage Dist. No. 3, 55 Fed. Cl. at 337.

**B. Tip Top Suffered No Prejudice As A Result Of The CO's Decision Not To Allow A Substitution Of Assets**

Even if the Court were to determine that it erred in considering Mr. Hollins's supplemental declaration, any alleged error in the CO's action was not prejudicial. Tip Top could only have been prejudiced by such error had Mr. Scarborough made a legal offer by creating the power of acceptance of a substitute, as the Court concluded was required by FAR § 28.203-4. Opinion at 39. The possibility that Mr. Scarborough was willing to provide a substitute asset is not the same as an offer of a substitute for acceptance. The Court determined that "FAR 28.203-4 requires that any request for substitution of assets be submitted to the contracting officer in writing, by the individual surety. That did not happen in this case." Opinion at 39 (emphasis added).

Tip Top argues that the Court's reading of FAR § 28.203-4 is flawed and that the section, despite its clear language, allows a request from someone other than the individual surety. Mot. for Recon. at 3. U.S. Floors, Inc., with which Tip Top attempts to buttress this assertion, does not, in fact, support this claim, as it involves a proper written request by an individual surety for permission to substitute assets. B-241552, 91-1 CPD ¶ 130 (Feb. 6, 1991). Further, Tip Top's argument that a proper request would have been futile and that "[t]he law does not require

contractors to engage in useless, futile acts" is one that it could have, but did not, make in its briefs prior to the Court's decision. Mot. for Recon. at 4. The Court, therefore, should not consider this untimely argument.

In any event, any belief that following requirements for a written request would be futile is unfounded, as Tip Top fails to acknowledge that it could have brought an agency protest under FAR § 33.103. Tip Top's counsel clearly did not believe that a request for substitution was futile, since he made such a request to the FHWA's counsel on April 11, 2008. AR 564. Indeed, this communication from Tip Top's counsel does not evidence an understanding at that time that his client had made any prior request and that such request had been rejected. The court decisions that Tip Top cites are also distinguishable, as these decisions are based on different situations and do not involve a determination, like that which Tip Top claims Mr. Scarborough made, not to follow clear regulatory requirements because of the futility of complying with such requirements. Instead, the Court considered the argument that the plaintiff's failure to exhaust all available administrative remedies did not preclude new claims brought in the Court of Federal Claims if following the administrative processes would have been futile. Crowley v. United States, 56 Fed. Cl. 291, 297 (2003); Four Winds Forwarding, Inc. v. United States, 13 Cl. Ct. 510, 513 (1987). In another case cited by Tip Top, the Court interpreted the requirements of 41 U.S.C. § 605 for a claim ripe for consideration in a situation in which settlement efforts were futile. McDonnell Douglas Corp. v. United States, 37 Ct. Cl. 285, 291, 292 n.11 (1997). In the final case cited by Tip Top, the Court stated in dicta that the plaintiff land developer reasonably believed that requesting a variance from county road standards for a housing subdivision would

be futile because of pressure exerted on the County Board of Supervisors to prevent subdivision of land. Drakes Bay Land Co. v. United States, 424 F.2d 574, 577 (Ct. Cl. 1970).

Tip Top, therefore, fails to demonstrate any manifest injustice or reason for the Court to uphold its protest.

### C. Any Arguments By Tip Top Related To Mr. Hollins's June 27, 2008 Declaration Were Untimely

In any event, the information in Mr. Hollins's supplemental declaration, dated June 27, 2008, was not presented in Tip Top's complaint or any briefing on its motion for judgment on the administrative record. Tip Top filed the supplemental declaration as an exhibit to a motion to strike filed ten days after its reply brief. Tip Top had the non-responsibility determination since February 19, 2008 and filed its complaint on May 15, 2008. If Tip Top believed that the record before the Court was insufficient without the information in Mr. Hollins's supplemental declaration, it is unclear why Tip Top did not attempt to provide the supplemental declaration in its May 21, 2008 motion to supplement the administrative record or, at a minimum, at some reasonable point in this litigation before the parties had fully briefed the issues.[8]

Tip Top thus failed to respond in a timely fashion to the arguments related to FAR § 28.203-4, and any argument related to the supplemental declaration is thus waived. See Brewer v. Purvis, 816 F. Supp. 1560, 1579 (M.D. Ga. 1993) ("Summary judgment is appropriate since Plaintiff failed to respond to [defendant's] argument on this issue.") (citation omitted), aff'd, 44 F.3d 1008 (11th Cir. 1995); S. Nevada Shell Dealers Ass'n v. Shell Oil, 725 F. Supp.

[8] While the Government attached additional materials to its reply brief, we sought not to supplement the administrative record, but only to alert the Court to a possible lack of subject matter jurisdiction, an issue that may be raised at any time in the proceedings. Kontrick v. Ryan, 540 U.S. 443, 444 (2004); Ramcor Servs. Group, Inc. v. United States, 41 Fed. Cl. 264, 272 (1998). To determine whether it had jurisdiction, the Court could consider any "relevant evidence." Moyer v. United States, 190 F.3d 1314, 1318 (Fed. Cir. 1999).

1104, 1109 (D. Nev. 1989) ("The plaintiffs, by failing to respond to [defendant's] argument in their opposition paper, have implicitly conceded that . . . [defendant's argument] . . precludes liability."); cf. Finch v. Hughes Aircraft Corp., 926 F.2d 1574, 1576-77 (Fed. Cir. 1991) (holding that plaintiff could not raise argument on appeal that trial court erred in dismissing its complaint because it did not respond to the motion to dismiss).

In addition, Tip Top's request that the Court order the CO or Mr. Hollins to testify regarding the telephone conversation is unsupported and untimely. Again, if Tip Top believed that it was necessary to depose the CO to inquire about this telephone conversation or seek testimony from the CO or Mr. Hollins, it is unclear why Tip Top did not request the deposition of the CO upon this basis or request testimony in its May 21, 2008 motion to supplement the administrative record. At this point, this bid protest action has been pending for nearly three months. The parties have fully briefed their cross-motions for judgment upon the administrative record. There is no reason to order testimony of the CO or Mr. Hollins at this late date. In support of its request, Tip Top cites only the Court's opinion in Watts-Healy, which, as noted above, is distinguishable because, after granting a motion for reconsideration on the basis of new evidence, the Court ordered the contracting officer to appear to testify regarding the "new facts." Even if the Court believed that Watts-Healy had some applicability here, Tip Top has alleged no "new facts."

Regardless, Tip Top has completely failed to demonstrate that testimony by the CO is warranted. In Impresa, the Federal Circuit held that "discovery of the contracting officer's reasoning is not lightly to be ordered and should not be ordered unless record evidence raises serious questions as to the rationality of the contracting officer's responsibility determination."

238 F.3d at 1341. Tip Top's assertions do not raise "serious questions" that the CO's decision was irrational, particularly given the lack of prejudice.

### D. The CO's Decision Not To Accept A Suggested Substitution Was Rational

In any event, the only relevant inquiry is whether the CO considered the relevant factors and whether her decision was "within the bounds of reasoned decisionmaking." Making Consulting Corp. v. United States, 78 Fed. Cl. 715, 722 (2007) (internal citations omitted). The CO's determination not to consider a substitution of assets was rational.

## VII. Tip Top Is Not Entitled To Injunctive Relief Pending The Court's Decision

Tip Top has requested that the Court enjoin construction of the roundabout pending its decision on the motion for reconsideration. Injunctive relief is appropriate "only in extremely limited circumstances." CCL Serv. Corp. v. United States, 48 Fed. Cl. 113, 120 (2000) (quoting CACI, Inc. v. United States, 719 F.2d 1567, 1581 (Fed. Cir. 1983)). To obtain an injunction, Tip Top must carry the burden of establishing entitlement to this extraordinary relief based upon the following factors: (1) actual success on the merits; (2) that Tip Top will suffer irreparable injury if injunctive relief is not granted; (3) that, if the injunction is not granted, the harm to Tip Top will outweigh the harm to the Government and third parties; and (4) that granting the injunction serves the public interest. Bean Stuyvesant, L.L.C. v. United States, 48 Fed. Cl. 303, 320-21 (2000). The decision whether to grant an injunction is within the sound discretion of the trial court. FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993).

As demonstrated above, Tip Top has not alleged and cannot establish that reconsideration is required to prevent manifest injustice and, furthermore, has not shown a manifest error of law or mistake in fact. Even if Tip Top were likely to demonstrate entitlement to reconsideration, it

has not demonstrated that it will suffer irreparable harm outweighing the harm to the Government and third parties should construction begin during the Court's consideration of the motion. PGBA, LLC v. United States, 389 F.3d 1219, 1228-29 (2004). Tip Top has not provided any evidence that it will suffer irreparable harm at this time, as it bases its claim solely on "Tip Top's irreparable harm cited in its pleadings and exhibits." Mot. for Recon. at 10. The irreparable harm discussed in the complaint and subsequent pleadings was based on a May 8, 2008 affidavit by Tip Top's president, Mr. Hollins, claiming that the work that key personnel were "temporarily performing in St. Thomas will run out in less than 30-60 days and they will be likely to return to their homes in locations other than St. Thomas and take other work." Compl. Ex 24, ¶ 2. In its May 15, 2008 complaint and in its motion for judgment, Tip Top relied upon this affidavit to assert that its "ability to retain key personnel" would be jeopardized without an injunction and that "extensive post-award activities" would be required to replace these personnel. Pl. Mot. for J. at 29; Compl. ¶ 70. Given that over 90 days have passed since Mr. Hollins signed his declaration, Tip Top has presented no evidence that it faces the same risk of the loss of "key personnel." Applying Mr. Hollins' stated rationale, the "key personnel" who were "likely" to leave the Virgin Islands for other work within 30 to 60 days probably already have. Thus, should the Court grant the motion for reconsideration, the "post-award activities" to hire construction workers would still be required. In any event, this Court has concluded that loss of employees does not constitute irreparable harm. Sierra Military Health Servs., Inc. v. United States, 58 Fed. Cl. 573, 582 (2003).

Tip Top's arguments also assume that FHWA would immediately award it the contract, should the Court grant the motion for reconsideration. This outcome is unlikely, since, were the

Court to conclude that the asset is acceptable and order FHWA to reconsider Tip Top's bid, the agency would still be required to comply with additional procedures required by the FAR for review of a bid. The determination that the asset was unacceptable obviated the need to continue fruitlessly through these steps. The additional determinations include a consideration of Tip Top's responsibility under FAR Part 9, including the concerns as to the number of days bid, and responsibility concerns related to its individual surety discussed in our briefs. See Gov't Mot. for J. at 4, 22-32, 39; Gov't Reply at 28.

Tip Top's only remaining allegation of irreparable harm was the loss of profits. In its complaint, Tip Top claimed that unless the preliminary injunction was granted to "prevent the current awardee from starting and completing performance under the contract under protest, Tip Top will lose substantial anticipated profits." Compl. Ex. 24, ¶ 2; see also id. ¶ 72. However, the motion for reconsideration does not seek to enjoin permanently the awardee's performance, but only during the pendency of Tip Top's motion. Tip Top has not alleged that it would lose profits during this short period. Regardless, economic loss, without more, does not rise to the level of irreparable injury. Spherix, Inc. v. United States, 62 Fed. Cl. 497, 506 (2004).

Given that Tip Top has failed to allege irreparable harm at this time, the balance of harms tips in the favor of the Government and third parties, like the awardee, Island Roads Corp. ("IRC"). Even should the Court conclude that Tip Top has demonstrated irreparable harm, IRC, which has demolished a retaining wall in front of a school adjacent to the construction site and has begun moving field trailers, equipment, and supplies onto the site and installing traffic control devices, will be harmed by the requirement that it halt these activities. See Declaration of Thomas J. Scott, ¶¶ 5, 7, attached as Exhibit A. Further, the Court should consider the likely

harm to the public, if improvement of a dangerous intersection in St. John is further delayed and the schedule for the busing of school children is disrupted by alterations in the construction schedule set by IRC. See id. ¶ 6. In addition, harm to the public and schoolchildren could result from an injunction should construction be halted while a retaining wall in front of the school is missing, a new retaining wall has not been completed, and debris from the old retaining wall has not yet been removed. See id. ¶ 7. Students will return to school on August 25, 2008, not in September as Tip Top assumes. See id. ¶ 2 & Attachment 3.

In PGBA, 389 F.3d at 1232, the Federal Circuit concluded that the trial court did not err in denying injunctive relief based on the potential harm to the public, including a substantial risk of disruption in the processing of health care benefits and high risk of confusion of beneficiaries and health care providers. In Chapman Law Firm, LLC v. United States, 67 Fed. Cl. 188, 193-94 (2005), the Court also denied an injunction when it considered that Government properties, lacking proper management during an injunction, could fall prey to vandalism and the elements. In the present case, a similar risk of confusion, disruption of educational activities, and vandalism and weather damage to the construction site exists.

Tip Top argues that an injunction would be in the public interest based on the interest in "the public's interest in the $1.4 million in savings, an earlier completion date, and a proper procurement." Mot. for Recon. at 10; Compl. ¶¶ 7, 72. These interests, which Tip Top asserted in support of its request for a permanent injunction to compel the CO to reevaluate her decision, do not support a limited injunction pending the Court's resolution of this motion. As discussed above, it is not in the interest of the people of St. John that construction of the roundabout be

further delayed and that the schedule for the busing of school children be disrupted by alterations in the construction schedule set by IRC.

**CONCLUSION**

For the foregoing reasons, defendant respectfully requests that the Court deny Tip Top's motion for reconsideration and its request for injunctive relief pending the Court's decision.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ Amanda L. Tantum
AMANDA L. TANTUM
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
8th Floor
Washington, D.C. 20005
Tel. (202) 616-8131
Fax. (202) 514-8624

August 15, 2008

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on August 15, 2008, a copy of the foregoing "DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR RECONSIDERATION" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Amanda L. Tantum