IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

TIP TOP CONSTRUCTION, INC. )
Plaintiff, )
) No. 08-352C
v. ) Judge Lynn J. Bush
)
THE UNITED STATES, )
Defendant. )

TIP TOP'S REPLY TO DEFENDANT'S OPPOSITION TO RECONSIDERATION

Michael A. Gordon
Counsel of Record for Tip Top Construction, Inc.
MICHAEL A. GORDON PLLC
1629 K Street N.W., Suite 300
Washington, D.C. 20006
(202) 508-1464 (telephone)
(202) 349-1701 (facsimile)

OF COUNSEL:
Fran Baskin, Esquire
MICHAEL A. GORDON PLLC
1629 K Street N.W., Suite 300
Washington, D.C. 20006
(202) 508-1464 (telephone)
(202) 349-1701 (facsimile)

August 19, 2008

## TABLE OF CONTENTS


| | |
|---|---|
| TIP TOP'S REPLY TO DEFENDANT'S OPPOSITION TO RECONSIDERATION | 1 |
| I. Standard of Review | 3 |
| II. The CO's Rejection of a Substitute Asset was Based on a Legal Error | 6 |
| III. Defendant Concedes that the CO Did Not Rely On FAR §28.203 Requirements | 9 |
| IV. Injunction Relief is Warranted | 13 |
| CONCLUSION AND REQUEST FOR AN EXPEDITED DECISION | 14 |

**COURT CASES**

| | |
|---|---|
| Abbott Laboratories v. Syntron Bioresearch, Inc., 334 F.3d 1343, 1357 (Fed. Cir. 2003) | 5 |
| All Seasons Construction, Inc. v. United States, 55 Fed. Cl. 175 (2003) | 10 |
| American Potash & Chemical Corp. V. United States, 402 F.2d 1000 (Ct. Cl. 1968) | 5 |
| Banknote Corp. of America v. United States, 365 F.3d 1345 (Fed. Cir. 2004) | 10 |
| Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308, 1313 (Fed. Cir. 2007) | 12 |
| Brazil v. U.S. Department of the Navy, 66 F.3d 193, 199 (Fed. Cir. 1995) | 5 |
| Bundick Enterprises, Inc., 70 Comp. Gen. 94, B-239867-.2, Nov. 19,1990, 90-2 CPD ¶402 | 7 |
| Cane Tennessee, Inc. v. United States, 62 Fed. Cl. 481, 487 (2003) | 3, 9 |
| CBS Corporation v. United States, 75 Fed. Cl. 498 (2007) | 3 |
| Corrigan v. United States, 70 Fed. Cl. 665, 669 (2006) | 6 |
| Drakes Bay Land v. United States, 424 F.2d 574, 577 (1970) | 8 |
| E.E.O.C. v. Lockheed Martin Corp., 116 F.3d 110, 112 (4th Cir.1997) | 4 |
| Ellsworth Assocs., Inc. v. United States, 45 Fed. Cl. 388, 393 (1999) | 10 |
| Four Winds Forwarding, Inc. v. United States, 13 Cl. Ct. 510 (1987) | 8 |
| Gelco Builders & Burjay Construction Corp. v. United States, 369 F.2d 292, (Ct. Cl. 1966) | 5 |
| General Electric Co. v. United States, 416 F.2d 1320, 1322 (Ct. Cl. 1969) | 4 |

| | |
|---|---|
| Grumman Data Systems Corp. v. Dalton, 88 F.3d 990 (Fed. Cir. 1996) | 10 |
| Holland v. United States, 63 Fed. Cl. 147, 149 (2004) | 3 |
| Honeywell v. United States, 870 F.2d 644, 648 (Fed. Cir. 1989) | 10 |
| Intercontinental Travel Marketing, Inc. v. F.D.I.C., 45 F.3d 1278 (9th Cir. 1994) | 5 |
| John Crowley v. United States, 56 Fed. Cl. 291 (2003) | 8 |
| Keeton Corrections, Inc. v. United States, 60 Fed. Cl. 251 (2004) | 5 |
| Lamle v. Mattel, 394 F.3d 1355, 1359, n.1 (Fed. Cir. (2005) | 5 |
| Lechliter v. United States, 72 Fed. Cl. 17 (2006) | 3 |
| Matthews v. United States, 73 Fed. Cl. 524 (2006) | 5-6 |
| McDonnell Douglas Corp. v. United States, 37 Fed. Cl. 285, 292, fn. 11 (1997) | 8 |
| Omni Moving & Storage of Virginia v. United States, 27 Fed. Cl. 677, 694 (1993) | 3 |
| OMV Medical Inc. v. United States, 219 F.3d 1337, 1343-44 (Fed. Cir. 2000) | passim |
| Pacific Gas & Electric Co. v. United States, 74 Fed. Cl. 779 (2006) | 6 |
| Pinckney v. United States, ___ Fed. Cl. ___ (July 29, 2008) | 5 |
| Precision Standard, Inc. v. United States, 71 Fed. Cl. 216 (2006) | 5 |
| SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) | 10 |
| Stockton East Water District v. United States, 76 Fed. Cl. 470 (2007) | 6 |
| Watts-Healy Tibbits JV v. United States, ___ Fed. Cl. ___ (August 5, 2008) | 12 |

| | |
|---|---|
| Watts-Healy Tibbits JV v. United States, ___ Fed. Cl. ___ (July 23, 2008) | 12 |
| Yuba Natural Resources, Inc. v. United States, 904 F.2d 1577 (1990) | 3-4 |

**ADMINISTRATIVE CASES**

| | |
|---|---|
| Gene Quigley, Jr., 70 Comp. Gen. 273, B-241565, February 19, 1991, 91-2 CPD ¶182 | 11-12 |
| Gulf & Texas Trading Co., B-253991-.2, Jan. 24, 1994, 94-1 CPD ¶31 | 7 |
| U.S. Floors, Inc., B-241552, B-241555, February 6, 1991, 91-1 CPD ¶130 | 6, 11-12 |

**STATUTES AND REGULATIONS AND RULES**

| | |
|---|---|
| FAR §28.203 | 2, 9, 12 |
| FAR §28.203-1 | 9, 11 |
| FAR §28.203-2 | 10, 11 |
| FAR §28.203-4 | passim |
| Court of Federal Claims Rule 59 | 2, 3, 5 |

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

| | | |
|---|---|---|
| TIP TOP CONSTRUCTION, INC.<br>Plaintiff, | ) | |
| | ) | No. 08-352C |
| v. | ) | Judge Lynn J. Bush |
| | ) | |
| THE UNITED STATES,<br>Defendant. | ) | |

TIP TOP'S REPLY TO DEFENDANT'S OPPOSITION TO RECONSIDERATION

Plaintiff, Tip Top Construction, Inc. ("Tip Top") respectfully requests that the Court grant its motion for reconsideration to prevent a manifest injustice. Defendant now concedes and thus effectively agrees with Tip Top that the two key factual premises upon which this Court found that the Federal Highway Administration ("FHWA") Contracting Officer ("CO") had rationally exercised her discretion are incorrect:

(1) The CO did not refuse to respond to Tip Top's request on behalf of the surety to substitute the surety's "marketable coal" asset with cash or an acceptable asset based on whether the request was sufficiently formal under FAR §28.203-4. As stated in the uncontested Supplemental Declaration of Percy J. Hollins, the CO rejected the request based on the legally erroneous position that the FAR did not allow her to accept a substitute asset from an individual surety. Administrative Record ("AR") 700. Defendant does even attempt to support the CO's actual basis for rejection, an admission that it has no legal basis and thus, is irrational.

Since the CO's indisputable basis for refusing to entertain the request to substitute assets was irrational, and the CO could have legally chosen to accept the asset of cash offered making the surety responsible, OMV Medical Inc. v. United States, 219 F.3d 1337 (Fed. Cir. 2000) requires a remand. It would be manifestly unjust to deprive Tip Top of this award and the public of the benefit of Tip Top's $1.4 million low bid based on the CO's irrational rejection.

(2) Defendant also concedes that the "requirements of the Federal Acquisition Regulation (FAR) for an Individual Surety at Section 28.203" in the CO's February 19, 2008 letter were not, as the Court interpreted those words, the "primary basis" or even a basis at all for the CO's contemporaneous decision to find the surety financially non-responsible. Thus, it is now indisputable that the CO's actual decision was not based on the "escrow account" requirements referenced in FAR §28.203(b). Yet, this was the basis on which the Court concluded the CO's interpretation of the regulations was rational as the CO's actual stated basis—that marketable coal was a "speculative asset, e.g. mineral right"-- was unreasonable. This finding is also the basis on which this Court held that the CO's unreasonable claim that unidentified federal regulations prohibited further acceptance of support for the bid bond was a harmless error. Thus, under OMV Medical, remand for a proper determination is required.

Defendant's implication that these issues are "untimely" because it should have been included in the complaint is without merit. The Declaration was submitted in response to Defendant's attempt to supplement the record in its reply brief. In it, Mr. Hollins clarified Mr. Hollins' February 20, 2008 e-mail and the CO's rejection of any support for the bid bond in her February 23, 2008 letter. AR 565, 263. The Court admitted the Declaration into the record without objection by Defendant. Tip Top reiterated its position at oral argument and Defendant had a full opportunity to respond. The facts relating to the Declaration were first asserted in this Court's Opinion, p. 39, and Tip Top could not have anticipated an interpretation in conflict with the statements that Defendant effectively concedes are in the Declaration.

The Court's interpretation of the CO's February 19, 2008 rejection letter also was introduced for the first time in the Opinion. Tip Top could not have anticipated this finding as Defendant never proffered this interpretation and indeed, disavows the Court's position now.

Court of Federal Claims Rule 59 was designed to provide the Court with an opportunity to promptly reconsider a decision where there are material errors that would affect the result and it would be manifestly unjust to require the expenditure of judicial and party resources on an appeal. Tip Top meets this standard.

Tip Top's protest asserted that, under OMV Medical, the CO's discretion had not been reasonably exercised for the reasons asserted at that time. Since (a) the above two factual premises were the factual linchpins of the Court's finding that the CO's actual, contemporaneous decisions were rational, and both parties effectively agree that those premises were erroneous, and (b) notwithstanding whether Tip Top could be bound by Defendant's later post-hoc interpretation, at the time of the actual decision, the CO could have reasonably provided an opportunity to and accepted support for the bid bond, it would be a manifest injustice for this Court to confirm the erroneous result based on irrational CO actions. OMV Medical requires a remand to the CO for a proper exercise of discretion.

I. Standard of Review

One ground for granting this motion is that it would be in the manifest interest of justice to correct a material error of fact or law. Such manifest injustice exists where the factual premises on which the court's decision were based are shown to be unjustified and where their correction leads to a different result based on the applicable case law. Judges in this Court have granted motions for reconsideration in these circumstances.

- In Lechliter v. United States, 72 Fed. Cl. 17 (2006), this Court concluded that its initial review of documents in the record, on reflection, was in error and required a different result.

- In Holland v. United States, 63 Fed. Cl. 147, 149 (2004), the Court granted reconsideration when declarations in the record indicated a contrary factual premise than the one on which the decision was based.

- In Omni Moving & Storage of Virginia v. United States, 27 Fed. Cl. 677, 694 (1993), reconsideration was granted where the Government agreed to facts undermining those on which the decision was made.

- In CBS Corporation v. United States, 75 Fed. Cl. 498 (2007), the Court determined that its comparison between fixed price and flexibly priced subcontracts had not been justified under then-existing precedent and granted reconsideration based on this error.

While a motion for reconsideration is not an opportunity to relitigate matters, this is not what Tip Top is doing. Moreover, the granting of a Rule 59 motion is within this Court's discretion. Yuba Natural Resources, Inc. v. United States, 904 F.2d 1577 (1990). The Court, in its discretion, can and should reject its own factual findings or legal positions if upon reflection, it believes that granting reconsideration will lead to the correct result. Id. For instance, in Cane Tennessee, Inc. v. United States, 62 Fed. Cl. 481, 487 (2003), the Court granted reconsideration when, based on reflection, the Court decided that applicable precedent cited in the original decision required a different result.

A Court may reject issues raised for the first time in the motion for reconsideration that could have been made during "the initial presentation of its case before the Claims Court." Yuba, supra at p.1582. That is not the case here, as the two factual findings which are the principal grounds for this motion were made for the first time in this Court's Opinion. The Court of Claims has agreed to review issues raised for the first time in a rehearing where an appellant's issues were in response to positions first raised by the court in its opinion. American Potash & Chemical Corp. V. United States, 402 F.2d 1000 (Ct. Cl. 1968).

Likewise, the Court need not consider documents not in the record that were available to the plaintiff but were not raised before it made the decision. See General Electric Co. v. United States, 416 F.2d 1320, 1322 (Ct. Cl. 1969). That is the case here.

The two factual issues on which Tip Top's motion for reconsideration is based involve the Court's interpretations of the Declaration, admitted into the record by the Court prior to argument, and the CO's letter. The issues appeared for the first time in the Court's Opinion and there is no reason for erroneous findings to have been reasonably anticipated. Defendant did not proffer these positions and indeed, effectively agrees they were in error.

Moreover, in no case on a motion for reconsideration of which we are aware has this Court refused to consider issues raised prior to issuance of the decision (much less those introduced in a court's opinion for the first time) on the basis that the documents and/or arguments could have been presented at the time the complaint was filed. Such a rule limiting issues to those that could have been pled in the complaint in a protest action would exclude any documents admitted to supplement the AR or arguments made in the briefs during the litigation.

Case law is consistent with this position. For example, in Keeton Corrections, Inc. v. United States, 60 Fed. Cl. 251 (2004), the Court held that arguments based on evidence in the record that could have been submitted prior to issuance of the decision were barred. See Gelco Builders & Burjay Construction Corp. v. United States, 369 F.2d 292, (Ct. Cl. 1966)(witnesses' post-hearing testimony inadmissible under Board's "newly discovered evidence" rule where witnesses were available at time of hearing). Moreover, no cases we have found quoting language to the effect that issues that could have been raised at the time of the complaint are waived do not actually apply this deadline or are materially distinguishable.[1]

[1] See e.g. Pinckney v. United States, __Fed. Cl. __(July 29, 2008) (new evidence not admitted to the AR); Stockton East Water District v. United States, 76 Fed. Cl. 470 (2007); Matthews v. United States, 73 Fed. Cl. 524 (2006)(new evidence was irrelevant); Precision Standard, Inc. v. United States, 71 Fed. Cl. 216 (2006)(no link to time of complaint). The cases cited to support the above dictum also do not link waiver to the time of the complaint and/or involved rules and purposes other than those in Rule 59. See Lamle v. Mattel, 394 F.3d 1355, 1359, n.1 (Fed Cir. 2005) (rejected choice of law issue not linked to time of the complaint); Intercontinental Travel Marketing, Inc. v. F.D.I.C., 45 F.3d 1278 (9th Cir. 1994)(issue not raised in pleadings, not linked to complaint); Cf. Abbott Laboratories v. Syntron Bioresearch, Inc., 334 F.3d 1343, 1357 (Fed. Cir. 2003)(issues raised for the first time in the appellate reply brief); Brazil v. U.S. Department of the Navy, 66 F.3d 193, 199 (Fed. Cir. 1995)(issue not in appeal).

The two cases in which issues were excluded on reconsideration are factually distinguishable. In Pacific Gas & Electric Co. v. United States, 74 Fed. Cl. 779 (2006), the Court refused to address a less lucrative theory of damages raised for the first time on reconsideration where that theory was raised by Defendant during a hearing and in its post-trial brief but the plaintiff, for tactical reasons chose not to assert that theory in its post-trial briefs.

In Corrigan v. United States, 70 Fed. Cl. 665, 669 (2006), the Court refused to entertain a new legal argument based on the same facts cited in the pleadings. No reference was made to the time of the complaint. Moreover, the Court pointed out that that the argument was not based on any factual errors that could result in manifest injustice.

As shown below, Defendant's opposition confirms that two factual premises on which the Court based on its finding that the CO rationally exercised discretion are unjustified. The CO's actual reasoning at that time lacked a rational basis. Under OMV Medical, which was cited by Tip Top in its briefs and in oral argument, if the contemporaneous determination is material to making an award and lacked a reasoned basis, and a different but rational determination could have affected the outcome, the Court is required to remand the case to the CO for a new determination. Any other result would be manifestly unjust.

II. The CO's Rejection of a Substitute Asset was Based on a Legal Error

Defendant does not challenge the accuracy of Mr. Hollins' Declaration clarifying Tip Top's February 20, 2008 e-mail, AR 565, and thus, concedes that the CO did not refuse to respond to the request based on insufficient formality, but rejected the offer on the legally unsupportable claim that the FAR did not allow her to accept a substitute asset from an individual surety. AR 700. Thus, Defendant again effectively admits that the Court's interpretation of the Declaration is incorrect.

FAR §28.203-4 expressly allows for a substitution of assets even after a protest is filed. U.S. Floors, Inc., B-241552, B-241555, Feb. 6, 1991, 91-1 CPD ¶130. Indeed, Defendant makes no attempt to support the CO's actual legal position, thus, conceding it lacks a rational basis.

Defendant's argument that the CO could not have abused her discretion unless a written request was actually received from the surety ignores the actual basis for her rejection, which is the only relevant determination under OMV Medical. Even if the CO could have rejected the request from Tip Top on the basis of the formalities, that was not the actual basis for her rejection. The CO believed that even an individual surety could not have substituted an asset, apparently confusing these requirements for those involving the substitution of sureties. See Bundick Enterprises, Inc., 70 Comp. Gen. 94, B-239867-.2, Nov. 19,1990, 90-2 CPD ¶402. Thus, whether the individual surety made a request was irrelevant. But for this patent error, the CO could have chosen to exercise her discretion to entertain a request for substitution of assets which Defendant concedes, a CO can do without even receiving a written request. See Gulf & Texas Trading Co., B-253991-.2, Jan. 24, 1994, 94-1 CPD ¶3, Def. Motion for Judgment, p. 35.

Defendant's claim that the Declaration and arguments associated with it are "untimely" has no merit. The Court admitted the Declaration to the record and it was cited in the Opinion, p. 39. This Declaration clarified Tip Top's position that its February 20, 2008 e-mail was a request to substitute assets on behalf of the surety and that the offer had been unreasonably rejected by the CO, a position reiterated in the CO's unreasonable refusal to accept any support for the bid bond. AR 263; Tip Top's Reply, pp. 9-10. This Declaration and arguments in Tip Top's Motion to Strike or in the Alternative to Supplement the AR were available to Defendant prior to oral

argument. Tip Top there asserted that the CO had rejected the offer and unreasonably believed at the time of her decision that she had no discretion to accept it. Transcript ("Tr."), p. 37-38, 80.

Tip Top further stated that based on the CO's rejection of a substitute asset and her subsequent refusal to entertain the surety's offer of further support for the bond based on unsupported "timeliness" considerations, any further actions would have been futile. Tr., p. 72.

> "There's no doctrine in the law that says you have to engage in a useless act. We're told by the contracting officer orally don't send us a substitute asset, I can't permit it under the FAR. The surety tries to convince the government that coal is not a mineral right and is told, I'm sorry, I'm disabled. The FAR says I cannot accept this."

If there was any doubt about FHWA's position on accepting any support for the bond, whether it be to substitute assets or support to resolve any concerns about marketable coal, the CO's response to the surety that any support would be "untimely" and "in violation of federal regulations" confirmed the futility. AR 263. Defendant's suggestion that Tip Top could have filed an agency protest ignores that Tip Top and its surety filed a GAO protest and raised these issues. AR 319, 418, 525-26. Moreover, FHWA's later refusal to respond to Tip Top counsel's request to FHWA counsel to consider a substitution of assets to resolve the litigation again confirms again the futility of seeking administrative relief from this agency. AR 464.[2]

Tip Top did not waive the legal arguments based on Mr. Hollins' Declaration. When this Court admitted the Declaration into the AR, which was submitted only when Defendant attempted to supplement the AR in its Reply Brief, Defendant failed to object and has waived its

---

[2] Defendant's factual distinctions in the cases Tip Top cited in its Motion to Strike do not undermine the principle that the law does not require futile acts. See Drakes Bay Land v. United States, 424 F.2d 574, 577 (1970)(requirement to formally request a variance from country road standards was unnecessary where agency actions had shown it would be futile); McDonnell Douglas v. United States, 37 Ct. Cl. 285, 292, fn. 11 (proof that negotiations were at an impasse on a convenience termination claim, a formal pre-requisite to this Court's jurisdiction, was not enforced based on futility where the CO had indicated that the default termination was proper); John Crowley v. United States, 56 Fed. Cl. 291 (2003)(failure to file prepayment requests would be futile based on agency decisions indicating a belief that it had no discretion to grant them); Four Winds Forwarding, Inc. v. United States, 13 Cl. Ct. 510 (1987)(Government's denial of rate adjustments made an appeal futile).

position now. Moreover, Defendant had an opportunity to respond at oral argument but chose to assert a legal position that the CO did not contemporaneously assert. AR 700.

Finally, Defendant has not contested the accuracy of Mr. Hollins' statements either in a Declaration from the CO, its opposition, or its pleadings.[3]

In sum, based on the views of both parties, it is now indisputable that the CO did respond to the request and that the CO's actual reason for rejecting cash, a substitute asset, was that the FAR would not allow acceptance of a substitute asset from an individual surety. AR 700, 263. This was in violation of FAR §28.203-4 and thus, irrational. The AR also shows that a substitute cash asset could have been reasonably accepted under FAR §28.203-4, making Tip Top the low priced, responsible bidder. AR 709. In these circumstances, OMV Medical requires a new surety financial responsibility determination. Any other result would be manifestly unjust.

III. Defendant Concedes that the CO Did Not Rely On FAR §28.203 Requirements

This Court adhered to OMV Medical based on its interpretation of the CO's February 19, 2008 letter as including the "requirements of the Federal Acquisition Regulation (FAR) for an Individual Surety at Section 28.203" as the "primary basis" for her rejection of Tip Top's surety as financially non-responsible. AR 233. The Court apparently reasoned that FAR §28.203(b) referenced FAR §28.203-1, which included the "escrow account" requirements. Thus, although admittedly not expressly stated by the CO, Opinion, p. 22, the Court found such requirements were implicitly included in the CO's contemporaneous rejection letter. Id., pp. 30-31.

Defendant tellingly offers no support in its Opposition for the Court's interpretation of the letter. On the contrary, at page 9, Defendant states:

---

[3] Tip Top notes that prior to the Court's admission of the Declaration to the AR, Defendant argued, based on the "record," that no request to substitute assets was made until Tip Top's counsel's request to FHWA counsel to consider a substitution of assets on April 11, 2008 which alleged came too late as FWHA was "running out of time." See Defendant's Motion for Judgment, p. 32; Defendant's Reply, p. 7. The Government knew or should have known these claims and its post-hoc interpretation of Tip Top's April 20, 2008 e-mail were misleading. AR 565.

> "The fact that the CO did not identify the impossibility of placing coal in an escrow account as a relevant factor is, therefore, irrelevant to the determination of the legal question regarding the acceptability of coal." (Emphasis added).

Defendant even argues that the Court was not evaluating the CO's rejection letter under OMV Medical but was exercising its "… *de novo* review of legal questions in which the Court does not adhere to the CO's rationale." Def. Opposition, p. 7. This claim is inaccurate.

The Court emphasized that it was adhering to OMV Medical and that only the "CO's reasoning" was being evaluated. Opinion, pp. 14, 17-18, 30, 32. The Court specifically referenced the CO's alleged reliance on escrow requirements referenced in FAR §28.203 ("as cited by the CO") in concluding the CO's decision was reasonable. Id. 30, 32.

Contrary to Defendant's position that the Court found coal as per se unacceptable, footnote 9 states:

> "The court's role is to determine whether the CO's decision, or in these circumstances, the CO's interpretation was reasonable. *See Ellsworth Assocs., Inc. v. United States*, 45 Fed. Cl. 388, 393 (1999) ("The court's only role is to determine whether any rational and reasonable basis supports the agency's decision."). While there may have been other interpretations which might have been considered to be within reason as well, as long as the CO's decision was itself reasonable, it must be upheld. *See Honeywell*, 870 F.2d at 648 (stating that the contracting officer's decision must be upheld if the decision has a rational basis)." (Emphasis added).[4]

Thus, the Court did not accept Defendant's "*de novo*" position. Indeed, this position would have sanctioned the substitution of the Court's judgment for that of the CO and contravened OMV Medical as well as SEC v. Chenery Corp., 332 U.S. 194, 196 (1947).

Defendant's claim that OMV Medical applies only to factual "calculations" rather than the factual legal issues on which the CO's decision was based is not supported by the case law. A case Defendant did not cite in its Opposition, All Seasons Construction, Inc. v. United States,

---

[4] Defendant's reliance on the Court's citations of Banknote Corp. of America v. United States, 365 F.3d 1345 (Fed. Cir. 2004), and Grumman Data Systems Corp. v. Dalton, 88 F.3d 990 (Fed. Cir. 1996) are misplaced. These cases were cited for the purpose of showing that the CO's interpretation was reasonable. Opinion, p. 33.

55 Fed. Cl. 175, 177, fn. 1 (2003), applied OMV Medical and Chenery in rejecting consideration of the GAO's view of the law of bid bonds under undisputed facts.

Defendant's position confirms that the Court's interpretation, while taken from language in the letter, was not factually accurate. Therefore, it is now evident that the CO did not rely on the FAR §28.203 or the escrow requirements referenced therein in rejecting Tip Top's surety.

The AR now indisputably shows that the sole reason that actually caused the CO to reject the bid bond was that "marketable coal" was a "speculative asset, e.g. mineral right," under FAR §28.203-2(c)(7). Neither the GAO nor this Court accepted this unreasonable interpretation.

Defendant's attempt now to support the CO's interpretation based on the general definition of "speculative" ignores the limiting example in the regulations —"… e.g. mineral right" and must again be rejected. The record before the CO showed that an unencumbered $1.8 portion of previously mined, marketable coal valued at $191 Million was available at a specific location. AR 232. Marketable, previously mined coal has nothing in common with the aspects of a mineral right that make it speculative. [5]

Likewise, the CO lacked a rational basis for her statement that non-existent federal regulations made "untimely" any attempt to support the bid bond. AR 263. At a minimum, the CO did not lack discretion as a "matter of law" to provide Tip Top and its surety with an opportunity to support the marketable coal asset, such as by including either an alternative escrow arrangement or a substitute asset; such requests for support for a bid bond are the standard in GAO case law. Gene Quigley, Jr., 70 Comp. Gen. 273, B-241565, Feb. 19, 1991, 91-2 CPD ¶182; U.S. Floors, Inc., supra; see Tip Top's Motion for Reconsideration, pp. 4-5. No

[5] Defendant's attempt to incorporate the CO's post-hoc rationalizations before the GAO was not accepted by this Court, and in any event, are equally unreasonable. As explained in Tip Top's briefs, there is no requirement in the FAR that a personal property asset be sold first to be acceptable. Indeed, such a requirement would render publicly traded stocks and bonds unacceptable.

GAO cases limit FAR §28.203-4 to situations where the unacceptable asset could arguably have been one of the five types of acceptable assets listed in FAR §28.203-2(b). Id.

Thus, like the "responsiveness" arguments which the Court properly refused to consider under OMV Medical, this Court should also refuse to consider the GAO's post-hoc rationale for rejection based on "escrow account" requirements.[6]

Based on the absence of any actual reliance on what the Court considered the primary basis for rejecting the bid bond, and the absence of a rational basis for the CO's rejection, the CO's refusal to allow support for the bid bond, including submission of substitute assets, was not a harmless error. Id. An acceptable substitute asset would have entitled Tip Top to the award.

Finally, whether Tip Top had a duty to seek clarification of the bid bond requirements that its surety reasonably believed allowed for marketable coal, based on acceptance of the asset by other agencies, or to substitute that asset, does not change the result.[7] Tip Top's protest is based on an exercise of discretion. Under OMV Medical, the focus is whether the CO's actual exercise of decision was rational. Thus, even if Tip Top would be bound by Defendant's post-hoc interpretation of the regulations in later litigation, at the time of the rejection, the CO had discretion to accept support and/or a substitute asset and was not required as a "matter of law" to

[6] Tip Top respectfully requests that the Court in its discretion reconsider and find that the regulations as written define "escrow account" to cover only cash assets, and that other acceptable assets such as stocks and bonds and letters of credit would not meet these requirements. Defendant's claim that the term "funds" in FAR 28.203-1(b)(i) encompasses stocks and bonds and letters of credit based on a dictionary definition ignores other portions of the regulation that require that "the financial institution would pay the Government the amount demanded up to the amount on deposit", to "disburse monies" and to provide "periodic account statements," all indicating only cash is being addressed since the amount of stocks cannot be known until sale; nor can a bank pay "accrued interest" on them. See FAR §28.203-1(b)(i)(ii)(iv) (in spite of its case authority regarding interpretation of single sentences, these subsections omitted in Defendant's Opposition, p. 10). Further, Defendant has failed to respond to FAR §28.203-1(b) states in pertinent part that "… [W]hile the offeror is responsible for establishing the escrow account, the terms and conditions must be acceptable to the contracting officer," indicating that the terms of any escrow was subject to a CO's discretion, thus permitting different escrow arrangements than those specified for cash, like the escrow arrangement Tip Top suggested, could be acceptable. Finally, Defendant does not address the fact that under its interpretation requiring physical placement of the asset into the escrow account, if coal is an unacceptable as a matter of law, gold would be an unacceptable asset. This makes no sense.

[7] Defendant's characterization of this as a matter of "standing" is without merit. This Court found standing.

reject it. Gene Quigley, U.S. Floors. Nothing in Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308, 1313 (Fed. Cir. 2007) divests the CO of this post-bid submission discretion.

Given the absence of a rational, contemporaneous determination, it is in the manifest interest of justice is to remand the case to the CO to make a proper surety responsibility determination, including consideration of a substitute asset, which will be cash or a cash equivalent. AR 709. See Watts-Healy Tibbits JV v. United States, ___ Fed. Cl. ___ (August 5, 2008) )(new responsibility determination ordered); Watts-Healy Tibbits JV v. United States, ___ Fed. Cl. ___ (July 23, 2008).

IV. Injunctive Relief is Warranted

Tip Top believes its pleadings and Defendant's admission establish its success on the merits and requests that performance of the contract be permanently enjoined for the reasons set forth in Tip Top's pleadings.

Tip Top also requests that a preliminary injunction be entered for that short period while this Court decides the motion for reconsideration.

Defendant's allegations of harm from maintaining the status quo for this period cannot be accepted. FHWA previously argued that it had to issue a notice to proceed on August 4, 2008 in order to submit scheduling information to a school near the construction site. As shown by the attached Second Supplemental Declaration of Percy J. Hollins, there is no impact on the school bus schedule from the construction since it must be presumed that the contract requirements to keep one lane open will be met and bus drop is off the project site.

FHWA's James Scott's claim in his declaration that students may be placed in jeopardy is at best overstated. Once again, under the contract requirements, a temporary orange plastic safety barrier is placed around the retaining wall which has been demolished. AR 76, 90.

Defendant's claims of "confusion, disruption of educational activities, and vandalism and weather damage" have no support at all.

Defendant's claim that the delays at issue will affect resolution of a dangerous intersection roundabout is also unsupported. Mr. Scott does not state or imply that this completion date would be jeopardized by the delay necessary to resolve this motion or to replace the current contractor with Tip Top, the low bidder. That is because the current contractor's performance is scheduled to take 685 days, almost 2 years.

The other factors strongly favor the injunctive relief requested, including (a) the public's interest in $1.4 million savings, a 300-day completion date, and a proper procurement, and (b) Tip Top's irreparable harm, which are still present. See Hollins Second Supplemental Declaration. The construction that would be performed will reduce the contract reduce Tip Top's profits, and if too prolonged, could effectively eliminate Tip Top's appellate rights or its ability to obtain the contract. At some point, FHWA would likely argue that the cost of switching contractors would undermine the project and eliminate the advantages of the low bid. Id.

A preliminary injunction will minimize the costs to terminate the erroneously awarded contract (eliminating any harm to the awardee) without adversely impacting the public's interest in completing the project. Id.

CONCLUSION AND REQUEST FOR AN EXPEDITED DECISION

For the reasons stated above, and those in its motion for reconsideration, incorporated fully herein and other pleadings, Tip Top respectfully requests that the Court reconsider its decision in light of the undisputed facts which undermine the basis for the Court's conclusion that the CO acted rationally, and grant Tip Top's motion. Tip Top requests that the Court enjoin performance of the contract in the interim and then issue permanent injunctive relief requiring a

new FHWA responsibility determination in which the surety's pledged assets or substitute assets of cash or cash equivalents are fully and fairly considered.

Tip Top again respectfully requests that the Court issue its decision on this motion quickly to minimize any harm to the parties and to preserve any appeal rights.

Respectfully submitted,
s/ Michael A. Gordon
MICHAEL A. GORDON PLLC
1629 K Street N.W., Suite 300
Washington, D.C. 20006
(202) 508-1464 (telephone)
(202) 349-1701 (facsimile)
Attorney of Record
for Plaintiff, Tip Top Construction, Inc.

OF COUNSEL:
Fran Baskin, Esquire

August 19, 2008