IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

| | | |
|---|---|---|
| TIP TOP CONSTRUCTION, INC.<br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) | No. 08-352C<br>Judge Lynn J. Bush |

SECOND SUPPLEMENTAL DECLARATION OF PERCY J. HOLLINS

1. I, Percy J. Hollins, am and have been the President of Tip Top Construction, Inc. ("Tip Top") at all relevant times. All of the statements herein are based on my personal knowledge.

2. I am familiar with the contract at issue and its requirements. The Statement of Work ("SOW") Section 653, requires that during construction, the flow of traffic on the road on which the roundabout is being built cannot be stopped. Only single lane closures are permitted meaning at least one lane must be open at all times. The SOW further states that a temporary school bus loading/unloading area (located on Hill Street) will be used during construction and that safe pedestrian access from this area to the school, at the corner of Route 10 West and Route 201, must be provided at all times.

3. On August 13, 2008, I contacted Winifred Callwood, School Bus Administrator and Manager, who works for the Department of Education in St. John, Virgin Islands. Ms. Callwood is familiar with and responsible for the school busing schedules on St. John Island as well as the roundabout construction in terms of school busing.

4. When asked how the construction would affect school busing schedules, Ms. Callwood stated that the construction will have no effect as long as one lane remains open.

5. Based on Ms. Callwood statements, the location of the temporary loading site and the contract requirements, which all contractors must meet, the Federal Highway Administration's ("FHWA") apparent position that a delay in starting construction will adversely affect school busing schedules has no basis.

6. I have also reviewed the declaration submitted by Thomas Scott of the FHWA and do not understand some of his statements or the relevance of the photographs submitted. The only work to be performed near the school involves demolition of the retaining wall, which has already been knocked down. The contract, Sections 156.03 and 653.03 require that an orange plastic construction safety fence must be erected to separate construction areas from pedestrian areas, including near the school. If the new contractor has demolished the retaining wall, such barriers must be installed. Mr. Scott's declaration does not explain why, if such temporary safety barriers have been installed as required, a potential hazard any different character will exist as a result of the delay or an injunction.

7. Today, I spoke to Ira Wade, the Deputy Commissioner for the Public Works Department for St. Johns. He explained that that the students will be dropped off at the front entrance of the school which as shown in the attached exhibit is off the project site. Therefore, no temporary bus stop or scheduling is needed. At the meeting referenced by Mr. Scott, he stated that bus schedules and temporary bus stop locations were not even discussed. Thus, I agree with Ms. Callwood that bus schedules will not be affected and have no relationship to the delay necessary to decide the current motion or to redo the responsibility determination. The surety will submit an acceptable substitute bond quickly and I will promptly sign the contract and provide performance and payment bonds from corporate sureties.

8. I further note that Mr. Scott's declaration does not even allege that the delays necessary to resolve this case would cause a delay in completion of the project by the current contractor which has a 685-day schedule. Our schedule would result in project completion within 300-days.

9. At present, I am still retaining the key employees that I intended to use on the contract essentially duplicating resources on other projects to keep them busy. I cannot do this indefinitely and will probably have to release them within 30 days. In addition, any work being performed by the current contractor will reduce the scope of the contract and therefore will reduce my profits on that work scope.

10. I swear under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge and belief.

Percy J. Hollins
President, Tip Top Construction, Inc.

Date: August 19, 2008