# In the United States Court of Federal Claims

No. 08-352 C

(Filed September 12, 2008)

**UNPUBLISHED**

```
* * * * * * * * * * * * * *  *
TIP TOP CONSTRUCTION, INC.,  *
                             *   RCFC 59; Motion for
             Plaintiff,      *   Reconsideration.
                             *
        v.                   *
                             *
THE UNITED STATES,           *
                             *
             Defendant.      *
                             *
* * * * * * * * * * * * * *  *
```

*Michael A. Gordon*, Washington, D.C., for plaintiff.  *Fran Baskin*, Washington, D.C., of counsel.

*Amanda L. Tantum*, United States Department of Justice, with whom were *Gregory G. Katsas*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Harold D. Lester, Jr.*, Assistant Director, Washington, D.C., for defendant.

**OPINION**

**Bush**, *Judge*.

Plaintiff Tip Top Construction, Inc. (Tip Top) filed its post-award bid protest on May 15, 2008.  Tip Top commenced suit against defendant seeking declaratory and injunctive relief voiding the award of a contract to Island Roads Corporation (IRC) for the construction of a traffic circle on the island of St. John.

Plaintiff claimed that defendant Federal Highway Administration of the United States Department of Transportation (FHWA or agency) improperly eliminated Tip Top from the competition on the ground that Tip Top's bid bond was "defective." Compl. ¶ 1.  Tip Top claimed that the agency's determination was "improper," and in "violation of federal law and regulation." *Id*.  On August 1, 2008, this court granted defendant's cross-motion for judgment on the administrative record and dismissed plaintiff's suit.

On August 7, 2008, plaintiff filed a timely motion for reconsideration of this court's opinion and judgment.  Plaintiff also made a request for preliminary injunctive relief pending the court's review of its motion.  Defendant filed a response to plaintiff's motion on August 15, 2008, and plaintiff filed a reply on August 19, 2008.  For the following reasons, plaintiff's request for injunctive relief and its motion for reconsideration are denied.

**BACKGROUND**

This court's August 1, 2008 opinion describes the details of the underlying dispute and, accordingly, all of the specifics need not be recited here.  *See Tip Top Constr. Inc. v. United States*, No. 08-352C, 2008 WL 3153607 (Fed. Cl. Aug. 1, 2008) (*Tip Top*).  On November 1, 2007, the Eastern Federal Lands Highway Division of the FHWA issued an Invitation for Bids, No. DTFH71-08-B-0002 (IFB or solicitation) for the construction of a five-leg roundabout, and other related work, on the island of St. John in the U.S. Virgin Islands.  AR at 1.  The FHWA estimated that it would take 675 calendar days to complete the contract within a price range of $4,000,000 to $7,000,000.  AR at 22-23.  The contract would be awarded to the "responsive, responsible bidder with the lowest Total Price of Project . . . ."  AR at 25.

The IFB listed several requirements for the bidders, including the submission of prices and schedules for the contract.  AR at 24-25.  The IFB required bidders to submit a bid guarantee "in the amount of not less than 20 percent of the bid price or $3 million," whichever was less.  AR at 23.  The IFB included the Standard Form (SF) 24, which sureties were required to complete. AR at 34-35.  Execution of the SF 24 signifies that sureties are liable for the amount of the bid bond.  AR at 34.  In this particular case, instruction 4(b) of the SF 24 stated that bidders had the option of using individual sureties for the bid bond:

> (b) Where individual sureties are involved, a completed Affidavit of Individual Surety (Standard Form 28), for each individual surety, shall accompany the bond. The Government may require the surety to furnish additional substantiating information concerning its financial capability.

AR at 35. Therefore, in accordance with the IFB provisions, individual sureties providing a bid bond were required to complete both the SF 24 and SF 28.

On January 10, 2008, the agency opened bids. The agency received three offers: GEC Inc., with a total bid price of $9,772,500; IRC, with a total bid price of $8,751,880; and Tip Top with a total bid price of $7,292,505. AR at 218. Tip Top was the lowest bidder, with its bid being approximately $1.4 million dollars lower than IRC's bid. Tip Top also estimated that it would take 300 calendar days to complete construction of the five-leg roundabout, and other miscellaneous work, as opposed to the 675 calendar days proposed by IRC. *Id*.

Tip Top utilized Edmund C. Scarborough (ECS), as an individual surety to furnish plaintiff's bid bond. AR at 227-32. Connie F. Souleyrette, ECS's attorney-in-fact, signed the bid bond (SF 24), Affidavit of Surety (SF 28), and accompanying Certificate of Pledged Assets. *Id*. In the Certificate of Pledged Assets, ECS described the proffered bid bond asset as an "allocated portion of $191,350,000.00 of previously mined, extracted, stockpiled and marketable coal, located on the property of E.C. Scarborough, all of that certain lot or parcel of land in Kentucky District, Nicholas County, West Virginia." AR at 232. ECS pledged that the asset was "free from liens and encumbrances or prior pledge, and [ECS] has full authority to transfer said assets as collateral in support of bonds." *Id*. ECS affirmed that, during the term of this contract, ECS "shall not assign or sell any rights to the pledged assets, or pledge the same assets to another pledgee." *Id*. ECS further affirmed that "[n]o other Bonds have been pledged to the allocated portion of the assets which are the subject of the attached Certificate of Pledged Assets." AR at 229. ECS also declared to the FHWA that the government was being given a security interest in the pledged asset pursuant to Article 9 of the UCC. AR at 232.

Based on its low bid, and the anticipation that it had fulfilled the requirements of the IFB, Tip Top expected to be awarded the contract. However,

FHWA's contracting officer (CO), in a letter dated February 19, 2008, rejected Tip Top's bid on the basis that plaintiff had failed to "furnish a bid guarantee in accordance with the requirements of the invitation for bids." AR at 233. The CO also concluded that marketable or mined coal was a "speculative asset" excluded by section 28.203-2(c)(7) of the Federal Acquisition Regulation (FAR). *Id*.

On February 29, 2008, Tip Top filed a protest with the Government Accountability Office (GAO). AR at 234-35. In that protest, plaintiff claimed that it was "erroneously eliminated because its bid bond did not meet the requirements for an individual surety - specifically, that the previously mined, marketable coal offered as an asset to support the bond was a 'speculative asset' expressly excluded by FAR 28.203-2(c)(7)." AR at 234. Tip Top argued that FHWA had not established a rational basis as to why "previously mined, marketable coal" was not an acceptable asset under the FAR. *Id*. Because Tip Top believed that FHWA had made an erroneous decision, it sought a stay of performance of the contract pursuant to the Competition in Contracting Act (CICA), 31 U.S.C. § 3553 (2000) until its protest was decided. *Id*. at 235.

On May 2, 2008, GAO issued its decision, denying Tip Top's protest. AR at 553-57. GAO concluded that mined coal was an unacceptable asset under the FAR because it could not be placed in an escrow account as required by FAR 28.203-1(b)(1). AR at 557. GAO also determined that plaintiff's interpretation of FAR 28.203-4 was wrong and that an agency is allowed to reject a bid bond without granting the bidder's request for substitution of assets. *Id*. Subsequently, Tip Top filed suit in this court on May 15, 2008. The court issued its decision on August 1, 2008.

## DISCUSSION

### I. Standard of Review

Pursuant to the Rules of the United States Court of Federal Claims (RCFC), a party may be granted reconsideration of the court's disposition of a case "for any of the reasons established by the rules of common law or equity." RCFC 59(a)(1). "The decision whether to grant reconsideration lies largely within the discretion of the [trial] court." *Yuba Natural Res., Inc. v. United States*, 904 F.2d 1577, 1583 (Fed. Cir. 1990). "For a movant to prevail, he must point to a manifest error of law or mistake of fact." *Pikeville Coal Co. v. United States*, 37 Fed. Cl. 304, 313

(1997) (citation omitted). The court must be persuaded: "'(1) that an intervening change in the controlling law has occurred; (2) that previously unavailable evidence is now available; or (3) that the motion is necessary to prevent manifest injustice.'" *Griswold v. United States*, 61 Fed. Cl. 458, 461 (2004) (quoting *First Fed. Lincoln Bank v. United States*, 60 Fed. Cl. 501, 502 (2004)) (other citations omitted).

It is important to note that a motion for reconsideration of a final judgment functions not as another round of briefing in an open case, but as a request for extraordinary relief in a matter that is now closed. *See Caldwell v. United States*, 391 F.3d 1226, 1235 (Fed. Cir. 2004) ("Motions for reconsideration must be supported 'by a showing of extraordinary circumstances which justify relief.'" (quoting *Fru-Con Constr. Corp. v. United States*, 44 Fed. Cl. 298, 300 (1999), *aff'd*, 250 F.3d 762 (Fed. Cir. 2000) (table))). "The purpose served is not to afford a party dissatisfied with the result an opportunity to reargue its case." *A.A.B. Joint Venture v. United States*, 77 Fed. Cl. 702, 704 (2007) (citations omitted). Thus, RCFC 59 does not provide an occasion for a party to raise arguments it neglected to raise at an earlier point in proceedings before this court. *Bernard v. United States*, 12 Cl. Ct. 597, 598 (1987) ("Motions pursuant to [RCFC] 59 are not to be used as relief because an unhappy party failed to urge a theory which it could have raised in original proceedings.") (citations omitted). Similarly, a motion for reconsideration does not offer an opportunity to reassert arguments already considered and rejected by the court. *Pikeville Coal*, 37 Fed. Cl. at 313 (citation omitted). Absent extraordinary circumstances, a motion for reconsideration will not be granted. *See Caldwell*, 391 F.3d at 1235.

## II. Plaintiff's Arguments

Plaintiff does not allege that there has been an intervening change in the controlling law or that new evidence previously unavailable has become available. Rather, plaintiff argues that the motion is necessary to prevent manifest injustice. "It would be manifestly unjust to deprive Tip Top of this award and the public of the benefit of Tip Top's $1.4 million low bid based on the CO's irrational rejection." Pl.'s Mot. at 1. The court finds that plaintiff's assertions do not meet the standard of "manifest injustice." *See Shirlington Limousine & Transp., Inc. v. United States*, 78 Fed. Cl. 27, 31 (2007) ("Where reconsideration is sought due to manifest injustice, the moving party can only prevail if it demonstrates that the injustice from the case is 'apparent to the point of being [almost] indisputable.'")

(quoting *Pacific Gas & Elec. Co. v. United States*, 74 Fed. Cl. 779, 785 (2006)); *see also Ammex v. United States*, 52 Fed. Cl. 555, 557 (2002) ("To prevail on [a motion for reconsideration], the movant must point to a manifest (*i.e.*, clearly apparent or obvious) error of law or a mistake of fact.") (citation omitted). Plaintiff does not directly establish manifest error of law or mistake of fact. Instead, plaintiff makes three general arguments, claiming that the court has erred in its legal conclusion that the CO made a reasonable determination that coal was an unacceptable asset.

First, plaintiff argues that the CO's rejection of a substitute asset was based on a legal error. Pl.'s Mot. at 1-3. Second, plaintiff argues that the "Court's determination that the CO had no legal duty to inquire as to the asset or entertain requests for substitute assets based on *John C. Grimberg* [*Co.*] *v. United States*, 185 F.3d 1297, 130[3] (1999), an issue of first impression, should be reconsidered since it directly conflicts with longstanding [GAO] precedent." Pl.'s Mot. at 2. Lastly, plaintiff asserts that "the Court's reading of the CO's February 19, 2008 rejection letter as primarily based on matters relating to an escrow account is not supported by the letter or the record and thus, is in conflict with *OMV Medical*." *Id*. (citing *OMV Med., Inc. v. United States*, 219 F. 3d 1337, 1343-44 (Fed. Cir. 2000) for its holding that a court lacks authority to uphold an agency action on grounds not considered by the agency).

As previously explained, a motion for reconsideration "may not be used as a guise to obtain a second bite of the litigation apple." *Innovair Aviation, Ltd. v. United States*, 83 Fed. Cl. 105, 107 (2008) (citation omitted); *Shell Petroleum, Inc v. United States*, 47 Fed. Cl. 812, 819 (2000) (same). Unfortunately, this is exactly what plaintiff is attempting to do. The court will address each of plaintiff's argument in turn.

    **A.    The CO's Rejection of a Substitute Asset was Not Based on a Legal Error**

Tip Top argues that the CO's rejection of a substitute asset was based on a legal error. Pl.'s Mot. at 2. Tip Top notes that the court supported the CO's interpretation of FAR 28.203-4 and determined that the CO had a rational basis in rejecting Tip Top's request for substitution of the asset. *Id*. Plaintiff states that the court determined that "the CO did not respond to Tip Top's request to substitute assets on behalf of the surety because the request was not 'sufficiently formal'

under FAR 28.203-4 and thus, was 'inappropriate and improperly submitted.'" *Id*. Tip Top argues in this motion for reconsideration, however, that the "alleged lack of formality was not the basis for the CO's rejection of the substitution request." *Id*. Relying on a declaration of Percy J. Hollins, president of Tip Top, plaintiff asserts that the declaration shows that the CO did not reject Tip Top's request for substitution because of a lack of formality. *Id*. at 3. Rather, Tip Top claims that the declaration shows that the CO rejected the request "based solely on her erroneous view that a request for a substitution of assets was not allowed under the FAR in the case of an individual surety." *Id*. The declaration of Mr. Hollins states in pertinent part:

> Shortly after the Federal Highway Administration ("FHWA") rejected my bid, and after getting approval from the surety's agent, I sent my February 21, 2008 e-mail to the Contracting Officer, Wanda Peffer, in which I offered a substitute asset on the surety's behalf. I followed up that e-mail with a telephone call to Ms. Peffer and informed her that the surety was willing to provide a substitute asset or cash in support of the bid bond we provided. She stated that the FAR[] would not allow for a substitute asset by the individual surety and that she would not accept it.

AR 700.

Plaintiff seeks to re-litigate the issue of the CO's failure to allow Tip Top to submit a substitute asset. *See Henderson County Drainage Dist. No. 3 v. United States*, 55 Fed. Cl. 334, 337 (Fed. Cl. 2003) (stating that a court will not grant a motion for reconsideration when the plaintiff reasserts arguments previously made and considered by the court). The court has already considered this issue in its August 1, 2008 opinion, and thus, will not reconsider it. In its opinion, the court observed that the disputed e-mail sent by Mr. Hollins did not, in fact, request that the surety be allowed to substitute assets. Specifically, the court held:

> FAR 28.203-4 requires that any request for substitution of assets be submitted to the contracting officer in writing, by the individual surety. That did not happen in this case. The February 20, 2008 e-mail from Mr.

> Hollins stated, in pertinent part, "[t]he bid bond entity has other marketable assets including cash in addition to what you reference as a deficiency in your letter." AR at 565. This single sentence did not actually even request that the individual surety be permitted to substitute assets, nor did it set forth a definitive listing of or the specific particulars of any cash asset to be offered. Instead, the sentence simply stated that the surety possessed cash. The court does not view this sparse statement as a sufficiently formal request to substitute assets. Equally damaging is the fact that the referenced correspondence did not come from the surety, but instead came from the president of Tip Top. Clearly, such a request for a substitution of assets coming from an offeror failed to satisfy the FAR requirements for a written request from the individual surety. Accordingly, under the FAR, the CO had no obligation to respond to Mr. Hollins' correspondence.

*Tip Top*, 2008 WL 3153607, at *26. Accordingly, the court maintains its position that the CO's rejection of a substitute asset was not based on a legal error. The court will not entertain additional legal arguments on this matter or reconsider its decision.

### B.     The CO Had No Duty to Inquire into the Asset

Tip Top argues that the court's holding that the CO had no obligation to inquire into the proffered asset, or to allow substitution of the asset, should be reconsidered. Pl.'s Mot. at 4. Tip Top asserts that the court based its determination on the *Grimberg* case which is in direct conflict with long-standing GAO precedent that the contracting officer has a duty to inquire into the asset prior to rejection of the bid:

> The GAO has long held that this separate FAR []28.203 determination for a surety requires that a CO, before rejecting the otherwise low bidder, is obligated to seek explanations from the surety in support of the asset pledged or to pledge substitute assets . . . .

*Id.* at 5 (citations omitted). Plaintiff appears to suggest that if the court applied the "correct standard applicable to surety financial responsibility determinations," the court would find that "the CO abused her discretion by rejecting Tip Top without providing the opportunity to support the asset or submit an acceptable substitute asset." *Id.* at 6. Because plaintiff believes that the *Grimberg* standard was not the correct standard to apply in these circumstances, Tip Top requests the court to reconsider its position on the issue.

The court rejects Tip Top's request for reconsideration on this issue, as well. Plaintiff raised the same issue in its reply brief, dated June 17, 2008, when it asserted that the responsibility standard under FAR Part 9.1 and *Grimberg* serve a materially different function than the responsibility standard found in FAR Part 28. *See* Pl.'s June 17, 2008 Reply at 6-7. Plaintiff asserted that the correct responsibility standard for a surety was in a separate regulation, FAR 28.203. *Id.* at 6. The court reviewed the parties' arguments and determined that the *Grimberg* responsibility standard was the appropriate standard in these circumstances. "It is the court's conclusion that the responsibility standard in FAR 9.1, and in *Grimberg*, is a general standard for responsibility which this court is free to apply in the instant case." *Tip Top*, 2008 WL 3153607, at *14.

Aside from the fact that GAO decisions are not binding precedent on this court, *Precision Images, LLC v. United States*, 79 Fed. Cl. 598, 619 n.40 (2007), plaintiff is reasserting an argument that was previously made in earlier briefing and considered by the court. Therefore, reconsideration is inappropriate. *See, e.g.*, *Stelco Holding Co. v. United States*, 45 Fed. Cl. 541, 542 (2000) (denying reconsideration because plaintiff reasserted arguments which the court had already considered). Accordingly, reconsideration of Tip Top's renewed argument is unwarranted.

### C.    The Court Correctly Applied *OMV Medical*

Finally, Tip Top argues that the court misapplied *OMV Medical*, 219 F.3d at 1343-44 (holding that a court lacks authority to uphold an agency action on grounds not considered by the agency), when it considered FAR escrow account requirements which were not specifically discussed in the CO's February 19, 2008 rejection letter. Tip Top asserts that "the Court read the letter to say that the 'primary basis' on which the CO had rejected the bid was FAR []28.203, and [the

court] then focused on the FAR []28.203-1 'escrow account' requirements." Pl.'s Mot. at 6.  Plaintiff goes on to argue that the court misinterpreted the CO's letter, inasmuch as the CO's basis for rejection of the coal asset was that "the 'marketable coal' was 'specifically excluded' as a 'speculative asset'" in FAR 28.203-2(c)(7).  *Id*.  Tip Top contends that the court's reading of the CO's February 19, 2008 rejection letter was unsupported by the disputed letter or the record and is therefore in conflict with *OMV Medical*.  The court does not agree with plaintiff's conclusion that it deviated from the standard of review set forth in *OMV Medical* and, furthermore, finds that Tip Top yet again reasserts arguments on a subject that has already been considered by this court.

In its opinion, the court acknowledged that the CO's letter did not make a specific reference to the escrow account requirement and the court pointed out the fact that the relevant FAR provisions were, themselves, convoluted and not easily followed.  *Tip Top*, 2008 WL 3153607, at *15, *20.  The court's opinion went on to state, in pertinent part, that:  "The CO's February 19, 2008 decision cites to the provisions of FAR 28.203 as the primary basis upon which she determined that the asset supplied by Tip Top's individual surety was unacceptable." *Id*. at *20.  The court then explained that when it examined the regulations cited by the CO and construed those regulations as a whole, as mandated by law, and in conjunction with the solicitation, the court had necessarily reached the conclusion that "the solicitation and FAR provisions, when read harmoniously, are reasonably construed to require the surety to provide an asset (other than real estate) which could be placed into an escrow account." *Id*. at *22.  This court sees no reason to engage in another analysis or further explanation of its decision in this matter.  Plaintiff's legal arguments simply rehash its original position.  Tip Top's assertion of manifest injustice in this regard is of no avail either, particularly in view of the fact that the court alternatively determined that "the ambiguities in the solicitation, the SF 28, and the FAR were so apparent that Tip Top had a duty to ask for clarification before bidding." *Id*. at *23 (citation omitted).

It is true that the court, in *Tip Top*, indicated that if it had *de novo* authority in this case, it would not necessarily have agreed with the outcome reached by the contracting officer.  However, after a painstaking examination of the facts and the law, this court reached the determination that her decision "fell within the parameters of rationality under the controlling regulations and survived the standard of judicial review applicable in bid protests." *Id*. at *26 n.11.  The court sympathizes with plaintiff's frustration in this case; however, Tip Top has failed to

demonstrate that any intervening changes in the law have occurred or that previously unavailable evidence has become available.  Finally and despite Tip Top's understandable frustrations, it is this court's opinion that the decision reached on August 1, 2008 supporting the CO's decision is correct and plaintiff has failed to show manifest injustice as a result of that decision.

## CONCLUSION

Tip Top bore the burden to show:  "'(1) that an intervening change in the controlling law has occurred; (2) that previously unavailable evidence is now available; or (3) that the motion is necessary to prevent manifest injustice.'" *Griswold*, 61 Fed. Cl. at 461 (quoting *First Federal Lincoln Bank*, 60 Fed. Cl. at 502).  Plaintiff has failed to meet this burden and therefore its motion for reconsideration cannot prevail.  As a result of the foregoing determination, plaintiff's request for injunctive relief is denied as moot.

Accordingly, it is hereby **ORDERED** that

(1)   Tip Top's Motion for Reconsideration, filed August 7, 2008, is **DENIED**; and

(2)   Plaintiff's request for injunctive relief pending the decision of the Motion for Reconsideration is **DENIED** as moot.

/s/Lynn J. Bush
LYNN J. BUSH
Judge